UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| SHEILA CONIFF, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 2:10-cv-32 |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF VERMONT, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS

Defendants State of Vermont, State of Vermont Agency of Administration and Jeb Spaulding (collectively, the "State"), hereby move pursuant to Fed. R. Civ. P. 12(b)(1) for dismissal on the basis of lack of subject matter jurisdiction or, in the alternative, pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings. As explained in detail in the following incorporated Memorandum of Law, the Court should dismiss Plaintiffs' Second Amended Complaint (Doc. 13) because Plaintiffs' claim against the State under the Fair Labor Standards Act ("FLSA" or the "Act") is barred by the doctrine of sovereign immunity.

## MEMORANDUM OF LAW

### Background

Plaintiffs represent a class of current and former State employees who are or were members of the judiciary, supervisory, non-management and corrections bargaining units represented by the Vermont State Employees Association ("VSEA"). Second Amended Complaint ("2d Am. Compl.") ¶ 1. Plaintiffs assert that they are entitled to time and one half overtime pay under the FLSA, but receive only straight-time overtime pay under the collective-

bargaining agreements negotiated by the VSEA and the State.  *Id*. ¶¶ 3-4.  Specifically, Plaintiffs presently argue that they are not exempt from the FLSA's overtime provisions because they are not paid on a "salary basis."  *Id*.

Plaintiffs initiated this lawsuit in January 2010 in Vermont Superior Court.  The State removed the case to this Court on February 8, 2010.  On November 16, 2012, more than two and a half years after the case was removed, the parties met to discuss a number of remaining discovery issues implicated by Plaintiffs' Third Set of Interrogatories and Requests to Produce, including Interrogatory #17, which requested information related to any potential sovereign immunity defense.  Stipulation of Facts ("Fact Stip.") ¶ 2 (a copy of the Fact Stip. is attached as Exhibit A); *id*. Ex. 1, at 3.  At this meeting, the parties discussed the issue of sovereign immunity, and the State's counsel indicated that the State felt sovereign immunity had been waived and thus, the State did not intend to assert the defense.  *Id*. ¶ 2.  Plaintiffs summarized this conversation in a letter dated November 17, 2011.  *Id*. Ex. 1, at 3.

The State responded to Plaintiffs' Third Set of Interrogatories and Requests to Produce on March 19, 2012.  *Id*. ¶ 5.  In response to Interrogatory 17, asking whether the State intended to "rely upon the defense of sovereign immunity," the State responded that it had "removed the claim to federal court" and "[a]ccordingly," did "not intend to assert 11th Amendment immunity," or that it was "otherwise immune from the FLSA in this action."  *Id*. Ex. 2 at 7. Approximately two and a half months later, however, prior to the then-existing deadline for summary judgment motions, and after a change in assigned counsel, the State amended its response to Interrogatory 17.  The amendment withdrew the State's previous response and stated that the State is, in fact, "entitled to sovereign immunity for suits brought under the Fair Labor Standards Act in either state or federal court and accordingly, intend[s] to assert a sovereign

immunity defense." *Id*. Ex. 3 at 2.

On June 7, 2012, the State moved to amend its Answer to the Second Amended Complaint to assert an affirmative defense of sovereign immunity.  Def.'s Mot. to Amend their Answer to Pl.'s 2d Am. Compl. (the "Motion to Amend") (Doc. 104).  Plaintiffs opposed this motion (the "Opposition to Motion to Amend"), arguing in part that the State had waived any sovereign immunity defense by (1) stating during discovery that it did not intend to raise the defense; (2) removing the case to federal court; and (3) express statutory language found at 21 V.S.A. § 384(b)(7).  Opp. to Mot. to Amend (Doc. 106) at 8-10.  The State filed a Reply addressing these arguments on June 28, 2012.  Def.'s Reply Mem. in Further Supp. of its Mot. to Amend ("Reply in Supp. Mot. Amend") (Doc. 110).

