# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| SHEILA CONIFF, et al., individually and<br>on behalf of themselves and all those similarly situated | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | Docket No.  2:10-cv-32 |
| STATE OF VERMONT, et al., | ) ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
## AS TO SOVEREIGN IMMUNITY AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs, through their counsel, Bergeron Paradis & Fitzpatrick LLP, move pursuant to F.R.C.P. 56 and L.R. 56 for partial judgment in their favor dismissing the defense of sovereign immunity.  In support of this Motion, Plaintiffs submit a Statement of Undisputed Facts ("<u>SUF</u>") and the following Memorandum of Law:

## <u>Memorandum of Law</u>

### I.      Introduction.

This is a collective action for unpaid overtime brought on behalf of 704 current and former employees of the State of Vermont under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*.  Nearly two and one half years after Plaintiffs filed this action, and after Defendants removed it to federal court, and after Defendants affirmatively waived sovereign immunity, they now seek to invoke sovereign immunity.  As discussed below, Defendants have waived sovereign immunity and judgment on this issue should be entered in favor of Plaintiffs.

II.     **Background.**

Plaintiffs initially filed this action in the Vermont Superior Court, Civil Division on January 7, 2010, seeking declaratory and injunctive relief, liquidated damages for backpay overtime, costs and attorney's fees.  SUF, ¶ 2.  Defendants removed the case to this Court and on February 16, 2010 they filed a Motion to Dismiss.  SUF, ¶¶ 3, 4.  Defendants' twenty page Motion to Dismiss made two arguments: (1) Plaintiffs failed to allege the FLSA applies to their job duties; and (2) Plaintiffs failed to allege they are not 'salaried' employees under the FLSA. Nowhere in the Motion did Defendants suggest that the State is immune from this suit. Additionally, Plaintiffs asserted in their Complaint and in their Opposition to the Motion to Dismiss that the Vermont legislature had expressly waived sovereign immunity for suits under the FLSA pursuant to 21 V.S.A. § 384(b)(7) (declaring that state employees "are covered by the U.S. Federal Fair Labor Standards Act").  SUF, ¶ 5.  After the Court denied Defendants' Motion to Dismiss, the State did not claim sovereign immunity in its Answer filed on August 23, 2010 SUF, ¶ 6.  Instead, the parties proceeded to discovery and litigation on the merits of the FLSA claims.

On numerous occasions during the course of this litigation, Plaintiffs' counsel had conversations with Defendants' counsel regarding the issue of sovereign immunity, and Defendants' counsel represented that Defendants were not asserting sovereign immunity, and they asserted that Defendants had waived sovereign immunity.  SUF, ¶ 7.

On November 16, 2011, Plaintiffs' counsel and Defendants' counsel met in person to discuss and reach agreements on how to narrow the factual and legal issues for the summary judgment motions, which were then due on February 16, 2012.  SUF, ¶ 8.  During the meeting, the parties' counsel again discussed the issue of sovereign immunity, and Defendants' counsel

again represented that Defendants were not asserting sovereign immunity, and that Defendants had waived sovereign immunity.  <u>SUF</u>, ¶ 9.

At the conclusion of the meeting on November 16, 2011, the parties' counsel agreed that Plaintiffs' counsel would draft a letter to memorialize the agreements and understandings reached at the meeting.  <u>SUF</u>, ¶ 10.  On that same day, Plaintiffs' counsel drafted a letter and transmitted it to Defendants' counsel.  <u>SUF</u>, ¶ 11.  Among other agreements, the letter refers to the discussion about sovereign immunity and states "Defendants acknowledge that the state has waived this [sovereign immunity] defense."  The letter then proposed that Defendants provide a formal interrogatory response to confirm that they had waived sovereign immunity.  <u>SUF</u>, ¶ 12.

