UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| SHEILA CONIFF, et al., individually and on behalf of themselves and all those similarly situated | ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) Docket No. 2:10-cv-32 |
| STATE OF VERMONT, et al., | ) ) ) |
| **Defendants.** | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs, through their counsel, Bergeron Paradis & Fitzpatrick LLP, pursuant to Local Rule 7(a)(3), submit the following Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the alternative, for Judgment on the Pleadings ("Defendants' Motion").

### Memorandum of Law

**I.     Introduction**

Plaintiffs must have fallen inadvertently into the proverbial rabbit hole—a place where nothing is what it appears to be. In this alternate reality, Defendants insist that plain statutory language does not mean what it says; their notice of removal does not mean what it says; their oral representations do not mean what they say; and their sworn interrogatory response does not mean what it says. While Defendants may be able to command their fate in some other place, in this proceeding they cannot alter reality to suit their objectives.

Unremarkably, nothing in the Defendants' Motion compels judgment in their favor on the basis of sovereign immunity. This defense has been waived categorically. First, by the plain

1

statutory language in 21 V.S.A. § 384(b)(7) which declares that state employees "are covered by the U.S. Federal Fair Labor Standards Act." Second, by the Defendants' act of removing this claim and placing it within this Court's jurisdiction. And third, by Defendants' express representations—both orally and under oath—that they had waived sovereign immunity. Defendants' Motion must be denied.

## II. Argument

### A. 21 V.S.A. § 384(b)(7) is an express waiver of sovereign immunity.

Defendants assert that this Court should not believe the plain words of §384(b)(7), but must instead apply the wrong legal standard to find that the words do not mean anything at all, that the Legislature simply exempted state employees from the overtime provisions of state law and then, just to assert a truism, added that they "shall be covered by the U.S. Federal Fair Labor Standards Act" and then amended it to "who are covered by the U.S. Federal Fair Labor Standards Act." It is obvious the Legislature intended to exempt state employees from the overtime provisions of state law and, instead of leaving them with no legal rights to overtime, the Legislature granted state employees rights under federal overtime law.

Defendants cannot escape the plain language of § 384(b)(7) so they simply ignore it along with the fundamental principle of statutory construction. Morenz v. Wilson-Coker, 415 F.3d 230, 234 (2d Cir. 2005) ("fundamental principle of statutory construction [is] that the starting point must be the language of the statute itself"); United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (where the language of a statute is plain, "the sole function of the courts is to enforce it according to its terms"); United States v. Cox, No. 2:05-CR-16, 2006 U.S. Dist. LEXIS 17181, *16 (March 28, 2006) (Sessions, J.) (declining to depart from the "well-established principle [of statutory construction] by adding a restriction that is nowhere in the text

of the statute"). The starting point here is the language stating that state employees "are covered by the U.S. Federal Fair Labor Standards Act." The plain meaning is, of course, that state employees *are covered by* the FLSA, including section 216(b) of the FLSA which provides the private right of action being pursued in this case.

The overwhelming failure of Defendants' analysis of § 384(b)(7) is evident in their tortured explanations for what the statute could mean. They suggest inexplicably that "section 384(b)(7) can be read as a simple acknowledgment that the FLSA applies to at least some state employees." Defendants' Motion, at 13. How Defendants find a limitation in the plain language of the statute, so that the FLSA applies to only "some state employees," is beyond any sense of reason. Such language is simply not there.

Defendants also offer that "section 384(b)(7), like the other exemptions enumerated in section 384(b), is simply definitional." Defendants' Motion, at 13. If the Legislature had intended to treat state employees "like the other exemptions," then § 384(b)(7) would read simply "state employees" without more. Cf. 21 V.S.A. § 384(b)(6) (exempting simply "employees of a political subdivision of this state" without mentioning the FLSA). That the Legislature intentionally granted to state employees coverage under the FLSA cannot be disregarded. Comm. to Save the Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc., 137 Vt. 142, 153 (1979) ("Court must presume that all language in a statute was drafted advisedly").

