UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| SHEILA CONIFF, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 2:10-cv-32 |
| | ) | |
| STATE OF VERMONT, et al. | ) | |
| | ) | |
| Defendants. | ) | |

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO SOVEREIGN IMMUNITY

Defendants State of Vermont, State of Vermont Agency of Administration, and Jeb Spaulding (collectively, the "State" or "Defendants") hereby oppose Plaintiffs' Motion for Partial Summary Judgment as to Sovereign Immunity ("Plaintiffs' Immunity Motion") (Doc. 123). As explained in detail below, and in the State's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or, in the Alternative, for Judgment on the Pleadings ("Defendants' Immunity Motion") (Doc. 122), the State did not waive its sovereign immunity by statute, by removal of this case to federal court, or through its discovery statements. Thus, the Court should dismiss Plaintiffs' Complaint in its entirety because Plaintiffs' claims are barred by the doctrine of sovereign immunity.

I.  THE VERMONT LEGISLATURE HAS NOT WAIVED SOVEREIGN IMMUNITY BY STATUTE.

   A.  To Effectively Waive Sovereign Immunity, A State Statute Must Be Express And Unequivocal.

As explained in the Defendants' Immunity Motion, courts analyzing putative statutory sovereign immunity waivers are guided by a "stringent" standard precluding a finding of waiver unless the statute waives sovereign immunity "by the most express language or by such

overwhelming implication from the text as will leave no room for any other reasonable construction." Defs.' Immunity Mot. at 11-12 (quoting *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)); *see also Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) ("[A] State's consent to suit must be unequivocally expressed in the text of the relevant statute."). Plaintiffs argue, however, that because this case turns not on Eleventh Amendment immunity from federal court jurisdiction, but rather the sovereign immunity from suit in state court recognized by *Alden v. Maine*, 527 U.S. 706 (1999), a more permissive waiver standard should be applied. Pls.' Immunity Mot. at 5. This argument misconstrues both the basis for the *Alden* decision and Vermont's sovereign immunity waiver standard.

To begin, there is no persuasive basis for applying a less exacting standard in determining whether a state statute waives *Alden* immunity than in determining whether such a statute waives Eleventh Amendment immunity, particularly where a state court has not yet weighed in on the matter. After all, both the immunity discussed in *Alden* and Eleventh Amendment immunity are protected by the Constitution. *See Alden*, 527 U.S. at 730 (state sovereign immunity from federal suit "inheres in the system of federalism established by the Constitution"); *Owen v. City of Independence*, 445 U.S. 622, 647 n.30 (1980) (noting that immunity from federal causes of action is a question of federal law).[1] Thus, application of a more relaxed standard for determining waiver would offend state sovereignty in the context of *Alden* immunity at least as much as in the Eleventh Amendment context. *See id*. at 749 ("In some ways . . . a congressional power to authorize private suits against non-consenting States in their own courts would be even more offensive to state sovereignty than a power to authorize the suits in a federal forum."). It

---

[1] *See also Alden*, 527 U.S. at 713 ("Eleventh Amendment immunity" derives not from the Eleventh Amendment itself, but from the "fundamental" immunity preserved to the states by the Constitution); *id*. at 736 ("[T]he bare text of the [Eleventh] Amendment is not an exhaustive description of the States' constitutional immunity from suit."); *id*. at 739-40 ("[T]he Constitution reserves to the States a constitutional immunity from private suits in their own courts.").

makes sense, then, that courts have applied the "stringent" Eleventh Amendment immunity waiver standard in determining whether a state has waived its *Alden* immunity. *See Hauser v. Rhode Island Dep't of Corr.*, 640 F. Supp. 2d 143, 148-49 (D.R.I. 2009); *Georgia Ports Auth. v. Andre Rickmers Schiffsbeteiligunsges MBY & Co. KG.*, 262 Ga. App. 591, 595, 585 S.E.2d 883, 886-87 (2003), *rev'd on other grounds*, 278 Ga. 631, 604 S.E.2d 189 (2004); *Cockrell v. Board of Regents of New Mexico State Univ.*, 132 N.M. 156, 165-66, 45 P.3d 876, 885-86 (2002).[2]