The Court held a hearing on the Motion to Amend on July 3, 2012.  During the hearing, the Court denied the Motion to Amend as futile on the ground that the sovereign immunity defense need not be raised in an Answer.  Mot. to Amend Hr'g Tr. ("Hr'g Tr.") at 31 (Doc. 115). However, the Court allowed Plaintiffs 90 days to conduct additional discovery on the issue of whether the State had waived sovereign immunity.  *Id*. at 31-32.  The Court also afforded the State an additional 30 days to file a dispositive motion on the sovereign immunity issue.  *Id*. at 32.  After the hearing, the Plaintiffs requested, and the State made available, a substantial additional volume of discovery Plaintiffs believed was necessary to determine whether the State had waived sovereign immunity through acceptance of federal grants.

A dispute arose, however, as a result of Plaintiffs' request to discover the State's legal research materials.  *See* Pl.'s Mot. to Compel (Doc. 116); Def.'s Opp. to Mot. to Compel (Doc. 117).  In light of the dispute, the Court allowed the parties additional time to file dispositive motions on the sovereign immunity issue.  Specifically, at an October 24, 2012 hearing to

resolve the discovery dispute, the Court directed the parties to file any dispositive motions on the

sovereign immunity issue on or before November 26, 2012.  Minute Entry for Proceedings Held

October 24, 2012 (Doc. 121).

## Legal Standard

The Supreme Court has observed that a motion to dismiss for lack of subject matter

jurisdiction under Fed. R. Civ. P. 12(b)(1) "may be raised by a party, or by a court on its own

initiative, at any stage of the litigation."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see*

*also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter

jurisdiction, the court must dismiss the action.").  Were this not so, however, the present motion

still would be timely as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

*See* Fed. R. Civ. P. 12(c) (permitting motion to be made "[a]fter the pleadings are closed").

Thus, if the Court determines for any reason that a Rule 12(b)(1) motion is not appropriate at this

stage of the litigation, the State requests that its motion be treated as one made under Rule 12(c).

*Cf. Baldessarree v. Monroe-Woodbury Cent. Sch. Dist.*, No. 11-2835-cv, 2012 WL 4039986 (2d

Cir. Sept. 14, 2012) (analyzing parties' jurisdictional motion as one brought under Rule 12(b)(1),

"and, alternatively, for judgment on the pleadings," pursuant to Rule 12(c)).

In deciding motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)

or for judgment on the pleadings under Rule 12(c), courts employ the same legal standard used

to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *Hayden v. Paterson*, 594 F.3d 150,

160 (2d Cir. 2010).  However, "[w]hen reviewing a complaint for subject matter jurisdiction, a

court is allowed to consider extrinsic evidence and is not limited to the information contained in

the pleadings."  *Taite v. Shinseki*, No. 5:10-cv-270, 2011 WL 2411436, at *2 (D. Vt. June 14,

2011) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).  Ultimately,

the burden is on the party invoking federal jurisdiction to establish that jurisdiction.  *Id*.

Argument

In *Alden v. Maine*, 527 U.S. 706 (1999), the Supreme Court held that the common law doctrine of sovereign immunity precludes an action under federal law against a non-consenting state in state court unless Congress has explicitly abrogated the state's immunity pursuant to an appropriate constitutional grant of authority.  *See Seminole Tribe*, 517 U.S. at 59; *Alden*, 527 U.S. at 754.  The Court reasoned that allowing a suit under federal law against a non-consenting state in its own courts would undermine "our federalism[, which] requires that Congress treat the States in a manner consistent with their status as residuary sovereigns and joint participants in the governance of the Nation."  *Alden*, 527 U.S. at 748.  The Court further explained how a contrary rule would upset the federal-state balance:

> A general federal power to authorize private suits for money damages would place unwarranted strain on the States' ability to govern in accordance with the will of their citizens.  Today, as at the time of the founding, the allocation of scare resources among competing needs and interests lies at the heart of the political process.  While the judgment creditor of a State may have a legitimate claim for compensation, other important needs and worthwhile ends compete for access for the public fisc.  Since all cannot be satisfied in full, it is inevitable that difficult decisions involving the most sensitive and political of judgments must be made.  If the principle of representative government is to be preserved to the States, the balance between competing interests must be reached after deliberation by the political process established by the citizens of the State, not by judicial decree mandated by the Federal Government and invoked by the private citizen.