The day after the meeting, on November 17, 2011, Plaintiffs served their Third Interrogatories and Requests to Produce.  <u>SUF</u>, ¶ 13.  These interrogatories included a request regarding sovereign immunity as referenced in the November 16, 2011 letter.  On March 19, 2012, after several extensions of time, Defendants served responses to the interrogatories which included the following:

> 17.     Does the State intend to rely upon the defense of sovereign immunity? …
>
> RESPONSE:  Defendants removed the claim to federal court.  Accordingly, Defendants do not intend to assert 11th Amendment immunity.  Defendants do not intend to assert they are otherwise immune from the FLSA in this action.

<u>SUF</u>, ¶ 14.

Following the meeting on November 16, 2011, the parties proceeded as agreed and completed extensive discovery in preparation for filing summary judgment motions on the issue of the salary test, liquidated damages and willfulness under the salary test.  <u>SUF</u>, ¶ 15.  This discovery occurred after two mediation sessions failed to resolve the claims.  <u>SUF</u>, ¶ 16.  On May 3, 2012, the parties filed another Joint Motion to Amend the Discovery Schedule/Order, approved

by the Court on May 11, 2012, establishing the deadline for summary judgment motions as June 22, 2012.  SUF, ¶ 17.

On May 30, 2012, Defendants filed a Substitution of Appearance, followed by Defendant's Motion to Amend Their Answer, dated June 7, 2012, seeking for the first time in this case, after almost two and one half years of litigation, to assert a defense of sovereign immunity.  SUF, ¶ 18.  After a hearing on the Defendants' Motion to Amend, held on July 3, 2012, and then a second hearing on October 24, 2012, the Court directed the parties to file dispositive motions on the issue of sovereign immunity by November 26, 2012.  SUF, ¶ 19.

## III.  Argument.

There are three independent bases for concluding that the State of Vermont has waived sovereign immunity for purposes of this FLSA suit:  (1) the Vermont legislature expressly waived sovereign immunity for FLSA suits by mandating under 21 V.S.A. § 384(b)(7) that state employees "are covered by the U.S. Federal Fair Labor Standards Act"; (2) the State waived sovereign immunity by its affirmative conduct of removing this case to federal court and consenting to this Court's jurisdiction; and (3) the State waived sovereign immunity by its affirmative conduct in this litigation of representing and agreeing that it had waived sovereign immunity.  Lastly, Plaintiffs maintain that the 5-4 decision in Alden v. Maine, 527 U.S. 706 (1999), upon which Defendants must rely for an assertion of immunity from FLSA suits, was wrongly decided and Plaintiffs urge that the correct analysis is found by the four Justices joining in Justice Souter's dissent.[1]

---

[1]  Plaintiffs seek to preserve this argument should the issue of sovereign immunity be appealed, as they recognize that this Court is presently bound to follow the majority decision in Alden v. Maine.  It is, however, entirely possible that the Supreme Court would be inclined to revisit this sharply divided decision at a future time.

**A.      The Vermont legislature has expressly waived sovereign immunity under 21 V.S.A. § 384(b)(7).**

In <u>Alden v. Maine</u>, 527 U.S. 706, 712 (1999), the Supreme Court held that Congress did not have the power to subject nonconsenting States to FLSA suits for damages in state courts.[2] Accordingly, the first question is whether the State of Vermont has waived its sovereign immunity and consented to be sued under the FLSA.  This question is answered by turning to state law.  <u>See</u> <u>Alden v. Maine</u>, 527 U.S. 706, 757-58 (1999) (looking to Maine's state law to answer the question of whether Maine had waived its sovereign immunity and consented to suit for damages under the FLSA).

> … *Alden* did not make the Eleventh Amendment standard for waiver of state sovereign immunity applicable to the question whether a state has waived its sovereign immunity against being sued in its own courts.  Whether a state has waived its sovereign immunity against being sued in federal court, that is, whether it has waived its protection under the Eleventh Amendment against such actions, presents a federal-law question. Whether a state has waived its sovereign immunity against being sued in its own courts presents a state-law question. We are aware of no principle or authority, and the state has not identified any, that supports the idea that federal law controls the resolution of such a state-law question.  Hence, we reject the state's argument that the Eleventh Amendment standard for waiver of sovereign immunity applies to whether the state has waived its immunity against being sued on FLSA claims in state court.