Finally, Defendants suggest that the Vermont Legislature could have intended that state employees are "protected by the federal Department of Labor" presumably under § 216(c), but somehow are not entitled to maintain a private action under § 216(b). See Defendants' Motion, at 12-13. For this incredible interpretation, Defendants cite one case, Williams v. Okla. Dep't of

Human Servs., 122 Fed. Appx. 958 (10th Cir. 2004), which should not be read to alter the plain language of § 384(b)(7).

As an initial matter, Williams is an unpublished opinion that "is not binding precedent," and the court itself "disfavors" citing to it. Id., at 958. Indeed, the Shepard's Citation Service does not report one other case as ever having cited Williams in the nearly nine years since it was written. Nonetheless, Williams analyzes an entirely different question than the one at issue here: whether Oklahoma had waived its Eleventh Amendment immunity to suit in federal court under standards adopted in federal case law. See 122 Fed. Appx. at 959-960 ("the issue is whether Oklahoma was agreed that its employees may sue to enforce their FLSA claims in federal court"). The Court concluded that under federal law "Oklahoma has [not] waived its immunity to FLSA claims in federal court." Id. (following Edelman v. Jordan, 415 U.S. 651, 673 (1974) and applying the standard for waiver of Eleventh Amendment immunity). Additionally, in contrast to the plain language of § 384(b)(7), Williams merely involved legislation and administrative rules suggesting that the state should *comply with* the provisions of the Federal Fair Labor Standards Act." Id.., at 959 (emphasis added). To "comply with" the FLSA has a very different meaning than an explicit declaration that state employees "are covered by" the FLSA, and thus afforded the protections of the FLSA.

Although Defendants appear comfortable with casting aside the fundamental principles of statutory construction, the Court should not be persuaded to do so, even when construing a statutory waiver of sovereign immunity. In Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571 (2008) the Supreme Court was asked to construe the scope of a statutory waiver of federal sovereign immunity under the Equal Access to Justice Act. The Government argued that the

statute must be construed narrowly in light of the statutory canon requiring strict construction of waivers of sovereign immunity. 535 U.S. at 589. The Supreme Court disagreed.

> The sovereign immunity canon is just that—a canon of construction. It is a tool for interpreting the law, and we have never held that it displaces the other traditional tools of statutory construction.

Id. Thus, where the language of the statute was clear, the Supreme Court enforced it according to its terms. Id. ("There is no need for us to resort to the sovereign immunity canon because there is no ambiguity left for us to construe").

Similarly, in City of LaPorte v. Barfield, 898 S.W.2d 288 (Tex. 1995), the Supreme Court of Texas considered whether the legislature had waived immunity under the Texas Anti-Retaliation law, Tex. Labor Code § 4.51.001, which prohibits a "person" from discharging or discriminating against an employee who files a workers' compensation claim. The court concluded that although a statutory waiver of immunity must be "clear and unambiguous" this rule cannot override legislative intent as discerned from the statute:

> Thus, we must determine whether the Legislature has by clear and unambiguous language waived municipal immunity for the retaliatory termination claims made in these cases. Unless it has done so, the City is entitled to prevail.
>
> One might suppose that this determination would be a relatively easy matter, and it would be, of course, had the Legislature ever stated, to take one extreme, that governmental immunity for retaliatory discharge claims is waived -- in those exact words -- just as it would be if, to take the other extreme, the Legislature had never broached the issue at all. In fact, however, what the Legislature has done is somewhere in between. As we shall see, it has used language strongly suggesting a waiver of immunity in contexts in which any other intention is hard to discern. ***The rule requiring a waiver of governmental immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded. Legislative intent remains the polestar of statutory construction.*** We will not read statutory language to be pointless if it is reasonably susceptible of another construction. If a statute leaves no reasonable doubt of its purpose, we will not require perfect clarity, even in determining whether governmental immunity has been waived.

5

898 S.W.2d at 291-92 (citations omitted) (emphasis added).[1] In this case, the Legislative intent as discerned from the plain language of the statue must control the result.