Contrary to Plaintiffs' argument, *see* Pls.' Immunity Mot. at 5 (quoting *Alden* and *Byrd v. Oregon State Police*, 238 P.3d 404, 406 (Ore. App. 2010)), the *Alden* court did not discuss whether it intended to depart from the "stringent" federal waiver standard in determining whether a state statute waives sovereign immunity. Naturally, any court confronted with the waiver issue must "look[ to] state law," Pls.' Immunity Mot. at 5, to determine whether a waiver has occurred, and it is therefore not surprising that the Supreme Court did so in *Alden*. *Alden*, 527 U.S. at 757-58. Given the importance the decision places on protecting state sovereignty from unwarranted interference, however, it is unlikely that the Court intended to adopt a less stringent waiver analysis without explicitly saying so.

Nonetheless, even were there some valid reason to treat *Alden's* waiver standard differently from the federal courts' Eleventh Amendment analysis, the Vermont standard essentially mirrors the federal analysis by requiring an "express" statutory waiver of immunity. *See Jacobs v. State Teachers Retirement Sys.*, 174 Vt. 404, 408, 816 A.2d 517, 521 (2002) (sovereign immunity waiver "must be accomplished expressly by statute"); *Sabia v. State*, 164 Vt. 293, 298, 669 A.2d 1187, 1191 (1995) (sovereign immunity waiver does not occur "unless

---

[2] Moreover, given the concerns of federalism illuminating the *Alden* immunity doctrine, a "stringent" waiver analysis is particularly appropriate where – as here – there is no state authority interpreting the statutory provision at issue. *Cf. Lee-Thomas v. Prince George's County Public Schools*, 666 F.3d 244 (4th Cir. 2012) (finding that the federal waiver standard applied to claim that immunity had been statutorily waived, but deferring to state court's decision finding that statute at issue waived immunity).

immunity is expressly waived by statute"). Indeed, Plaintiffs cannot point to any Vermont authority suggesting a significant deviation from the federal standard. Thus, the Court should apply a "stringent" analysis in deciding whether Vermont has waived its sovereign immunity by statute.

      B.      21 V.S.A. § 384(b)(7) Does Not Waive The State's Sovereign Immunity.

As explained in detail in the State's Immunity Motion, nothing in 21 V.S.A. § 384(b)(7) "expressly" or "unequivocally" waives the State's sovereign immunity. Defs.' Immunity Mot. at 11-14. To the contrary, the provision specifically exempts certain state employees (those "covered by" the FLSA) from the statute permitting suits for unpaid overtime. In light of its plain language, the only reasonable construction of section 384(b)(7) is that, like the other provisions in section 384(b), it simply defines an exemption from state overtime laws, and does so based on the recognition that at least some state employees are covered by the FLSA.[3] Plaintiffs' efforts to read a sovereign immunity waiver into the statute are unavailing.

      1.      Section 384(b)(7)'s Plain Language, Statutory Scheme, And Legislative History Show That The Legislature Did Not Intend To Waive The State's Immunity.

Plaintiffs' "plain language" argument – relying on the language in section 384(b)(7) suggesting that State employees are "covered by" the FLSA – misses the point. Again, there is no question that at least some of the State's employees are "covered by" the FLSA by virtue of the Supreme Court's decision in *Garcia v. San Antonio Metropolitan Transit Auth.*, 469 U.S. 528 (1985), and that the State is obligated to (and does) pay these employees in accordance with the federal law. Therefore, it is not remarkable that section 384(b)(7) recognizes this fact and uses it to define an exemption from State overtime law. As numerous courts have recognized, however,

---

[3] Notably, there are State employees who are *not* covered by the FLSA, such as, for example, certain elected officials and their staffs, employees of legislative bodies and "occasional" or "sporadic" government employees. *See* 29 C.F.R. §§ 553.11, 553.12 & 553.30.