*Id*. at 750.  Against this principle, the Court looked to the "history, practice, precedent, and the structure of the Constitution" and concluded that "the States retain immunity from private suit in

their own courts, an immunity beyond the congressional power to abrogate by Article I

legislation." *Id*. at 754.

Thus, the *Alden* decision makes clear that the FLSA does not abrogate state sovereign

immunity. *Alden*, 527 U.S. at 754. Accordingly, in order to sustain their FLSA claim against the

State, Plaintiffs must show that the State unambiguously waived its sovereign immunity. *See*,

*e.g.*, *College Savings Bank v. Florida Prepaid Postsecondary Educ. Exp. Bd.*, 527 U.S. 666, 675

(1999) (recognizing that sovereign immunity may be waived). It is clear, however, that waiver

may not be implied lightly. *See id.* at 682 (noting that courts "indulge every reasonable

presumption against waiver" of fundamental constitutional privileges such as sovereign

immunity); *Richardson v. New York State Dep't of Corrs.*, 180 F.3d 426, 448 (2d Cir. 1999) (test

for determining whether waiver of sovereign immunity has occurred is a "stringent one").

During the course of this litigation, Plaintiffs have advanced several theories under which they

believe the State has waived sovereign immunity in this case. As explained in detail below,

however, Plaintiffs' theories are unavailing. The State has not waived its sovereign immunity.

Thus, Plaintiffs' FLSA claim should be dismissed.

I.      THE STATE DID NOT WAIVE SOVEREIGN IMMUNITY THROUGH
        STATEMENTS MADE DURING DISCOVERY.

Plaintiffs have argued on several occasions that counsel for the State waived the State's

sovereign immunity during discovery by suggesting on several occasions – including in a

subsequently-amended written discovery response – that the State believed it already had waived

immunity and therefore did not intend to raise the issue. *See* Background, *supra*; *see also* Opp.

to Mot. to Amend at 8-9. As explained below, however, sovereign immunity cannot be waived

by statements made during discovery, and even were such waiver possible, the statements at

issue would not evidence any intent on the part of the State to waive immunity.

A.    The State Cannot Waive – And Has Not Waived – Sovereign Immunity Through Its Statements In Discovery.

Sovereign immunity is a fundamental aspect of state sovereignty protected by the Constitution.  *See N. Ins. Co. of N.Y. v. Chatham City*, 547 U.S. 189, 193 (2006) (immunity is a "fundamental aspect" of state sovereignty); *College Savings Bank*, 527 U.S. at 682 ("State sovereign immunity . . . is constitutionally protected.").  Moreover, the Supreme Court has held that a sovereign immunity "waiver may not be implied," *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011), and will only be found in an express statutory declaration.  *See Edelman*, 415 U.S. at 673; *Sossamon*, 131 S. Ct. at 1658 ("[A] State's consent to suit must be unequivocally expressed in the text of the relevant statute."); *see also Jacobs v. State Teachers Retirement Sys. of Vt.*, 174 Vt. 404, 408, 816 A.2d 517, 521 (2002) (sovereign immunity waiver "must be accomplished expressly by statute").[1]

Thus, sovereign immunity is sufficiently jurisdictional that it "can be raised at any stage of the proceedings," and even for the first time on appeal.  *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998); *Edelman v. Jordan*, 415 U.S. 651, 678 (1974); *see also McGinty v. New York*, 251 F.3d 84, 94 (2d Cir. 2001) (collecting Second Circuit cases); *Richardson*, 180 F.3d at 449 (noting that while sovereign immunity "differ[s] from other jurisdictional bars, the law remains clear that it is jurisdictional enough that it need not be raised in the trial court.").[2]  Thus, the

---

[1] As explained in further detail below, *see* Part III, *infra*, a state may also waive its Eleventh Amendment immunity by voluntarily invoking the jurisdiction of a federal court.  That principle is not at issue here, however, because the State is not relying on immunity from federal court jurisdiction under the Eleventh Amendment.