<u>Byrd v. Oregon State Police</u>, 238 P.3d 404, 406 (Ore. App. 2010).  Thus, the cases cited by Defendants in their prior memorandums regarding the "stringent" standard for waiving Eleventh Amendment immunity are inapplicable here.  <u>See</u> <u>e.g.</u>, <u>Defendants' Reply Memorandum in Further Support of its Motion to Amend the Answer</u> (Document # 110), at 10-11 (citing <u>Sossamon v. Texas</u>, 131 S. Ct. 1651, 1658 (2011) and <u>Edelman v. Jordan</u>, 415 U.S. 651, 673 (1974)).

---

[2]   Defendants cannot claim immunity in federal court under the Eleventh Amendment because they removed this case to federal court.  <u>See</u> <u>Part B</u>, <u>infra</u>.  Thus, they are left with arguing that they retain immunity outside of the Eleventh Amendment that they could have asserted in state court under <u>Alden v. Maine</u>, and which they are equally as entitled to assert here in federal court.  This argument is discussed and rejected in Part B below.

Under Vermont law, the legislature may waive the State's sovereign immunity expressly by statute.  Amy's Enterprises v. Sorrell, 174 Vt. 623, 623 (2002) (sovereign immunity precludes suits against State unless that immunity is expressly waived); LaShay v. Department of Social and Rehabilitation Services, 160 Vt. 60, 67 (1993) (sovereign immunity protects State from suit unless immunity is expressly waived by statute).  Here, the legislature has expressly waived sovereign immunity under 21 V.S.A. § 384(b)(7), which mandates that state employees "are covered by the U.S. Federal Fair Labor Standards Act."  This mandate is made within an exemption from the Vermont state overtime law as follows:

> (b) … an employer shall not pay an employee less than one and one-half times the regular wage rate for any work done by the employee in excess of 40 hours during a workweek. However, this subsection shall not apply to:
>
> > (7)   State employees who are covered by the U.S. Federal Fair Labor Standards Act.

To determine the legislative intent of declaring that State employees "are covered by" the FLSA, the Court should "begin with the plain meaning of the statutory language."  Mohamed v. Fletcher Allen Heath Care, 2012 VT 64, ¶ 17 (quoting State v. LeBlanc, 171 Vt. 88, 91 (2000)). "This Court must presume that all language in a statute was drafted advisedly, and that the plain ordinary meaning of the language used was intended."  Id. (quoting Comm. to Save the Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc., 137 Vt. 142, 153 (1979)).

> Ordinarily, a court need proceed no further with statutory construction when the meaning of the language is plain.  If confusion or ambiguity does not appear, then the statute is not construed, but rather is enforced in accordance with its express terms.  The plain, ordinary meaning of statutory language is presumed to be the expression of the legislative intent.  If, however, enforcing the plain language of a statute would do violence to the legislative scheme, the letter of a statute or its literal sense must yield where it conflicts with legislative purpose.   The primary objective of the court is to give effect to the intention of the legislature.  Not only the statute's language, but its subject matter, its consequences, and the reason and spirit of the law must be examined.

6

Dusharm v. Nationwide Ins. Co., 47 F. Supp. 2d 514, 520-21 (D. Vt. 1999) (Sessions, J.) (citations and quotations omitted).