In addition to Defendants' disregard for plain statutory language, Defendants routinely cite the wrong legal standard: the standard in federal case law for waiver of Eleventh Amendment immunity. See Defendants' Motion, at 11-14 (citing repeatedly Edelman v. Jordan, 415 U.S. 651 (1974) and Sossamon v. Texas, 131 S. Ct. 1651 (2011)). In both Edelman and Sossamon the question was whether a state had consented to suit in federal court under the Eleventh Amendment by accepting federal funds under federal programs. It is clear, however, that the Court should look to Vermont state law to determine whether sovereign immunity has been waived by statute. See Alden v. Maine, 527 U.S. 706, 757-58 (1999) (looking to Maine's state law to answer the question of whether Maine had waived its sovereign immunity and consented to suit for damages under the FLSA); Byrd v. Oregon State Police, 238 P.3d 404, 406 (Ore. App. 2010) (distinguishing between waiver of Eleventh Amendment immunity under federal law and waiver of immunity pursuant to Alden under state law).

Under Vermont law, the question is whether there is an "express" waiver of immunity under § 384(b)(7). See Amy's Enterprises v. Sorrell, 174 Vt. 623, 623 (2002). An "express" waiver of immunity stands in contrast to an "implied" waiver. Jacobs v. State Teachers' Ret. Sys. of Vt., 174 Vt. 404, 415 (2002) (discussing the doctrine of implied waiver of sovereign immunity).[2] For example, an "implied" waiver of sovereign immunity has been found where a

---

[1] After the decision in Barfield, the Texas Legislature revised the statute to state that "[n]othing in this chapter waives sovereign immunity or creates a new cause of action." See Travis Cent. Appraisal Dist. v. Norman, 342 S.W.3d 54, 57 (Tex. 2011) (affirming the reasoning in Barfield but explaining that the revised statute supersedes the holding).

[2] In Jacobs, the Court declined to decide whether to adopt the doctrine of implied waiver of sovereign immunity, instead deciding that the plaintiff had alternative remedies which she did not pursue, thus foreclosing the doctrine of implied waiver of sovereign immunity. In this case, state employees have no alternative remedy to recover unpaid overtime compensation; accordingly, if waiver is not found to be express, it certainly must be implied.

statute defines certain retirement benefits for government employees, but provides no remedy to recover unpaid benefits. Id. (citing State Employees' Ass'n v. Belknap County, 448 A.2d 969, 972-73 (N.H. 1982) ("existence of a right to receive retirement benefits implies the existence of an appropriate remedy for recovering these benefits … [and] an implicit waiver of sovereign immunity"). Here, the Court does not need to imply a remedy. The remedy is found expressly in 29 U.S.C. § 216(b), a federal statute for which the Vermont Legislature has provided expressly that state employees "are covered by."

Finally, while ignoring the standard for waiver under Vermont case law, Defendants claim that "the Vermont Legislature uses clear and unequivocal language when it intends to waive the State's immunity from suit." Defendants Motion, at 12. For this proposition, Defendants cite the Vermont Tort Claims Act which provides that the State "shall be liable" for some torts committed by state employees. Id. (citing 12 V.S.A. § 5601(a)). This argument fails on two levels. First, stating that the State "shall be liable" is no more express than stating that state employees "are covered by" a statute that expressly grants a private right of action for money damages against the State. Second, if the Legislature knows how to waive immunity as claimed by Defendants, it is equally as clear that the Legislature knows how to preserve it as well. See e.g., 10 V.S.A. § 7040(a) ("No provision of this chapter shall constitute a waiver of sovereign immunity"); 30 V.S.A. § 611 ("No provision of this chapter shall constitute a waiver of sovereign immunity of the state"); 33 V.S.A. § 5122 ("This section shall not be construed to create a private right of action or a waiver of sovereign immunity"). If the Legislature had genuinely intended to give state employees only limited protection under the FLSA as suggested by Defendants, it was well within the Legislature's ability to express such intent. Absent any language to that effect, the Defendants cannot re-write the statute to suit their own desires. The

7

plain language of the statute compels the conclusion that state employees *are covered by* the FLSA, including § 216(b), and that the Legislature has waived sovereign immunity for suits under the FLSA.