4

language making reference to or recognizing the State's obligation to comply with federal law does not evidence a state's intent to waive its constitutional immunity from suit.[4] *See Williams v. Oklahoma Dep't of Human Servs.*, 122 Fed. Appx. 958 (10th Cir. 2004) ("The issue is not whether [the state] has agreed to comply with the FLSA; the issue is whether [the state] has agreed its employees may sue to enforce their FLSA claims.").[5]

This is no less true in Vermont, *see Sabia*, 164 Vt. at 208, 669 A.2d at 1191 (immunity must be "expressly *waived* by statute" (emphasis added)), where the legislature has shown repeatedly that it knows how to explicitly waive the State's sovereign immunity when it intends to do so. As noted in the Motion to Dismiss, the Vermont Tort Claims Act, for example, expressly provides that the state "shall be liable" for certain torts committed by State employees. 12 V.S.A. § 5601(a). The legislature has adopted similar language expressly permitting suit in various provisions of Title 21. *See*, *e.g.*, 21 V.S.A. § 345a(1) (employers, including the State, "shall be liable" to employees for failing to pay benefits or wage supplements due under an agreement); 21 V.S.A. § 395 (expressly providing for a "civil action" to recover unpaid wages[6]); 21 V.S.A. § 474(b) (allowing "civil action" for violation of Parental and Family Leave Act); 21

---

[4] Indeed, the *Alden* Court refused to find a sovereign immunity waiver even though the statutory scheme at issue in that case contained numerous references to the FLSA. *See*, *e.g.*, Me. Rev. Stat. Ann. tit. 26, §§ 621-A, 663(b), 664(2-A), 772(2), 1082, 1195, 2173, 3203.

[5] *See also Mueller v. Thompson*, 133 F.3d 1063, 1064 (7th Cir. 1998) ("The fact that the State's labor department has copied the federal overtime provisions into state law does not transform state into federal law."); *Jarrett v. Alexander*, 235 F. Supp. 2d 1208, 1215 (D. Ala. 2002) (finding no waiver of immunity even though the state "may have incorporated portions of the FLSA or its regulations into state law, and even though state officials may consider the State to be bound to comply with the FLSA"); *Hauser*, 640 F. Supp. 2d at 149 ("[T]he simple enactment of wage provisions reflecting or mirroring the FLSA, without more, is too thin a reed on which to find clear waiver."); *Taylor v. Virginia*, 951 F. Supp. 591, 600-01 (E.D. Va. 1996) (multiple statutory and policy references recognizing obligation to comply with FLSA did not constitute sovereign immunity waiver); *Janowski v. Division of State Police*, 981 A.2d 1166, 1170-71 (Del. 2009) (incorporation of federal military discrimination laws into state statute did not waive state's sovereign immunity).

[6] Again, section 384(b)(7) expressly provides that certain state employees (i.e., those "covered by" the FLSA) are not subject to the overtime provisions in the Vermont wage statute, and thus overtime claims by those state employees do not fall within the sovereign immunity waiver in section 395.

V.S.A. § 495b(b) (allowing for an "action in superior court" for employees aggrieved by violation of the Fair Employment Practices Act). In light of these clear expressions of intent to allow private suit in other areas, the Court should reject Plaintiffs' argument that the legislature intended to waive immunity in the present context without actually saying it was doing so.