[2] Courts in two federal circuits have suggested that waiver may be possible where a state waits until trial to raise a sovereign immunity defense in order to circumvent an adverse merits decision.  *See, e.g.*, *Kermode v. Univ. of Miss. Med. Ctr.*, NO. 12-60010, 2012 WL 5688987, at *5 (5th Cir. Nov. 16, 2012); *Hill v. Blind Industs. & Servs. of Md.*, 179 F.3d 754, 762 (9th Cir. 1999).  Of course, the decisions

State's discovery statements could not constitute a waiver of sovereign immunity. As a result, the Court need not reach Plaintiffs' arguments as to their effect.

Even were waiver through discovery statements possible, however, the statements at issue would not establish waiver. Nothing about the statements in either Plaintiffs' November 17, 2011 letter or the State's March 2012 interrogatory responses suggests that the State affirmatively agreed to waive its immunity. Those statements show only that at the time they were made, the State did "not intend to assert" sovereign immunity because of its mistaken belief that sovereign immunity was not available because of 21 V.S.A. § 384(b)(7), and because the State had removed the case to federal court.[3] *See*, *e.g.*, Fact Stip. Ex. 1 at 3. In other words, any fair reading of the statements at issue suggests only that the State was expressing a legal assessment of its position, not voluntarily relinquishing its rights as a sovereign. *See College Savings Bank*, 527 U.S. at 682 ("The classic description of an effective waiver of a constitutional right is the intentional relinquishment or abandonment of a known right or privilege. . . . Courts indulge every reasonable presumption against waiver of fundamental constitutional rights."); *Carvajal v. Artus*, 633 F.3d 95, 105-06 (2d Cir. 2011) (party's mistaken legal concession did not

---

conflict with the Second Circuit's characterization of sovereign immunity as a jurisdictional issue that can be raised at any time in the proceedings. *See Ruffin v. Deperio*, 97 F. Supp. 2d 346, 358 (W.D.N.Y. 2000) (declining to apply *Hill*, noting that "the Second Circuit has treated sovereign immunity as a limit on the federal courts' subject matter jurisdiction" (citing *Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993)). Even were the Fifth and Ninth Circuit's decisions applicable, however, neither of those cases found a waiver where – as here – the State raised sovereign immunity at summary judgment, rather than during trial. This is significant because prior to summary judgment, the court will not have issued a final merits decision which could be unfairly circumvented by a state's raising sovereign immunity.

[3] As explained in detail in Parts II & III, *infra*, the State's initial legal assessment of these factors was incorrect. The State was not – and is not – barred from asserting sovereign immunity either by section 384(b)(7) or by its removal of the case to federal court.

constitute voluntary waiver).[4]  Thus, even if assistant attorneys general were capable of waiving

the State's sovereign immunity through discovery statements (which they are not), the statements

at issue do not constitute such a waiver.

       B.     <u>Plaintiffs Have Not Established Any Equitable Basis For Finding A Waiver Of
Sovereign Immunity</u>.

      Plaintiffs have similarly failed to provide any authority to support the theory that

equitable principles can be used to defeat a state's invocation of sovereign immunity, and in light

of the principles discussed above, the Court should find that equitable waiver is not possible.

Even were equitable relief available to Plaintiffs, however, the State's discovery statements

cannot form the basis of an equitable waiver of sovereign immunity.  To establish an equitable

claim, Plaintiffs would have to show that (1) they reasonably relied on the State's

representations; and (2) they were prejudiced by that reliance.  *See Kosakow v. New Rochelle

Radiology Assocs.*, 274 F.3d 706, 725 (2d Cir. 2001); *see also* Hr'g Tr. at 18 (considering the

possibility of an equitable claim "where [the state] makes a representation of waiving sovereign

immunity and [Plaintiffs] rely on it to [their] prejudice").