The plain, ordinary meaning of the term "covered by" is that state employees are afforded the protections and remedies under the FLSA.  See American Heritage College Dictionary (3d ed.), at 320 (defining "cover" in part as "To place something upon or over, so as to protect," "To protect or shield from harm, loss, or danger" and "To compensate or make up for").  Indeed, the Vermont legislature and courts routinely use the phrase "covered by" to signify that a class of persons is afforded rights and remedies under a particular law or agreement.  Wolfe v. Yudichak, 153 Vt. 235, 248 (1999) ( "private volunteer firefighters are *covered by* workers' compensation"); 21 V.S.A. § 601(12)(J) (referring to "officers *covered by* this chapter"); 21 V.S.A. § 1451(4)(A) (referring to "employees *covered by* an approved short-time compensation plan"); Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 444 (2003) (referring to employees "*covered by* the Employee Retirement Income Security Act of 1974 (ERISA)"); Vt. Human Rights Comm'n v. State, 2012 VT 45, ¶ 7 (in context of insurance the term "coverage" denotes "inclusion within the scope of an insurance policy") (emphases added).

It is also helpful to look at the statutory scheme in which 21 V.S.A. § 384(b)(7) exists. Ran-Mar, Inc. v. Town of Berlin, 2006 VT 117, ¶ 5 ("We construe all parts of the statutory scheme together, where possible, as a harmonious whole"); Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 50 (1986) (legislative intent "is most truly derived from a consideration of not only the particular statutory language, but from the entire enactment, its reason, purpose and consequences").

21 V.S.A. § 384(b)(7) is found Subchapter 3 of Chapter 5 in Title 21, a subchapter which provides Vermont's minimum wage and overtime provisions.  The starting point for understanding the intent of Subchapter 3 is the legislature's declaration of policy:

> It is the declared public policy of the state of Vermont that workers employed in any occupation should receive wages sufficient to provide adequate maintenance and to protect their health, and to be fairly commensurate with the value of the services rendered.

21 V.S.A. § 381.  Based on this policy, the legislature enacted 21 V.S.A. § 384 to guarantee that workers employed in Vermont would receive adequate wages in the form of a minimum wage and overtime compensation.  The legislature mandated broad coverage for the minimum wage and overtime provisions, providing that "[e]mployers employing two employees or more are covered by this subchapter."  21 V.S.A. § 382.  The legislature defined "employee" as "any individual employed or permitted to work by an employer."  21 V.S.A. § 383(2).  The legislature crafted specific exemptions from the definition of "employee," but notably did not exempt state employees from the definition.  21 V.S.A. § 383(2)(A)-(I).  Finally, the legislature provided a civil remedy for "any employee [who] is paid by an employer less than the applicable wage rate to which the employee is entitled under this subchapter," which includes double damages, costs and reasonable attorney's fees.  21 V.S.A. § 395.

Significantly, prior to 1993, the legislature had specifically exempted state employees from the definition of "employee" in 21 V.S.A. § 383(2).  See 1993, Act. No. 227 (Adj. Sess.). By revising § 383(2) to remove state employees from the exemption, the legislature brought state employees within the definition of  "employee" thus affording them minimum wage and overtime protection under § 384.  At the same time, the legislature also added § 384(b)(7) to exempt state employees from the state overtime law (though not the minimum wage law).  See

8

1993, Act. No. 227 (Adj. Sess.) (exempting from the overtime law "[s]tate employees, who shall be covered by the U.S. Federal Fair Labor Standards Act").[3]

What is clear from reviewing the above provisions in Subchapter 3 and the legislative history is that the legislature intended that state employees would be afforded a private remedy under the FLSA, as opposed to state law, for unpaid overtime compensation. Buttressing this conclusion is § 384(b)(6) in which the legislature exempted from the state overtime law "employees of a political subdivision of this state" *without* the addition of the language applicable to state employees "who are covered by the U.S. Fair Labor Standards Act." Clearly, had the legislature intended to exempt state employees from the state overtime law, without affording them remedy under the FLSA, it knew how to do so.