> **B.     The State's act of removing this case to federal court waived immunity.**

Defendants, like Plaintiffs, acknowledge the circuit split, and the lack of Second Circuit guidance, as to the question of whether a state's act of removing a case to federal court waives immunity that the state otherwise might have asserted in state court.[3] Defendants urge the Court to follow a vague standard adopted in Bergemann v. R.I. Dep't of Envtl. Mgmt., 665 F.3d 336, 341-42 (2011), namely, that removal only effectuates a waiver of immunity in cases where it confers a special advantage on the state. Plaintiffs' maintain that the better approach is the "straightforward, easy-to-administer rule," Embury v. King, 361 F.3d 562, 566 (9th Cir. 2004), that has been adopted by a majority of the circuits. Under the straightforward approach, as described in Plaintiffs' Motion for Partial Summary Judgment (Document # 123), it is simply the act of removal that constitutes consent to the court's jurisdiction over the claims that were removed. See Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc., 653 F.3d 448, 464 (7th Cir. 2011) (it is the state's "affirmative decision to place a dispute in the federal court's hands that effects a waiver of immunity").

Like in Phoenix, in Embury v. King, the Ninth Circuit took a mechanical approach to interpreting Lapides and determined that after the State of California had removed a case to federal court, it had waived immunity, even for federal claims that were later asserted in an amended complaint. 361 F.3d at 566. While the Ninth Circuit referred to "Eleventh Amendment" immunity, it is clear that the Court was barring an immunity defense regardless of

---

[3] Of course, if the Court agrees with Plaintiffs that 21 V.S.A. § 384(b)(7) is a waiver of immunity, then the Court does not need to reach this conflict among the circuits.

8

the label.  Id. ("The removal is the waiver").  Indeed, the court did not even consider whether the federal claims could have been barred by immunity in state court because it did not matter, since the act of removal was consent to the federal court's jurisdiction.  Poignantly, the Court explained that "[a]llowing a State to waive immunity to remove a case to federal court, then 'unwaive' it to assert that the federal court could not act, would create a new definition of chutzpah."[4]  Id.  Defendants seek to do precisely that.  They removed this case to this Court and asserted that this court had original jurisdiction over the FLSA claims.  Now they claim (after nearly three years of litigation) that this Court does not.  See Defendants' Motion, at 7 (claiming their sovereign immunity defense is "sufficiently jurisdictional").  Defendants cannot have it both ways.

The holding in Bergemann upon which Defendants rely is premised on a perceived unfairness to states if they were required to remain in state court to assert immunity, instead of having the choice to remove to federal court to assert immunity.  665 F.3d at 342.  However, where, as here, the question of whether the State has waived immunity is a question under state law, which is wholly independent of the merits of the federal claim itself, it is not unfair at all to require the State to choose between (1) litigating the federal claim on its merits in federal court pursuant to the federal court's original jurisdiction; or (2) asserting its sovereign immunity defense under state law in the state court proceeding.  It serves no purpose to afford a defendant a choice between forums in which to pursue its state law sovereign immunity defense.  See Embury, 361 F.3d at 564 ("it makes no sense that the State does not object to having state law questions resolved by a federal tribunal--where federal jurisdiction cannot even be obtained but

---

[4]  Driving home its point, the court explains that "*Chutzpa* is that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan."  361 F.3d at 566, fn. 21.

9

for federal claims asserted in the same case--yet objects to federal jurisdiction over the federal claims").