Finally, Plaintiffs' argument that section 384(b)(7) was expressly intended to waive immunity is undermined by the statute's history. Section 384(b)(7) was originally enacted in 1993, at a time when it appeared that sovereign immunity was not available as a defense to private FLSA suits. *See Mueller v. Thompson*, 133 F.3d 1063, 1065 (7th Cir. 1998) (discussing history of immunity from FLSA suits and noting that between approximately 1974 – when the FLSA was amended to abrogate state immunity – and the Supreme Court's 1996 *Seminole Tribe* decision, there was no reason to believe states were immune from suit under the FLSA in *any* forum). It is simply nonsensical to interpret section 384(b)(7) as an "express" statement of the legislature's intent to waive a right that did not exist at the time the provision was enacted. *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Exp. Bd.*, 527 U.S. 666, 681-82 (1999) (rejecting claim that immunity can be constructively waived, noting that "[t]he classic description of an effective waiver of a constitutional right is the intentional relinquishment or abandonment of a *known* right or privilege" (emphasis added")); *cf. Mueller*, 133 F.3d at 1066 ("[I]t is unlikely that an intention to waive their Eleventh Amendment defense to [FLSA] suits will be found on the basis of state enactments prior to *Seminole Tribe* [the case establishing that the Eleventh Amendment generally bars such suits].").

Thus, nothing about the language in section 384(b)(7), the legislative scheme in which it resides, or its history suggests a clear intent on the part of the Vermont legislature to waive the State's immunity from private suit.

2. The Cases Cited By Plaintiff Do Not Support A Conclusion That Section 384(b)(7) Waives The State's Immunity.

In their Immunity Motion, Plaintiffs cite three cases – two from other jurisdictions and one from a Vermont superior court – in support of their position that section 384(b)(7) should be interpreted as a waiver of sovereign immunity. None of these cases, however, stand for anything more than the unsurprising proposition that courts will require "express" language waiving immunity.

First, the Iowa Supreme Court's decision in *Anthony v. State*, 632 N.W.2d 897 (2001) (cited in Pls.' Immunity Mot. at 10), turned on that court's conclusion that Iowa intended payments due under the FLSA to be "wages" for purposes of state's wage claim statute, which explicitly provides that employers – including state government – "shall be liable to the employee" for unpaid wages. *Id.* at 902. Unlike the statutes at issue in that case, however, section 384(b)(7) not only is silent on state liability, but explicitly *excludes* state employee overtime claims from coverage under Vermont's wage claim statute. *Cf. Cockrell v. Board of Regents of New Mexico State Univ.*, 132 N.M. 156, 167, 45 P.3d 876, 887 (2002) (finding it "noteworthy" for purposes of FLSA waiver analysis that state wage law expressly excluded state employee claims).

Second, in *Byrd v. Oregon State Police*, 236 Or. App. 555, 238 P.3d 404 (2010) (cited at Pls.' Immunity Mot. at 5), the Oregon Court of Appeals held that an FLSA claim is a "tort" as that term is defined by the Oregon Tort Claims Act, which explicitly provides that "every public body is subject to action or suit for its torts." *Id.* at 558, 238 P.3d at 405. Again, section 384(b)(7) lacks a similarly direct statement of intent to waive immunity from suit, but in any event, Plaintiffs here do not claim that the FLSA is a "tort" for purposes of the Vermont Tort Claims Act, which also lacks the broad definitional language at issue in *Byrd*. *See Byrd*, 236 Or.

7

App. at 558, 238 P.3d at 405 (quoting definition of "tort" as breach of any "legal duty that is imposed by law . . . for which the law provides a civil right of action").[7]