      Here, Plaintiffs are not entitled to equitable relief for several reasons.  First, it is well

established that a party may not base an equitable claim on the opposing party's articulation of a

legal position.  As explained above, the State's discovery statements were, at most, an expression

of the State's legal assessment that sovereign immunity had been waived, and not an affirmative

attempt to prospectively waive sovereign immunity.  Plaintiffs cannot rely on the State's

---

[4]  Indeed, parties regularly are permitted to refine and alter their legal positions during discovery in the absence of prejudice to the opposing party.  *See Capital Motor Lines v. Detroit Deisel Corp.*, 799 F. Supp. 2d 11, 14-16 (D.D.C. 2011) (original discovery response disclaiming affirmative defense did not waive defense where the response was subsequently amended and amendment did not prejudice opposing party); *Hart v. Farwell*, No. 3-05-cv-00139-LRH(VPC), 2007 WL 2049845, at *4 n.4 (D. Nev. July 12, 2009) (same);  Fed. R. Civ. P. 26(e) (requiring party to supplement and amend discovery responses).

expression of its legal position to support an equitable waiver claim.  *See*, *e.g.*, *Kregos v. Associated Press*, 3 F.3d 656, 661 (2d Cir. 1993) ("[R]elying on the legal opinion of another's attorney is unreasonable when both parties are aware adverse interests are being pursued.").[5]

Second, Plaintiffs cannot show any prejudice resulting from the State's actions that would justify granting equitable relief.  There can be no question that sovereign immunity is a legal issue that can be raised at any time during the course of the proceedings, and certainly for the first time at summary judgment.  *See Richardson*, 180 F.3d at 449 (sovereign immunity may be raised for the first time on summary judgment); *McGinty*, 251 F.3d at 90 (resolving sovereign immunity waiver issue that had been decided *sua sponte* by the district court, noting that the issue was "predominantly of a legal nature"); *Steward v. North Carolina*, 393 F.3d 484, 487 (4th Cir. 2002) (question of sovereign immunity waiver is a "legal question" appropriate for decision on motion to dismiss).  Thus, sovereign immunity requires no fact discovery, and the State's reassessment of its position on the issue leaves Plaintiffs exactly where they would have been had sovereign immunity never been discussed.

Third, even if Plaintiffs could demonstrate that the sovereign immunity waiver inquiry turns on questions of fact, any claim to prejudice remains illusory because Plaintiffs cannot identify any information they have been forced to proceed without.  Prior to the November 2011 discussion, Plaintiffs' only request for information on the sovereign immunity defense took the form of a request for information about the factual basis for such a defense.  *See* Fact Stip. Ex. 2, at 7.  As explained above, however, the State has no "factual basis" for the defense aside from

---

[5] *See also Johnson v. Berry*, 228 F. Supp. 2d 1071, 1076 (E.D. Mo. 2002) ("The assertion of one in an adverse position concerning the comparative rights of the two parties cannot support equitable [relief]."); *Coggins v. County of Nassau*, 615 F. Supp. 2d 11, 23 (E.D.N.Y. 2009) (statements based on party's legal interpretation of relevant statute could not serve as basis for equitable estoppel); *RCN Telecom Servs. v. Deluca Enters.*, 413 F. Supp. 2d 464, 475 (E.D. Pa. 2005) (estoppel did not apply "[b]ecause the alleged misrepresentation involved a legal opinion").

the fact that the State is a sovereign entity – a fact Plaintiffs already knew.  *Id*. Ex. 3, at 2.

Moreover, Plaintiffs have since been provided ample time to conduct additional discovery they

believed necessary to rebut the State's sovereign immunity defense.  Thus, the State's discovery

statements decidedly did *not* prevent Plaintiffs from gathering any information to which they

would otherwise have been entitled or from presenting any argument they would otherwise have

made on the sovereign immunity issue.

      The only conceivable effect the State's statements had was to cause a brief delay (relative

to the overall length of time the case has been pending) in summary judgment briefing.  This

brief delay alone is not sufficient to show prejudice.  *See Stichting Ter Berhartiging Van de*

*Belangen v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005) (delay alone is insufficient to show

prejudice).  Therefore, even were equitable relief available to Plaintiffs (and again, it is not), the

State's discovery statements could not justify an order precluding the State from asserting its

immunity.