Defendants have blindly suggested that 21 V.S.A. § 384(b)(7) "simply recognizes that state employees are, in fact, covered by the FLSA – and, therefore, protected by the federal Department of Labor." Defendants' Reply Memorandum in Further Support of its Motion to Amend the Answer (Document # 110), at 11. Apparently, Defendants are suggesting that the U.S. Department of Labor could enforce the FLSA against the State, but the Plaintiffs cannot. This is nothing but a truism. There is no support in the plain language of the statute for such an interpretation, and the Court should not be persuaded to read into the statute something which is clearly not there. State v. O'Neill, 165 Vt. 270, 275 (1996) ("It is inappropriate to read into a statute something which is not there unless it is *necessary* in order to make the statute effective") (emphasis in original). The plain language of the statute shows that the legislature intended for

---

[3]   In 2009, the legislature slightly revised the language of § 384(b)(7) from "[s]tate employees, who shall be covered by the" FLSA, to "[s]tate employees who are covered by the" FLSA. See 2009, Act No. 54. Legislative research has yielded no explanation for this revision and it is presumed to be simply a stylistic change.

state employees to be "covered by" the FLSA which includes the civil remedy being pursued in this action.

Although the Vermont Supreme Court has not had occasion to find a waiver of sovereign immunity under 21 V.S.A. § 384(b)(7), a Vermont trial court has found waiver of sovereign immunity under a similar statutory scheme in the Fair Employment Practices Act (FEPA), 21 V.S.A. § 495 et seq.  See Badgley v. Walton, Docket No. 538-11-02 Wmcv, 2006 Vt. Super. LEXIS 19 (August 3, 2006) (Wesley, J.) (affirmed on other grounds by Badgley v. Walton, 2010 VT 68).  In that case, the court looked to the definitions and remedies under FEPA to determine that the legislature had waived the State's sovereign immunity.

> In passing FEPA, the Vermont Legislature expressly waived the State's sovereign immunity for discriminatory acts in employment by State departments and officials generally. This conclusion is based primarily on the FEPA definition of "employer," which is very broad, including *any governmental body* without exception. 21 V.S.A. § 495d(1).  Moreover, the remedies section provides that any person aggrieved by an unlawful discriminatory act may bring an action for damages or equitable relief, without excluding State employees. 21 V.S.A. § 495b(b).

2006 Vt. Super. LEXIS 19, at 2.

Other states have found waiver of sovereign immunity in state court under statutes and regulations that are much less explicit than 21 V.S.A. § 384(b)(7).  In Anthony v. State, 632 N.W.2d 897 (Iowa 2001), the State of Iowa claimed sovereign immunity in state court under Alden v. Maine in an overtime suit brought by state employees under the FLSA.   The Iowa Supreme Court rejected the sovereign immunity defense by looking to the state statutory scheme for payment of wages, as well as rules adopted pursuant to the statute, and determining that the scheme as a whole included FLSA overtime compensation.

> We are convinced that the statutory scheme for deriving pay plans has been implemented in a manner that includes FLSA overtime remuneration as compensation owed by an employer.  Sections 91A.8 and 91A.10(3) provide an

express consent to sue in the Iowa courts for purposes of recovering any
compensation thus owed.  We affirm the judgment of the district court rejecting
the State's sovereign-immunity claim.

632 N.W.2d at 902.

In sum, the only logical construction of 21 V.S.A. § 384(b)(7) is that the legislature
intended to waive sovereign immunity and allow state employees to sue under the FLSA for
unpaid overtime compensation.  The mandate that state employees "are covered by" the FLSA
cannot be given any other meaning.

**B.    The State's act of removing this case to federal court waived all immunity.**

Even if 21 V.S.A. § 384(b)(7) is not found to be a waiver of sovereign immunity, the
Defendants waived all sovereign immunity by removing the FLSA claim to this Court and
consenting to this Court's jurisdiction.  This conclusion is reached by looking to Lapides v. Bd. of
Regents, 535 U.S. 613 (2002) and the circuit court precedents which have construed and applied
Lapides to factual situations similar to the one at hand.  The Second Circuit has not had an
opportunity to construe the reach of Lapides as other circuit courts have done.