Moreover, Defendants claim they have "underlying sovereign immunity 'inher[ing] in the system of federalism established by the Constitution." Defendants' Motion, at 15 (quoting Alden, 527 U.S. at 730). As explained in Alden, "[t]he principle of sovereign immunity preserved by constitutional design 'thus accords the States the respect owed them as members of the federation.'" 527 U.S. at 748-49 (quoting Puerto Rico Aqueduct and Sewer Authority, 506 U.S. 139, 146 (1993). "Private suits against nonconsenting States, however, present 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" Id., at749 (quoting In re Ayers, 123 U.S. 443, 505 (1887)). In this case, Defendants cannot be heard to complain about the indignity of being haled into this Court when they themselves walked through the courthouse door. Defendants are *not* nonconsenting; in fact, they brought the claim to this Court with the understanding that they were waiving sovereign immunity and would be litigating the claim on its merits. Defendants' Reply Memorandum in Support of Their Motion To Amend, at 2 (Document # 110) (claiming that Defendants assumed the "State was precluded from asserting its sovereign immunity by virtue of its removal of this case to federal court."). Defendants voluntarily came to this Court and asked it to resolve the FLSA claims. They should be held to their decision.

C. **Defendants waived sovereign immunity by representing and agreeing that they had waived sovereign immunity.**

This case is also greatly distinguished from Bergemann by the fact that Defendants waited almost two and one half years to claim immunity, and, even more significantly, they expressly waived sovereign immunity in their representations and sworn discovery responses to Plaintiffs. As noted, the holding in Bergemann is premised upon notions of fairness. 665 F.3d at

10

341 ("This desire to avoid unfairness has animated every invocation by the Supreme Court of the waiver by conduct doctrine."). There cannot possibly be one shred of fairness in a rule that allows a State to (1) remove a claim to federal court pursuant to the federal court's jurisdiction; (2) expressly waive sovereign immunity in representations and sworn discovery responses; (3) litigate for two and one half years at the expense of Plaintiffs and the federal judiciary; and (4) *then* raise immunity. In fact, the patent *unfairness* in such a rule has been acknowledged by other courts. See Embury, 361 F.3d at 563 (allowing state to raise immunity "after the State had litigated extensively in federal court but began to anticipate an unfavorable outcome, would waste the time and money of the litigants and the resources of the courts"); Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring) ("In permitting the belated assertion of the Eleventh Amendment bar, we allow States to proceed to judgment without facing any real risk of adverse consequences. Should the State prevail, the plaintiff would be bound by principles of res judicata. If the State were to lose, however, it could void the entire judgment simply by asserting its immunity on appeal."); Lapides v. Bd. of Regents, 535 U.S. 613, 620 (2002) (barring "selective use of 'immunity' to achieve litigation advantages"). Under principles of fairness—the very principles set forth in Bergmann, a case on which Defendants rely heavily—the Defendants' conduct in this case must preclude them from now raising a sovereign immunity defense.

## III. Conclusion

The Defendants' Motion should be denied because 21 V.S.A. § 384(b)(7) is an express waiver of sovereign immunity. Additionally, Defendants have waived sovereign immunity by removing this case to federal court, by representing that they have waived sovereign immunity, and by swearing in an interrogatory response that they have waived sovereign immunity. Nearly

11

three years after this case was filed, the Court should conclude that it retains the power to resolve the Plaintiffs' claims.

DATED at Burlington, Vermont this 21st day of December, 2012.

                BERGERON PARADIS & FITZPATRICK, LLP
                Attorneys for Plaintiffs

By:   */s/ Thomas H. Somers*
      Thomas H. Somers, Esq.
      Bergeron Paradis & Fitzpatrick, LLP
      27 Main Street
      Burlington, VT 05401
      Tel. 802.863.1191
      Fax. 802.863.5798

By:   */s/ Adam P. Bergeron*
      Adam P. Bergeron, Esq.
      Bergeron Paradis & Fitzpatrick, LLP
      27 Main Street
      Burlington, VT 05401
      Tel. 802.863.1191
      Fax. 802.863.5798

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December, 2012, I electronically filed Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the alternative, for Judgment on the Pleadings with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Jonathan Rose, Esq. and Steven Collier, Esq.

DATED at Burlington, Vermont this 21st day of December, 2012.

                BERGERON PARADIS & FITZPATRICK, LLP
                Attorneys for Plaintiffs

By:   */s/ Adam P. Bergeron*