Finally, while acknowledging that the Vermont courts have yet to address the meaning of section 384(b)(7), Pls.' Immunity Mot. at 10, Plaintiffs suggest that *Badgley v. Walton*, No. 538-11-02 Wmcv, 2006 WL 6047600 (Vt. Super. Ct. Aug. 3, 2006) provides support for their position that Vermont courts interpret immunity waivers broadly. Nothing in *Badgley*, however, suggests a deviation from the general rule that sovereign immunity waivers must be "express." In *Badgley*, a Vermont Superior Court rather unsurprisingly observed that the Vermont Fair Employment Practices Act ("FEPA") – which expressly permits "an action in superior court" for violations of its provisions – generally waives the State's immunity for FEPA claims because the State is a "governmental body" for purposes of that law's definition of "employer." *Id*. at *2. However, the court *rejected* a claim that this general waiver extended to a specific type of claim – involving mandatory retirement of public safety officers – expressly excluded from the general waiver of immunity. *Id*. at *3 (interpreting 21 V.S.A. § 495f). Thus, the *Badgley* decision simply confirms that Vermont courts will not extend an immunity waiver (like the Vermont wage claim statute, for example) to claims that are expressly excluded (such as overtime claims by State employees). The decision has no bearing on the issue of whether section 384(b)(7) waives the State's immunity under the FLSA except that, like the *Anthony* and *Byrd* cases, it confirms that explicit language is required for a sovereign immunity waiver.

---

[7] Moreover, other courts have rejected attempts to bootstrap FLSA claims into other state causes of action. *See*, *e.g.*, *Hauser*, 640 F. Supp. 2d 143, 149 (D.R.I. 2009) (contrasting references to FLSA in Rhode Island law with "explicit[]" waiver in tort claims act); *Hartman v. Regents of Univ. of Colorado*, 22 P.3d 524, 529 (Colo. Ct. App. 2000), *aff'd sub nom.*, *Middleton v. Hartman*, 45 P.3d 721 (Colo. 2002); *cf. Cockrell*, 132 N.M. at 164-65, 45 P.3d at 884-85 (rejecting attempt to bootstrap FLSA waiver into state statute waiving immunity for "actions based on a valid written contract").

Section 384(b)(7) cannot be interpreted as an "express" and/or "unequivocal" waiver of sovereign immunity. Contrary to Plaintiffs' argument, the only reasonable construction of the provision is that like the other provisions in section 384(b), it simply defines an exemption from state overtime laws, and does so based on a recognition that some state employees are "covered by" the FLSA. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1659 (2011) ("[W]here a statute is susceptible of multiple plausible interpretations, including one preserving immunity, we will not consider a State to have waived its sovereign immunity."). Accordingly, the State has not waived its immunity from suit under the FLSA by statute.

II. THE STATE DID NOT WAIVE IMMUNITY BY REMOVING THIS CASE TO FEDERAL COURT.

As explained in the State's Immunity Motion, the waiver-by-removal doctrine announced in *Lapides v. Board of Regents*, 535 U.S. 613 (2002), does not apply in this case because the State is immune from FLSA suit in either state or federal court and thus, did not gain any unfair tactical advantage – i.e., immunity to which it would not otherwise have been entitled – by removing the claim to federal court. Defs.' Immunity Mot. at 14-16 (citing and discussing *Bergemann v. Rhode Island Department of Environmental Management*, 665 F.3d 336 (1st Cir. 2011); *Stewart v. North Carolina*, 393 F.3d 484 (4th Cir. 2002); *Watters v. Wash. Metro. Area Transit Auth.*, 295 F.3d 36 (D.C. Cir. 2002)).

In their Immunity Motion, however, Plaintiffs urge this Court to adopt a broader interpretation of *Lapides* suggested by decisions of the Seventh, Ninth and Tenth Circuits.[8] *See*

---

[8] Contrary to Plaintiffs' apparent suggestion, *see* Pls.' Immunity Mot. at 13, the Seventh, Ninth and Tenth Circuit decisions do not reflect a "majority" consensus among the circuits about how *Lapides* should be applied in these circumstances. As noted in the text above, the First, Fourth and District of Columbia Circuits hold that removal does *not* constitute waiver at all, while the Third and Fifth Circuits hold that removal in these circumstances constitutes waiver of immunity from suit, but *not* waiver of a state's underlying sovereign immunity from liability. *See Lombardo v. Pennsylvania Dep't of Public Welfare*, 540 F.3d 190, 198 (3d Cir. 2008); *Meyers v. Texas*, 410 F.3d 236, 253-55 (5th Cir. 2005).