II.     THE STATE DID NOT WAIVE ITS SOVEREIGN IMMUNITY BY STATUTE.

      Plaintiffs have argued that the State should be barred from raising sovereign immunity in

this case because the State has "expressly consented" to suit under the FLSA.  *See* Opp. to Mot.

to Amend at 9-10.  To prevail on this claim, Plaintiff must point to statutory language waiving

sovereign immunity "by the most express language or by such overwhelming implication from

the text as will leave no room for any other reasonable construction."  *Edelman*, 415 U.S. at 673;

*see also Sossaman*, 131 S. Ct. at 1658 ("[A] waiver of sovereign immunity will be strictly

construed . . . in favor of the sovereign."); *see also Jacobs v. State Teachers Retirement Sys. of*

*Vt.*, 174 Vt. 404, 408, 816 A.2d 517, 521 (2002) (sovereign immunity waiver "must be

accomplished expressly by statute").  Plaintiffs assert that such a waiver can be found at 21

11

V.S.A. § 384(b)(7), which exempts "State employees who are covered by the U.S. Federal Fair Labor Standards Act" from State overtime laws. Any fair reading of that statute, however, does not support the construction Plaintiffs advance.

First, the plain language of section 384(b)(7) is completely silent on the issue of the State's consent to suit under the FLSA. This is significant, because the Vermont Legislature uses clear and unequivocal language when it intends to waive the State's immunity from suit. For example, the Vermont Tort Claims Act – which waives the State's sovereign immunity from certain tort claims – expressly provides that the State "shall be liable" for some torts committed by state employees. *See* 12 V.S.A. § 5601(a). Indeed, the Vermont Supreme Court has recognized that a sovereign immunity waiver will not occur "unless immunity is expressly waived by statute." *Sabia v. State*, 164 Vt. 293, 298, 669 A.2d 1187, 1191 (1995); *see also Jacobs*, 174 Vt. at 408, 816 A.2d at 521. Section 384(b)(7) contains no clear or express language waiving immunity from suit under the FLSA. Thus, the plain language of section 384(b)(7) does not expressly waive the State's sovereign immunity, and under both federal and state law, waiver cannot be simply implied. *See Kane v. Lamothe*, 2007 VT 91, ¶ 6, 182 Vt. 241, 244, 936 A.2d 1303, 1306-07 (quoting *Sabia*, 164 Vt. at 298, 669 A.2d at 1191); *Sossaman*, 131 S. Ct. at 1658 ("A State's *consent to suit* must be 'unequivocally expressed' in the text of the relevant statute." (emphasis added)).

Second, section 384(b)(7) does not evidence a waiver of sovereign immunity from private FLSA suit by "overwhelming implication." *Edelman*, 415 U.S. at 673. To the contrary, the most reasonable interpretation of section 384(b)(7) is the one suggested by the statute's plain language: the provision simply recognizes that at least some state employees are covered by the

FLSA – and, therefore, protected by the federal Department of Labor.[6]  The statute then uses this fact to define an exemption from State overtime laws.  In other words, section 384(b)(7), like the other exemptions enumerated in section 384(b), is simply definitional.  This eminently reasonable construction of the statute forecloses any finding that it was intended to be a sovereign immunity waiver.  Nothing about the statute suggests that the Legislature intended to relinquish the State's sovereign right to immunity from private suit.

At least one federal appeals court recognized this distinction in rejecting an argument very similar to Plaintiff's position.  In *Williams v. Oklahoma Department of Human Services*, 122 Fed. Appx. 958 (10th Cir. 2004), the court held that an Oklahoma law "stating that it was the policy of the Oklahoma Department of Human Services 'to comply fully with the provisions of the Fair Labor Standards Act'" did not constitute a waiver of sovereign immunity.  *Id.* at 959.  In reaching this conclusion, the court noted that "[t]he issue in this case is not whether Oklahoma has agreed to comply with the FLSA; the issue is whether Oklahoma has agreed its employees may sue to enforce their FLSA claims."  *Id*.  Thus, the court concluded that the language at issue simply "compel[led the state] agency to adopt employment policies in accordance with the FLSA, not to permit the state to be sued in federal court to enforce the federal act."  *Id*. at 960.