In Lapides v. Bd. of Regents, 535 U.S. 613 (2002), the State of Georgia removed a case to
federal court and then sought to invoke sovereign immunity.  The Supreme Court held that the act of
removing the case to federal court constituted a waiver of the state's sovereign immunity.
According to the Supreme Court, "removal is a form of voluntary invocation of a federal court's
jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here
of state law) in a federal forum."  Id., at 624.  Given the specific facts of Lapides—involving
removal of a state law claim for which immunity had already been waived in state court
proceedings—the Supreme Court did not answer the question of whether a state's removal to
federal court would waive immunity under other scenarios.  However, the broad language of
Lapides suggests that removal waives all immunity.

11

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand. And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results.

535 U.S. at 619.  Here, Defendants (1) invoked this Court's jurisdiction, thereby contending that the Judicial power of the United States does extend to this case; and (2) now assert inconsistently that this Court's Judicial power does not extend to the case at hand.

Other circuit courts have construed Lapides to disallow the inconsistent positions that the Defendants seek to take here.  Recently, the Seventh Circuit analyzed the broad language in Lapides and explained that "most Courts of Appeals have applied the rule of *Lapides* to all instances of removal initiated by a state."  Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc., 653 F.3d 448, 461 (7th Cir. 2011).  The facts in Phoenix involved the State of Wisconsin challenging a decision of the Trademark Trial and Appeal Board by filing a suit in federal district court.  When the defendant filed counterclaims against the state, the state asserted sovereign immunity.  After a lengthy analysis of Lapides and other circuit court decisions, the Seventh Circuit determined that the act of voluntarily consenting to a federal court's jurisdiction (through removal or otherwise) constitutes a waiver of all immunity.  653 F.3d at 460-61.  The Seventh Circuit determined that a narrower reading of Lapides would lead to inconsistency and difficult application, the very result that was eschewed in Lapides.  Id.  Under the Seventh Circuit's straightforward interpretation of Lapides, it is simply a matter of a state's "affirmative decision to place a dispute in the federal court's hands that effects a waiver of immunity."  Id. at 464.

In reaching this conclusion, the Seventh Circuit found support in Lombardo v. Pennsylvania Dep't of Public Welfare, 540 F.3d 190, 198 (3d Cir. 2008) ("We hold that the [State]'s removal of federal-law claims to federal court effected a waiver of immunity from suit

12

in federal court."); Embury v. King, 361 F.3d 562, 564 (9th Cir. 2004) (finding that Lapides applies to action removed by the state to federal court based on either state or federal law); Estes v. Wyoming Dep't of Transp., 302 F.3d 1200, 1206 (10th Cir. 2002) (same); and Meyers v. Texas, 410 F.3d 236 (5th Cir. 2005). Indeed, the Seventh Circuit noted that, at the time of its decision on August 5, 2011, only the Fourth Circuit, in Stewart v. North Carolina, 393 F.3d 484 (4th Cir. 2005), had limited Lapides to its facts.

> Like the Fifth Circuit, we regard the Fourth Circuit's *Stewart* decision as an outlier that "misconstrues important principles animating *Lapides*," *Meyers*, 410 F.3d at 249, and we join the majority of our other sister circuits in reading *Lapides* to state a more general rule.

653 F.3d at 461.

After the Seventh Circuit's decision in Phoenix, the First Circuit in Bergemann v. R.I. Dep't of Envtl. Mgmt., 665 F.3d 336 (2011) declined to follow the majority position and, like the Fourth Circuit, limited Lapides to its facts. In so doing, the First Circuit adopted a vague, imprecise rule holding that "waiver by litigation conduct transpires only when a state employs procedural maneuvering to gain an unfair tactical advantage." 665 F.3d at 432. However, as noted in Lapides, a court should not be required to evaluate a state's motives for removing a case to federal court because "[m]otives are difficult to evaluate, while jurisdictional rules should be clear." 535 U.S. at 621. Moreover, "the rule governing voluntary invocations of federal jurisdiction has rested upon the problems of inconsistency and unfairness that a contrary rule of law would create." Id., at 622. See also Phoenix, 653 F.3d at 460 (concluding that this language in Lapides supports a general rule that all instances of removal waive immunity).