9

Pls.'s Immunity Mot. at 12-13 (citing *Board of Reg. of the Univ. of Wisconsin Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448 (7th Cir. 2011); *Embury v. King*, 361 F.3d 562 (9th Cir. 2004); *Estes v. Wyoming Dep't of Transp.*, 302 F.3d 1200 (10th Cir. 2002)). These courts appear to read *Lapides* as creating a jurisdictional rule under which removal of *any* claim functions as a sovereign immunity waiver because in removing a claim, the state "voluntarily invokes" federal jurisdiction. *Phoenix*, 653 F.3d at 460-61; *Embury*, 361 F.3d at 564-65; *Estes*, 302 F.3d at 1206.

As the First Circuit noted, however, these decisions reach too broadly. Contrary to the characterization of *Lapides* advanced by the Seventh,[9] Ninth and Tenth Circuits, the Supreme Court's analysis did not turn solely on whether a state "voluntarily invokes" a federal court's jurisdiction, but whether that "voluntary invocation" would lead to inconsistent or unfair results. *Lapides*, 535 U.S. at 620 ("[T]he rule governing voluntary invocation of federal jurisdiction has rested upon the problems of inconsistency and unfairness that a contrary rule of law would create."); *Bergemann*, 665 F.3d at 343 ("[L]ongstanding Supreme Court precedent . . . has concluded that a voluntary invocation of federal jurisdiction waives immunity only where a contrary finding would cultivate unfairness."); *See also In re Charter Oak Assocs.*, 361 F.3d 760, 767 (2d Cir. 2004) ("The doctrine of waiver by litigation, which derives directly from the Eleventh Amendment, is founded . . . upon the judicial need to avoid inconsistency, anomaly and unfairness." (quotation omitted)).

---

[9] It is also worth noting that while the Seventh Circuit's *Phoenix* decision implies a broad reading of *Lapides*, the *Phoenix* court was confronted with a substantially different set of circumstances. There, the state affirmatively brought suit in federal court to challenge an adverse decision of an administrative board before which the state did not raise its sovereign immunity as a defense. The state then attempted to raise immunity as a defense to compulsory counterclaims filed against it in federal court. *Phoenix*, 653 F.3d at 451. The Seventh Circuit held that in bringing federal suit rather than appealing the decision directly, the state gained a distinct set of litigation advantages to which it would not otherwise have been entitled, making it unfair to allow the state to assert sovereign immunity. *Id*. at 466-67. Here, by contrast, the State has gained no unfair tactical advantage, and is seeking only to assert its right to have the federal sovereign immunity issue decided by a federal court.

Here, there is nothing inconsistent or unfair about allowing the State to raise its immunity because the State is in exactly the same position – i.e., entitled to the same immunity – it would have been in had the case proceeded in state court. The State has simply exercised its right to have federal issues implicated by this suit decided in federal court. The rule advanced by Plaintiffs would unfairly condition the State's right to federal resolution of the federal issues implicated by this suit (including the sovereign immunity issue, *see* Part I.A, *supra*) on a waiver of its sovereign immunity. Nothing in *Lapides* justifies such a result. As the First Circuit noted in *Bergemann*, Plaintiffs' rule would turn the concerns of fairness that illuminated *Lapides* on their head by presenting the State with a "Morton's Fork" requiring the state to either

> remove the claim to federal court and waive immunity or litigate the federal claim in state court regardless of its federal nature. . . . We think that it would be anomalous if a doctrine born out of a concern for fairness were to be construed so as to place a sovereign defendant in such an unfair position.

*Bergemann*, 665 F.3d at 342; *see also Stewart*, 393 F.3d at 490 ("[The state] chose to employ the removal device to have the issue of sovereign immunity resolved in a federal, rather than a state, forum. We see nothing inconsistent, anomalous, or unfair about permitting [the state] to employ removal in the same manner as any other defendant facing federal claims.").