The same analysis is appropriate here.  At most, section 384(b)(7) can be read as a simple acknowledgment that the FLSA applies to at least some state employees.  Nothing in the statute, however, suggests that the Vermont Legislature intended to subject the state treasury to

---

[6] It is well established that the states have no immunity from suits instituted by the federal government.  *See Alden*, 527 U.S. at 755 ("In ratifying the Constitution, the States consented to suits brought by other States or by the Federal Government.").  Moreover, it is clear that the U.S. Department of Labor has jurisdiction to enforce the FLSA against the States.  *See, e.g.*, *Gallo v. Essex Cty. Sheriff's Dept.*, No. 10-10260-DPW, 2011 WL 1155385, at *6 n.6 (D. Mass. Mar. 24, 2011) ("While the doctrine of state sovereign immunity bars private lawsuits against the states for damages under the FLSA, it does not bar enforcement by the federal Department of Labor.").  Therefore, it makes perfect sense that the State would recognize its obligation to comply with the FLSA while at the same time preserving its sovereign immunity from private suits filed under the Act.

private suit under the Act.  Therefore, Plaintiffs cannot show that section 384(b)(7) waives the

State's sovereign immunity "by the most express language or by such overwhelming

implications from the text as [will] leave no room for any other reasonable construction."

*Edelman*, 415 U.S. at 673; *see also Sossaman*, 131 S. Ct. at 1659 ("[W]here a statute is

susceptible of multiple plausible interpretations, including one preserving immunity, we will not

consider a State to have waived its sovereign immunity."); *United States v. Nordic Village*, 503

U.S. 30, 37 (1992) (other "plausible" readings of statute foreclosed interpretation as a sovereign

immunity waiver).[7]

III.     THE STATE DID NOT WAIVE SOVEREIGN IMMUNITY BY REMOVING THIS
         CASE TO FEDERAL COURT.

         In the Second Amended Complaint and in their Opposition to the Motion to Amend,

Plaintiffs argue that the State is precluded from raising sovereign immunity because the State

removed this case to federal court.  This argument is based on a misreading of *Lapides v. Board

of Regents of University System of Georgia*, 535 U.S. 613 (2002), where the Supreme Court held

that a state may not "achieve [an] unfair tactical advantage[]" by asserting Eleventh Amendment

immunity from federal court jurisdiction after removing a state claim from which it had waived

its immunity in state court.  *Id*. at 621; *see also id*. at 622 ("[T]he rule governing voluntary

invocations of federal jurisdiction has rested upon the problems of inconsistency and unfairness

that a contrary rule of law would create").  Notably, the *Lapides* court explicitly limited its

holding to situations where a state's sovereign immunity has been abrogated or waived in its own

courts.  *Id*. at 617-18 (declining to address "the scope of waiver by removal in a situation where

the State's underlying sovereign immunity from suit has not been waived or abrogated in state

---

[7] While *Nordic Village* involved a claim of sovereign immunity by the federal government, the
Supreme Court has held that the standards for finding statutory waiver are the same for state and federal
sovereign immunity purposes.  *Sossaman*, 131 S. Ct. at 1658 n.4.

court.").