In this case, it is undisputed that the Defendants voluntarily invoked and consented to this Court's jurisdiction when they filed their Notice of Removal. In the Notice of Removal, Defendants assert that "[a]ll Defendants consent to removal," then they describe the Plaintiff's

FLSA claims, including the claim for damages, and then they state that "[t]his Court has original jurisdiction under 28 U.S.C. § 1331."  Notice of Removal, at 2.  For Defendants to now claim that this Court lacks the power to resolve the claims that *they* brought to this Court is an inconsistency that cannot be reconciled.  This Court should follow the well-reasoned decision of the Seventh Circuit to conclude that the Defendants' voluntary act of removing this case to federal court constitutes waiver of immunity and consent for this Court to resolve the claims that are now before it.

       **C.**    **The State waived sovereign immunity by representing and agreeing that they had waived sovereign immunity.**

Even if Defendants did not waive sovereign immunity by their act of removing this case to federal court, they have waived sovereign immunity by affirmatively waiving sovereign immunity in representations to Plaintiffs, in an agreement with Plaintiffs, and in a sworn interrogatory response. As noted above, Lapides determined that an affirmative "litigation act" by a state constitutes a waiver of sovereign immunity.  535 U.S. at 620 (focusing "on the litigation act the State takes that creates the waiver").  Indeed, there is a long line of precedents showing that a state can waive sovereign immunity.  Clark v. Barnard, 108 U.S. 436, 447 (1883) (describing a state's immunity as "a personal privilege which it may waive at pleasure"); Gunter v. Atlantic C. L. R. Co., 200 U.S. 273, 284 (1906) ("Although a State may not be sued without its consent, such immunity is a privilege which may be waived"); Porto Rico v. Ramos, 232 U.S. 627, 632 (1914) (sovereign cannot revoke its waiver of immunity "to come in and go out of court at its will, the other party having no right of resistance to either step").

One of the rationales underlying the holding in Lapides is to prevent a state from "selective use of 'immunity' to achieve litigation advantages."  535 U.S. at 620 (citing Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring)).  In Justice

Kennedy's concurrence in <u>Schacht</u> he notes the unfairness of allowing a state to make a belated assertion of immunity:

> In permitting the belated assertion of the Eleventh Amendment bar, we allow States to proceed to judgment without facing any real risk of adverse consequences. Should the State prevail, the plaintiff would be bound by principles of res judicata. If the State were to lose, however, it could void the entire judgment simply by asserting its immunity on appeal.

<u>Schacht</u>, 524 U.S. at 394.  Though Justice Kennedy refers to the Eleventh Amendment, his reasoning applies equally to any assertion of immunity.  Instead of allowing a state "to come in and go out of court at its will," <u>Ramos</u>, <u>supra</u>, 232 U.S. at 632, Justice Kennedy suggests that immunity should be treated akin to a personal jurisdiction defense.  524 U.S. at 394 ("immunity bears substantial similarity to personal jurisdiction requirements, since it can be waived and courts need not raise the issue *sua sponte*").

In this case, Defendants made an affirmative and conscious decision to proceed with this case in federal court on the merits.  They certainly could have filed a motion to dismiss—in fact, they did file a motion to dismiss—but they chose not to raise a sovereign immunity defense.  Plaintiffs also could have (and would have) filed a motion at the outset of this case to resolve the issue of sovereign immunity if Defendants had made it known that they intended to assert the defense.  This is precisely why the issue of sovereign immunity was raised time and again by Plaintiffs—in the Complaint, in the Opposition to the Motion to Dismiss, in numerous conversations with Defendants' counsel, in a meeting on November 16, 2011 with Defendants' counsel, and lastly in discovery.  Time and again, for almost two and one half years, Defendants represented and agreed that they were not raising sovereign immunity, even going so far as stating in sworn interrogatory responses that "Defendants do not intend to assert they are … immune from the FLSA in this action."