Moreover, there is nothing "vague" or "imprecise," *see* Pls.' Immunity Mot. at 13, about the rule adopted by the First, Fourth and District of Columbia Circuits[10] and advanced by the State here. This rule simply provides that where a state would be equally immune from a claim in state or federal court, the state does not lose that immunity by removing the claim to federal

---

[10] And, to a large extent, the Third and Fifth Circuits, which, again, hold that a state does not forfeit its immunity from liability through removal. *See* Note 7, *supra*.

11

court. The rule is consistent with, and no more difficult to apply than, the general rule that parties do not lose any other existing jurisdictional challenges simply by virtue of removal.[11]

Thus, this Court should take the Supreme Court at its word, *see Lapides*, 535 U.S. at 617-18 (limiting its analysis "to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings"), and follow the decisions of the First, Fourth and District of Columbia Circuits, which hold the *Lapides* waiver-by-removal rule inapplicable in the present circumstances. Because the State in this case has not waived its immunity from FLSA claims in its own courts, *see* Part I, *supra*, it did not waive its sovereign immunity defense by removing the case to this Court.

III. THE STATE DID NOT WAIVE SOVEREIGN IMMUNITY THROUGH ITS DISCOVERY STATEMENTS.

As explained in the Motion to Dismiss, Plaintiffs cannot show that the State waived its sovereign immunity through statements made by the State's counsel in discovery. Specifically, the statements at issue cannot form the basis of a sovereign immunity waiver because (1) the State's fundamental constitutional immunity from suit cannot be waived by comments made by counsel during the course of discovery; (2) Plaintiffs cannot show that the statements at issue evidence an intent to waive immunity because they were nothing more than an expression of the State's legal position at that time; and (3) even were an equitable waiver of sovereign immunity possible (and Plaintiffs have produced no authority suggesting that it is) Plaintiffs could not

---

[11] Indeed, Plaintiffs' position that a voluntary invocation of federal jurisdiction precludes *any* challenge to the court's jurisdiction, *see*, *e.g.*, Pls.' Immunity Mot. at 13-14, conflicts with the well-established rule that parties generally are not foreclosed from raising jurisdictional challenges after removal. *See, e.g., Minnesota v. United States*, 305 U.S. 382, 388-89 (1939) (fact that case was removed to federal court was "without legal significance" as to whether court had jurisdiction); *Cain v. Commercial Publishing Co.*, 232 U.S. 124, 133 (1914) (defendant does not forfeit personal jurisdiction challenge by removing case to federal court); *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 n.4 (2d Cir. 1996) (same).

12

show that the statements at issue caused them prejudice. *See generally* Defs.' Immunity Mot., Part I.

On the first point, Plaintiffs suggest that the Supreme Court's decisions in *Lapides*, *Clark v. Barnard*, 108 U.S. 436 (1883), *Gunter v. Atlantic C.L.R. Co.*, 200 U.S. 273 (1906) and *Porto Rico v. Ramos*, 232 U.S. 627 (1914), support their claim that sovereign immunity may be waived through the "litigation acts" of the state. None of those cases, however, addressed the situation presented here. To the contrary, in each of those cases a state (or in the *Porto Rico* case, a U.S. territory), attempted to assert Eleventh Amendment immunity from federal jurisdiction after voluntarily becoming a party to a federal action. *See Lapides*, 535 U.S. at 624 (removal of case precluded state from raising Eleventh Amendment immunity); *Clark*, 108 U.S. at 447-48 (state intervened in bankruptcy proceeding); *Gunter*, 200 U.S. at (Eleventh Amendment immunity not available because state had "voluntarily become a party" to a previous action determining the validity of the state action at issue); *Porto Rico*, 232 U.S. at 631 (territory intervened as a defendant and then tried to assert immunity from federal jurisdiction).