As the First Circuit recently recognized in a case very similar to this one, the principle announced in *Lapides* does not apply when the state removes a claim from which it was immune in either federal or state court. In *Bergemann v. Rhode Island Department of Environmental Management*, 665 F.3d 336 (1st Cir. 2011), the court recognized that the *Lapides* doctrine is predicated on avoiding the unfairness of allowing a state to circumvent a waiver of immunity in its own courts by removing the case to federal court and then claiming Eleventh Amendment immunity from federal jurisdiction. *Id*. at 341. Accordingly, the court held that where – as here – a state's sovereign immunity defense is "equally robust in both the state and federal court," the state does "not waive its immunity by removing the action to federal court." *Id*. at 342-43.[8]

In this action, the State neither abrogated nor waived its immunity from suit in state courts. Pivotally, the State is relying not on Eleventh Amendment immunity from federal jurisdiction, but rather on its substantive sovereign immunity from a private FLSA action. *See Alden*, 527 U.S. at 730 (discussing distinction between Eleventh Amendment immunity and the underlying sovereign immunity "inher[ing] in the system of federalism established by the Constitution."); *Stewart*, 393 F.3d at 487-88 (same); *see also Alden*, 527 U.S. at 754 (holding

---

[8] As the *Bergemann* court observed, the federal courts of appeals are not entirely in accord on this issue. *Bergemann*, 665 F.3d at 342. The Fourth and District of Columbia Circuits agree with the First Circuit and hold that removal does not constitute waiver in circumstances like the present. *Stewart*, 393 F.3d at 490; *Watters v. Wash. Metro. Area Transit Auth.*, 295 F.3d 36, 42 n.13 (D.C. Cir. 2002). The Seventh, Ninth and Tenth Circuits appear to read *Lapides* somewhat more broadly, though these decisions do not turn on the State's substantive sovereign immunity in either federal or state court, but rather on Eleventh Amendment immunity from suit in the federal forum. *See Board of Reg. of the Univ. of Wisconsin Sys.*, 653 F.3d 448 (7th Cir. 2011) (holding sovereign immunity waived where state filed claim in federal court, but reading *Lapides* broadly); *Embury v. King*, 361 F.3d 562 (9th Cir. 2004) (analyzing only Eleventh Amendment immunity from federal jurisdiction); *Estes v. Dep't of Trans*, 302 F.3d 1200 (10th Cir. 2002) (same). The Third and Fifth Circuits have taken a somewhat different approach, holding that removal of federal claims generally waives only immunity from suit and not immunity from liability. *Bergemann*, 665 F.3d at 342; *Lombardo v. Pa. Dep't of Public Welfare*, 540 F.3d 190 (3d Cir. 2008); *Meyers v. Texas*, 410 F.3d 236 (5th Cir. 2005). This issue appears to be one of first impression in the Second Circuit.

that the FLSA does not abrogate state sovereign immunity in state courts).  Therefore, the State

is immune from suit in both state and federal court, and did not gain any unfair tactical advantage

by removing Plaintiffs' claims to federal court.  *See Bergemann*, 665 F.3d at 342 (applying

*Lapides* in these circumstances would present states with a "Morton's Fork: remove the claim to

federal court and waive immunity or litigate the federal claim in state court regardless of its

federal nature.").  Thus, considerations of "inconsistency and unfairness" that formed the basis of

the *Lapides* decision actually support allowing the sovereign immunity defense in this case.

Accordingly, the Court should reject any claim that the State waived its sovereign immunity

through removal.

CONCLUSION

For the foregoing reasons, the State respectfully requests that the Court grant its Motion

and dismiss Plaintiffs' FLSA claim on the ground that it is barred by the doctrine of sovereign

immunity.

DATED at Montpelier, Vermont this 26th day of November, 2012.

STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

By:    /s/ Jonathan T. Rose
        Jonathan T. Rose
        Todd W. Daloz
        Assistant Attorneys General
        Office of the Attorney General
        109 State Street
        Montpelier, VT 05609-1001
        (802) 828-3171
        jrose@atg.state.vt.us

        Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of November, 2012, I electronically filed

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for

Judgment on the Pleadings with the Clerk of the Court using the CM/ECF system, which will

send notification of such filing to all registered participants.


STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

By:     /s/ Jonathan T. Rose
        Jonathan T. Rose
        Todd W. Daloz
        Assistant Attorneys General
        Office of the Attorney General
        109 State Street
        Montpelier, VT 05609-1001
        (802) 828-3171
        jrose@atg.state.vt.us
        tdaloz@atg.state.vt.us

        Counsel for Defendants