To allow the State to affirmatively waive sovereign immunity and to proceed with litigation on the merits, only to later invoke sovereign immunity at its pleasure, would encourage uncertainty, unfairness and wasted time and resources.  As noted by Justice Kennedy, a state could proceed with litigation "without facing any real risk of adverse consequences."  There is no logical reason to afford a state such a safeguarded existence in this or any other court.  The Court should conclude that the Defendants' affirmative conduct in this litigation has waived sovereign immunity.

> **D.**    **Alden v. Maine was incorrectly decided and should be overruled.**[4]

In Alden v. Maine, the United States Supreme Court reviewed the constitutionality of the provisions of the FLSA authorizing an individual suit against a State without regard to the State's consent.  The Court determined by a narrow margin of 5-4 that "the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts."  527 U.S. at 712.  Justice Souter, joined by Justices Stevens, Ginsburg and Breyer, dissented from the opinion concluding that "state sovereign immunity could not have been thought to shield a State from suit under federal law on a subject committed to national jurisdiction by Article I of the Constitution.  Congress exercising its conceded Article I power may unquestionably abrogate such immunity."  527 U.S. at 762.  Justice Souter went on to cite pre-revolutionary state charters, debates over the Constitution, and the Federalist Papers, and sharply criticized the majority decision:

> The Court's rationale for today's holding based on a conception of sovereign
> immunity as somehow fundamental to sovereignty or inherent in statehood fails
> for the lack of any substantial support for such a conception in the thinking of the
> founding era.

---

[4]  Prior to Alden, the Supreme Court has had a history of changing its position on the applicability of the FLSA to the States.  See Nat'l League of Cities v. Usery, 426 U.S. 833 (1976); Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528.

527 U.S. at 798.  Justice Souter then noted that the Court had already determined that Congress

had authority to extend FLSA coverage to state employees:

> Hence the flaw in the Court's appeal to federalism. The State of Maine is not sovereign with respect to the national objective of the FLSA. [a] It is not the authority that promulgated the FLSA, on which the right of action in this case depends. That authority is the United States acting through the Congress, whose legislative power under Article I of the Constitution to extend FLSA coverage to state employees has already been decided, see *Garcia* v. *San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 83 L. Ed. 2d 1016, 105 S. Ct. 1005 (1985), and is not contested here.

527 U.S. at 800.  Justice Souter has maintained his criticism for the decision in <u>Alden</u>.  <u>See</u> <u>Jinks</u>

<u>v. Richland County</u>, 538 U.S. 456, 467 (2003) (Souter, J., concurring) ("I do not signal any

change of opinion from my dissent in <u>Alden v. Maine</u>").  In this Motion, Plaintiffs urge that the

well-reasoned arguments made by Justice Souter in his dissent in <u>Alden v. Maine</u> should be

adopted to overrule the majority decision.

**IV.    Conclusion**

The Court should conclude that the State has waived sovereign immunity for purposes of

this FLSA suit and, accordingly, the Court should grant judgment in Plaintiffs' favor on the

question of whether Defendants' are entitled to sovereign immunity in this case.

DATED at Burlington, Vermont this 26th day of November, 2012.

BERGERON PARADIS & FITZPATRICK, LLP
Attorneys for Plaintiffs

By:    */s/ Thomas H. Somers*               By:    */s/ Adam P. Bergeron*
     Thomas H. Somers, Esq.                      Adam P. Bergeron, Esq.
     Bergeron Paradis & Fitzpatrick, LLP           Bergeron Paradis & Fitzpatrick, LLP
     27 Main Street                              27 Main Street
     Burlington, VT  05401                        Burlington, VT  05401
     Tel. 802.863.1191                           Tel. 802.863.1191
     Fax. 802.863.5798                           Fax. 802.863.5798