As explained in detail above, *see* Part II, *supra*, the State here is not asserting its immunity from federal court jurisdiction, but rather its underlying sovereign immunity from suit, and the cases cited by Plaintiffs say absolutely nothing about (1) whether underlying sovereign immunity can be waived by a "litigation act" at all or (2) whether representations regarding a state's legal position made during discovery could constitute a "litigation act" in the first place. Thus, the "litigation act" cases cited by Plaintiffs are, at best, irrelevant to the issue of whether the State has waived its immunity through the statements at issue here.

Plaintiffs also attempt to rely on Justice Kennedy's concurring opinion in *Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381 (1998), to show that sovereign immunity

"should be treated akin to a personal jurisdiction defense" that can be waived by a party's failure to raise it. Pls.' Immunity Mot. at 14-15. According to Justice Kennedy, by permitting states to raise Eleventh Amendment immunity at any point in the proceedings, the Court allows the

> States to proceed to judgment without facing any real risk of adverse consequences. Should the State prevail, the plaintiff would be bound by principles of res judicata. If the State were to lose, however, it could void the entire judgment simply by asserting its immunity on appeal.

*Schacht*, 524 U.S. at 394.

Of course, the *Schacht* majority decision itself did not address the waiver of immunity issue at all, *Schacht*, 524 U.S. at 385, and Justice Kennedy's concurrence dealt strictly with Eleventh Amendment immunity from federal jurisdiction. *Id*. at 394 (expressing "doubts" about the rule allowing "belated assertion of the *Eleventh Amendment* bar" (emphasis added)).[12] Thus, the case has no bearing on the issue of whether the State can waive its underlying sovereign immunity from suit through statements made during discovery. However, even if Justice Kennedy's reasoning was somehow controlling and relevant to the present analysis of waiver of *Alden* immunity, Plaintiffs still could not show that the State's discovery statements waived immunity under that reasoning because the State is not attempting to "proceed to judgment without facing any real risk of adverse consequences." *Id*. at 394. To the contrary, the State has raised the sovereign immunity issue before the Court has issued any judgment on the merits of Plaintiffs' claims.

Indeed, in their Immunity Motion and throughout the briefing on immunity in this case, Plaintiffs have failed to make any compelling showing that they have been unfairly prejudiced by the State's discovery statements or the assertion of immunity in general. Therefore, even if the

---

[12] *See also id*. at 397 (suggesting that an "attorney authorized to represent the State" could be presumed to "bind it to the jurisdiction of the federal court (*for Eleventh Amendment purposes*)" by consenting to removal (emphasis added)).

14

State's counsel were capable of waiving immunity through their statements in discovery, the statements made in this case are insufficient to support a finding of waiver either through general principles of waiver, *see* Defs.' Immunity Mot. at 8-9, or under equitable principles, which require a finding of prejudice to the opposing party.

## CONCLUSION

For the foregoing reasons and for the reasons discussed in the State's Immunity Motion, the State respectfully requests the Court grant its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Judgment on the Pleadings and deny Plaintiffs' Motion for Partial Summary Judgment as to Sovereign Immunity.

DATED at Montpelier, Vermont this 21st day of December, 2012.

STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

By: /s/ Jonathan T. Rose
Jonathan T. Rose
Todd Daloz
Assistant Attorneys General
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-0392
jrose@atg.state.vt.us

Counsel for Defendants

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st Day of December, 2012, I electronically filed Defendants' Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment as to Sovereign Immunity using the Court's CM/ECF system which will send notification of such filing to the following: Adam P. Bergeron, Thomas H. Somers, and Steven C. Collier.

        STATE OF VERMONT

        WILLIAM H. SORRELL
        ATTORNEY GENERAL

By:    /s/ Jonathan T. Rose
        Jonathan T. Rose
        Todd Daloz
        Assistant Attorneys General
        Office of the Attorney General
        109 State Street
        Montpelier, VT 05609-1001
        (802) 828-0392
        jrose@atg.state.vt.us

        Counsel for Defendants