UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SHEILA CONIFF, et al.,            )
                                   )
               Plaintiffs,         )
                                   )
      v.                           )        Case No. 2:10-cv-32
                                   )
STATE OF VERMONT, et al.           )
                                   )
               Defendants.         )

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendants State of Vermont, State of Vermont Agency of Administration and Jeb Spaulding (collectively, the "State") submit this Memorandum of Law in Support of their Motion for Summary Judgment. As discussed in detail below, the material facts are not in dispute and the State is entitled to judgment as a matter of law on Plaintiffs' claim that they are not paid on a "salary basis" as defined by the Fair Labor Standards Act ("FLSA" or the "Act"). Accordingly, pursuant to Fed. R. Civ. P. 56, the State is entitled to summary judgment on Plaintiffs' collective-action claim.

### INTRODUCTION

Plaintiffs represent a class of current and former classified State employees represented for collective-bargaining purposes by the Vermont State Employees' Association, Inc. ("VSEA"). Plaintiffs – who earn annual salaries between approximately $40,000 and $115,000 – allege that the straight-time overtime they receive under the collective-bargaining agreements violates the FLSA. Specifically, Plaintiffs argue that they are not exempt from the FLSA's

overtime provisions because they are not paid on a "salary basis."[1]  Therefore, Plaintiffs assert that they are entitled to time and one half overtime under the Act, and that because the State's alleged failure to pay them in a manner consistent with the "salary basis" test was wilfull, they are entitled to the three-year statute of limitations applicable to such violations.

Contrary to Plaintiffs' claim, the FLSA does not entitle to Plaintiffs to any compensation beyond the overtime compensation they receive under the agreements bargained by their union. Plaintiffs – like all other permanent, full-time State employees – are guaranteed a predetermined amount of compensation each week.  Plaintiffs' pay is subject to deduction only for absences occasioned by the employee, and only in accordance with regulations explicitly permitting such deductions.  Thus, the State pays Plaintiffs on a "salary basis," as that term is defined by FLSA regulations.

<u>FACTS</u>

I.    <u>Plaintiffs and the Collective Bargaining Agreements</u>

Plaintiffs represent a class of state employees represented for collective-bargaining purposes by the VSEA and are members of the non-management, supervisory, judiciary and corrections bargaining units.  Defendants' Statement of Undisputed Materials Facts ("Def.'s Facts") ¶ 1.  The terms of Plaintiffs' employment are governed by statute, a set of bargaining unit-specific collective-bargaining agreements (collectively, the "VSEA Agreements") between the State and the VSEA, and State policies.  Def.'s Facts ¶ 4; Stipulation of Facts ("Fact Stip."),

---

[1] Plaintiffs' Second Amended Complaint alleges an FLSA violation on the sole basis that the Plaintiff class is not paid in accordance with the salary basis test under the FLSA, and the Parties have stipulated that this case turns on whether the State pays members of the Plaintiff class in a manner consistent with that test.  *See* Joint Stipulation of Representative Plaintiffs for Purposes of Determining Whether or Not There Was a Violation of the Salary Test Pursuant to § 16(b) of the Fair Labor Standards Act ¶ 6 (Doc. 49) ("[T]he collective action is grounded in Plaintiffs' allegations that they and those similarly situated . . . are not salaried under the applicable law . . . and therefore do not qualify for an exemption from time and one-half overtime under the FLSA.").  Therefore, the issue of whether Plaintiffs are paid on a "salary basis" is dispositive as to Plaintiffs' collective action complaint.

Ex. 1, 2, 3, 4 (individually, the VSEA Agreements will be referred to as the "Non-Management Agreement," the "Supervisory Agreement," the "Judiciary Agreement," and the "Corrections Agreement"). The VSEA Agreements incorporate longstanding State pay policies and practices. *See* Def.'s Facts ¶ 21; Facts, Part IV, *infra*.

The VSEA Agreements are similar to each other (but not identical) in many respects, including many of the provisions setting the salaries and leave entitlements of bargaining unit members. Specifically, all of the VSEA Agreements identify a series of "pay grades" establishing the salaries of employees holding positions in each pay grade. Defs.' Facts ¶ 6. Plaintiffs are all employed in positions falling in pay grade 23 or above, Complaint ¶ 2, which means, for example, that under the pay scale reflected in the VSEA Agreements submitted in connection with the present motion, Plaintiffs in the non-management, supervisory and corrections bargaining units were entitled to a minimum weekly salary of $784 per week (based on a guaranteed 40-hour workweek[2]) or $40,678 per year, and a maximum weekly salary of $2,172 per week or $112,944 per year. Non-Management Agreement, App. II; Supervisory Agreement App. II; Corrections Agreement, App. II.

II.     The State's Compensation and Leave Policies.

The VSEA Agreements guarantee all permanent, full-time, classified employees, including Plaintiffs, a "Basic Weekly Salary," which is defined as "the minimum compensation to which an employee is entitled under the State's compensation plan." Defs.' Facts ¶ 7. The Basic Weekly salary is based on a 40-hour work week at the salary level – computed as an hourly rate – in the VSEA Agreements' pay tables. *See* Defs.' Facts ¶ 7; *see also* VSEA Agreements, App. A (defining "Regular Hourly Rate" as "the amount of money obtained by

---

[2] *See* Facts, Part II, *infra*.

dividing an employee's basic weekly salary by forty (40)" and "Regular Work Week" as "forty (40) hours of work per week.").[3]  Similarly, State personnel policies provide that "[t]he State maintains a single compensation plan . . . that covers all employees as required by 3 VSA § 310." Vermont Department of Human Resources, Personnel Policy & Procedure Manual § 12.0 ("Personnel Policy 12.0") (a copy of Personnel Policy 12.0 is attached to Defs.' Facts as Exhibit 4).  The policy further explains "that salary ranges within the minimum and maximum salaries are established," and defines "Basic Weekly Salary" as "the *minimum* compensation to which an employee is entitled under the State's classified plan."  *Id*. (emphasis added).  The policy further defines "annual salary" as "the amount of compensation obtained by multiplying the basic weekly salary by fifty-two (52)."  *Id*.

The State cannot and does not reduce employees' basic work week or Basic Weekly Salary provided employees are ready, able and willing to work.  Def.'s Facts ¶ 8.  For example, the State does not send employees home without pay when there is insufficient work available, nor does it unilaterally reduce pay or take involuntary partial day deductions, and if the State is forced to close a facility or reduce its workforce for a particular time period, employees are still paid for 40 hours of work so long as they do not miss additional time for their own reasons. Defs.' Facts ¶¶ 8-10.

When employees choose to miss work for their own reasons, however, they are required to take advantage of the generous leave policies reflected in the VSEA Agreements.  Defs.' Facts ¶¶ 11-12.  Under the Non-Management Agreement, for example, employees accrue between 3.69

---

[3] An hourly rate is used to determine employees' salary in part because it would be impractical to use an annual or other type of salary rate to administer other compensation issues, such as determining whether an employee is entitled to a shift or weekend differential, or for determining whether an employee is entitled to overtime compensation due under the terms of the VSEA Agreements.  *See* Deposition of Thomas Ball ("Ball. Dep.") at 77-78 (discussing reasons for using the hourly rate to calculate salary) (copies of relevant portions of the Ball Dep. are attached to Defs.' Facts as Exhibit 10).

and 7.38 hours of annual leave (depending on years of service) per bi-weekly pay period, as well as up to 6.46 hours of sick leave per pay period.  Non-Management Agreement, Arts. 30, 31. Moreover, the Non-Management Agreement also provides for accrual of ten hours of personal leave for each quarter during which employees do not use more than eight hours of sick leave. Non-Management Agreement, Art. 43.   Therefore, because there are 26 bi-weekly pay periods in a year, non-management employees could potentially accrue up to approximately 191 hours (24 days) of annual leave, 168 hours (21 days) of sick leave and 40 hours (5 days) of personal leave for a total of 399 hours (or roughly 50 days) of paid leave per year in addition to the 13 paid holidays employees typically receive each year.[4]  *See, e.g.*, Non-Management Agreement, Art. 12 (contract provides for 12 paid holidays); Deposition of Sheila Coniff ("Coniff Dep.") at 26-27 (Governor typically authorizes an additional holiday the day after Thanksgiving) (relevant portions of the Coniff Dep. are attached to Defs.' Facts as Exhibit 1).   Employees must use accrued leave under these policies to cover the absences they take for their own reasons during the regular work week.  Def.'s Facts ¶ 12.

Given the substantial amount of paid leave employees receive,[5] it is not surprising that employees rarely need to take unpaid leave.  However, on those rare occasions where employees

---

[4] Employees in the supervisory bargaining unit are entitled to accrue the same amount of annual and sick leave, as well as from three to eight days of personal leave each year, depending on length of service. Supervisory Agreement, Arts. 34, 35, 47.  Corrections and judiciary employees are entitled to accrue roughly similar amounts of total paid leave.  *See* Corrections Agreement, Arts. 34, 35, 48; Judiciary Agreement, Arts. 22, 23, 24.

[5] For example, one representative Plaintiff testified that he does not typically accrue personal leave because of the amount of paid sick leave he uses.  Even without accruing personal leave, however, this individual testified that he receives his full pay while taking leave approximately 19 percent of the work year.  *See* Deposition of John Reese ("Reese Dep.") at 25-28 (copies of relevant portions of the Reese Dep. are attached to Defs.' Facts as Exhibit 7).  Therefore, on average, this individual takes off one day each week, and still receives his "Basic Weekly Salary."  Moreover, an employee who is never ill can use nearly five weeks vacation (24 days), one week of personal leave (five days), and receive two-and-one-half weeks of holiday pay (13 days).  In sum, employees can miss nearly two months of work and still receive their full salary.

miss whole or partial work days for their own reasons and previously exhausted all of their accrued paid leave, the VSEA Agreements provide for unpaid leave in the form of "Off Payroll and Administrative Leaves of Absence." Defs.' Facts ¶ 13.  It is important to emphasize that this form of leave is used only to cover absences occasioned by the employee (i.e., employees take advantage of unpaid leave only when they miss work for their own reasons and are never required to go off payroll for absences required by the State). Defs.' Facts ¶ 16.  Moreover, off payroll leave is exceedingly rare.  In fact, out of approximately 90,000 lines of pay data compiled during discovery in this matter, there were only about 554 instances (less than one percent) where employees needed to go off payroll for partial day absences. Defs.' Facts ¶ 15.[6]

III.    Public Accountability And The State's Accounting Practices

It is beyond serious question that the State of Vermont is an entity created for the benefit of its people, and that its officers and employees ultimately are accountable to the public. Significantly, the Vermont Constitution states that "all power being originally inherent in and co[n]sequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; *and at all times, in a legal way, accountable to them*." (emphasis added).  Vt. Const. Ch. I, Art. 6 (emphasis added).  In addition, the Vermont Constitution recognizes that "government is, or ought to be, instituted for the common benefit, protection, and security of the peoples . . . and not for the particular emolument or advantage of any single person, family, or set of persons."  Vt. Const. Ch. I, Art. 7

Thus, in nearly everything it does, State government must be cognizant of its responsibility to be accountable to the public, *see*, *e.g.*, 1 V.S.A. § 311 ("In enacting [Vermont's open meeting laws], the legislature finds and declares that public commissions, boards and

_____

[6] Lead Plaintiff Sheila Coniff, for example, testified that in the nine years she has been a State employee, she has earned 47 paid days off per year, has never exhausted her paid leave, and has always received her full 40 hours of pay per week.  Coniff Dep. at 30-38.

councils and other public agencies in this state exist to aid in the conduct of the people's business and are accountable to them . . . ."); 32 V.S.A. § 401 (requiring that "fair and accurate accounts" of public funds be kept); 32 V.S.A. § 704a (authorizing and encouraging the executive branch to take actions necessary to manage and administer state programs in an "efficient, effective and fiscally prudent manner").

These principles of public accountability are strongly evidenced in State statutes and policies related to public employment.  *See*, *e.g.*, 1 V.S.A. § 317 ("Individual salaries and benefits of and salary schedules relating elected or appointed officials and employees of public agencies shall not be exempt from public inspection and copying."); 3 V.S.A. § 205 ("Each commissioner of a department and each officer . . . shall devote his or her entire time to the duties of his or her office."); 3 V.S.A. § 316 ("The records of the department [of human resources] shall be public records and shall be open to public inspection.").  Indeed, by statute, the State must establish *minimum* hours necessary for employees to fulfill their public duties, and earn their taxpayer-funded salaries.  *See* 3 V.S.A. § 310(c) (requiring the Commissioner of Human Resources to "establish and maintain a salary structure consisting of salary ranges within a minimum salary and a maximum salary for each range"): 3 V.S.A. § 904(a) (requiring the State to bargain employees' "minimum hours per week" and "leave compensation and related matters").

In accordance with these principles, the Department of Human Resources has adopted longstanding policies and accounting practices designed to ensure that employees fulfill their public obligations by working their full schedule, or by utilizing appropriate leave.  Most importantly, while the State guarantees its employees a weekly salary based on a 40-hour work week, the State maintains accounting records of nearly all employees' work time and leave taken

by the hour.  Defs.' Facts ¶ 17.  This is true not only for classified employees subject to the

VSEA Agreements, but also for classified managers, and for employees who are statutorily

exempt from the classified service, such as attorneys.  Defs.' Facts ¶ 17; *see also* 3 V.S.A. § 311

(listing positions exempted from classified service, such as, for example, judges, attorneys and

"[e]mployees in the office of the governor").  Notably, because of these accounting practices all

state employees – including those commissioners and department heads whose salary is set by

statute and even the Governor himself – receive a paycheck showing their salary computed as an

hourly rate.  Defs.' Facts ¶ 19.

IV.     History Of State Pay Practices And Compliance With The Fair Labor Standards Act

        The State has paid its employees in a consistent manner for many decades, even prior to

the advent of collective-bargaining.  Defs.' Facts ¶ 21.  In or around 1985, however, when the

FLSA was made applicable to public employers, *see Garcia v. San Antonio Metro. Transit Auth.*,

469 U.S. 528 (1985), the State instituted efforts to ensure that its pay system was in compliance

with the Act.  For instance, in May 1985, Commissioner of Personnel Scott Cameron issued a

Memorandum and conducted a training session instructing State personnel managers on the

proper classification of employees under the FLSA's white collar exemptions.  Defs.' Facts ¶ 22.

Since that time, the State has conducted an FLSA review of each position as part of the

classification review (i.e., the determination of where that position should be placed for purposes

of pay grade, etc.) for that position.  Defs.' Facts ¶ 24.  Director of Classification Molly Paulger

estimates that her department handles about 800 classification determinations per year, and uses

forms developed by the State, as well as guidance from State legal counsel and the Department

of Labor in conducting such reviews.  Defs.' Facts ¶ 24.

Moreover, also shortly after the *Garcia* decision, state officials (including Director of Labor Relations Thomas Ball, who has studied the FLSA's requirements extensively and played a major role in ensuring the State's compliance with the Act) analyzed whether its pay system was consistent with the FLSA's "salary basis" requirement.  Defs.' Facts ¶ 23.  As a result of this analysis, the State determined that all of its employees were paid on a "salary basis" as that term was used in the FLSA.  Defs.' Facts ¶ 23.

## LEGAL STANDARD

A motion for summary judgment tests the legal claims of the non-moving party when there is "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  When addressing such a motion, the Court must "view the facts in the light most favorable to the non-moving party . . . and resolve all factual ambiguities in [their] favor."  *Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008).  There is no dispute of material fact "only when reasonable minds cannot differ as to the import of the evidence before the court."  *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993).

## ARGUMENT

The FLSA, 29 U.S.C. § 201, *et seq.*, sets the minimum standards of compensation for employees covered by its provisions.  Most importantly for purposes of this case, the Act requires covered employers to pay their employees overtime wages at a rate of time and one half employees' regular rates for all hours worked in excess of 40 hours per week.  *Id.* § 207.  However, employees who are engaged in "a bona fide executive, administrative or professional capacity" are exempt from the FLSA's overtime requirements.  *Id.* § 213(a)(1). Pursuant to the Act, the Secretary of Labor issued regulations defining these exemptions.  *See id.* § 213(a)(1); *see generally* 29 C.F.R. § 541.  These regulations provide, in relevant part, that the FLSA

exemptions apply only to employees paid on a "salary basis." *See* 29 C.F.R. §§ 541.100(b); 541.200(a)(1); 541.300(a)(1).[7]

Here, Plaintiffs claim they are not paid on a "salary basis" as required by regulations. Therefore, Plaintiffs assert that the straight-time overtime pay they receive under the VSEA Agreements is not sufficient under the Act because they are not exempt from the Act's time and one half overtime pay requirement. The undisputed facts plainly show, however, that Plaintiffs are paid on a "salary basis" as that term is defined in the applicable regulations. Indeed, as explained in detail below, it is beyond serious dispute that Plaintiffs are entitled to a "predetermined amount" of pay each pay period, and their pay is not subject to reduction for absences occasioned by the State. Moreover, any deductions related to Plaintiffs' voluntary absences are expressly permitted by the applicable regulations. Therefore, Plaintiffs' compensation satisfies the "salary basis" test. Accordingly, the VSEA Agreements provide Plaintiffs with all the pay to which they are entitled, and their claim should be dismissed.

I.     THE STATE'S PAY POLICIES SATISFY THE GENERAL DEFINITION OF "SALARY BASIS" FOUND AT 29 C.F.R. § 541.602(a).

The term "salary basis" is generally defined at 29 C.F.R. § 541.602(a), which requires that employees be paid a "predetermined amount constituting all or part of the employee's compensation" on a "weekly, or less frequent, basis." *Id*. Moreover, the regulation provides that employees "must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." *Id*. Finally, the regulation cautions that

> [a]n employee is not paid on a salary basis if deductions from the
> employee's predetermined compensation are made for absences
> occasioned by the employer or by the operating requirements of

---

[7] The regulations also provide that to qualify for the exemptions at issue here, employees must be paid, at a minimum, $455 per week. 29 C.F.R. §§ 541.100(a)(1), 541.200(a)(1), 541.300(a)(1). Plaintiffs are all paid far more than this minimum. *See* Facts, Part I, *supra* (noting that minimum salary for members of Plaintiff class is roughly $784 per week).

10

> the business.  If the employee is ready, willing and able to work,
> deductions may not be made for time when work is not available.

*Id.*  Therefore, as a threshold matter, to satisfy the "salary basis" test, an employer must show

that its employees are paid a "predetermined amount" each week, and that this amount is not

subject to reduction for "absences occasioned by the employer."[8]

The undisputed facts show that the State pays its employees, including Plaintiffs, in

accordance with this general standard.  First, the VSEA Agreements and State policy entitle

Plaintiffs to a "predetermined amount" of pay each week in the form of a "Basic Weekly

Salary," predicated on a guaranteed 40 hours of work per week paid as a salary computed at an

hourly rate.  *See* Facts, Part II, *supra*; *see also* Fact Stip. ¶ 3 (Doc. 125) (stipulating that "the

State has and continues to offer Plaintiffs a minimum of forty (40) hours of work each week").

This is all that is required to satisfy the "predetermined amount" requirement.  *See Havey*, 547

F.3d at 164 ("[U]se of the word 'predetermined' to describe the salary requirement indicates only

that this element of an employee's compensation must be both fixed and determined prior to the

period in which it would apply."); *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997)

(noting that "hourly" employees are still considered to be "salaried" if they "are guaranteed a

predetermined number of paid hours").

Second, the undisputed facts make clear that the "predetermined amount" paid to

Plaintiffs each pay period is not reduced for "absences occasioned by" the State.  Again,

Plaintiffs have acknowledged that they are "guaranteed" at least 40 hours of work per week.

Fact Stip. ¶ 3.  Moreover, numerous State employees, including representative Plaintiffs, have

confirmed that the State does not send employees home because of insufficient work and does

---

[8] Separate regulations address issues related to the use of vacation time, sick leave and other types of absences occasioned by the employee.  These regulations are discussed in detail in separate sections below.

not reduce employees' pay in situations where employees are asked not to report to work.  Facts, Parts II & III, *supra*.  In other words, so long as employees are "ready, willing and able to work," their pay is not reduced.  Thus, the State plainly pays Plaintiffs on a "salary basis" for purposes of 29 C.F.R. § 541.602(a).

Notwithstanding the straightforward nature of this analysis, Plaintiffs have suggested that the State's pay policies do not satisfy this general definition of "salary" because (1) the VSEA Agreements refer in various places to Plaintiffs' pay as an "hourly" rate and (2) because the State tracks and computes pay rates in "hourly" terms.  Plaintiffs' arguments lack merit.

First, whether a collective-bargaining agreement defines an employee's salary in terms of an "hourly" rate is simply immaterial to the inquiry mandated by 29 C.F.R. § 541.602(a).  Indeed, the focus of that analysis is on the actual effect of the pay system at issue.  The question is whether the system establishes a "predetermined amount" of pay, not labels used to describe it, particularly in circumstances such as the present, where the contracts and state policy also routinely refer to employees' pay as a "salary."  *See*, *e.g.*, Non-Management Agreement, Arts. 13, 20, 24.4(a)(3), 24.4(a)(13), 24.5(j), 33.2, 33.4(a) & (b), 34.1(h)(2), 36.1(a), 38.1(g) & (j), 42.4, 45; Vermont Department of Human Resources, Personnel Policy & Procedure Manual § 12.0 (a copy of this policy is attached to Defs.' Facts as Exhibit 4); *see also Reich v. County of Cook*, No. 10-C-3155, 2012 WL 3581169, at *2 (N.D. Ill. Aug. 14, 2012) (mere fact that contract references "hourly" rate is not determinative as to whether employees are paid on a "salary basis," where contract also repeatedly refers to employees' pay as a "salary").

Second, nothing in the FLSA or its regulations prohibits an employer from tracking salaried employees' hours or computing salaries in terms of an hourly rate.  Indeed, the regulations expressly contemplate the possibility of computation of pay on an "hourly" basis.

12

*See* 29 C.F.R. § 541.604(b) ("An exempt employee's hours may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly requirement amount paid on a salary basis . . . ."). Thus, any suggestion that the salary basis test is violated by such "hourly" tracking is nonsensical. *See Anani v. CVS Rx Servs., Inc.*, 788 F. Supp. 2d 55, 64 (E.D.N.Y. 2011) (noting that it would not make sense to prohibit an employer from tracking hours or calculating a salary based on hourly rate when the regulations expressly permit payment of additional overtime compensation based on hours worked beyond the regular workweek).[9]

Moreover, courts have routinely rejected claims that the "salary basis" test is violated by such practices. As one federal court explained, under the salary basis regulations,

> [i]t is immaterial whether the salary is calculated by multiplying a base salary by hours worked or whether the salary is calculated by deducting absences from a base salary. What is relevant is whether the employee can expect a consistent paycheck regardless of quantity or quality of work, while understanding that pay will be reduced for any personal leaves of absence that are not covered by accumulated personal or sick leave.

*Stewart v. City & County of San Francisco*, 834 F. Supp. 1233, 1240 (N.D. Cal. 1993); *see also Anani*, 788 F. Supp. 2d at 62-65 (rejecting claim that employee was an "hourly" and not "salaried" employee simply because employer kept track of hours worked and computed salary based on an hourly rate); *Wright v. Aargo Sec. Servs., Inc.*, No. 99-CV-9115, 2001 WL 91705, at *7 (S.D.N.Y. Feb. 2, 2011) ("[A] payroll accounting system which calculates an exempt employee['s] pay on an hourly basis does not indicate that the employee was not salaried and,

---

[9] Again, the State tracks time worked and computes salaries based on an "hourly" rate not just for Plaintiffs, but for nearly *all* of its employees (except for high-level officials whose salary is set by statute). Indeed, even high-level employees whose salary is set by statute, including most Commissioners and the Governor himself, receive a paycheck with a salary computed as an hourly rate.

thus, is not subject to the FLSA's minimum wage or overtime wage requirements.").[10]  The fact

that the State denotes Plaintiffs' salaries based on an hourly rate and tracks hours worked does

not make Plaintiffs "hourly" employees for purposes of the salary basis test.[11]

As noted above, the VSEA Agreements and State policy plainly guarantee employees a

"Basic Weekly Salary" consisting of a set number of hours at a set pay rate that is not reduced

for absences occasioned by the State.  Since nothing more is required by section 541.602(a),

Plaintiffs are paid on a salary basis within the regulation's meaning.

II.     THE STATE'S DEDUCTION POLICIES ARE PERMITTED BY THE SALARY
        BASIS REGULATIONS.

While the FLSA does not permit an employer to make deductions from pay for absences

occasioned by the employer, the Act does permit deductions for voluntary absences in certain

circumstances relevant to this case.  Specifically, the regulations permit deductions for (1) full

day absences due to "personal reasons, other than sickness or disability," 29 C.F.R. §

541.602(b)(1); (2) full day absences due to "sickness or disability" where an employee has

exhausted or has not accrued sufficient paid leave under a "bona fide" leave policy, 29 C.F.R. §

---

[10] The Secretary, whose interpretations of the FLSA regulations are entitled to substantial deference, *see Auer v. Robbins*, 519 U.S. 452, 461 (1997), also has weighed in to the same effect.  *See* Wage & Hour Opinion Letter, FLSA 2005-16, 2005 WL 2086805 (Apr. 11, 2005) ("Employees who are exempt . . . do not lose their exempt status when they are required by their employer to track their time on an hourly basis."); Wage & Hour Opinion Letter, FLSA 2003-5 (July 9, 2003) (concluding that the "tracking or accounting of actual hours worked by exempt employees does not violate the 'salary basis' requirements," and collecting cases).

[11] It is worth emphasizing here that the State's policies requiring tracking of hours are hardly unique. *See*, *e.g.*, Def.'s Facts ¶ 20 (noting that government employers commonly track FLSA-exempt employees' hours and indicate an "hourly" rate of pay on paychecks); Commonwealth of Massachusetts, Human Resources Division, *Time and Attendance Policy* (Oct. 23, 2012), *available at http://www.mass.gov/anf/docs/hrd/policies/files/time-attendance-policy.doc* ("Employees, including cabinet secretaries, division directors and agency heads must maintain daily time and attendance records including an appropriate accounting for leave utilized."); New York State Dep't of Civil Service, *Attendance & Leave Manual* §§ 20.2, 26.1 (requiring salaried employees to maintain records of hours worked), *available at*, http://www.cs.ny.gov/attend_leave_manual/index.cfm; Wage & Hour Opinion Letter, FLSA 2005-16, 2005 WL 2086805 (Apr. 11, 2005) (finding no violation in similar pay system in an unnamed "political subdivision of the State of Colorado" requiring attorneys to track their time on an hourly basis).

541.602(b)(2); and (3) absences of less than a day, so long as the deductions are made in accordance with a "policy or practice established pursuant to principles of public accountability." 29 C.F.R. § 541.710(a).  The undisputed facts make clear that the State's deduction policies are permitted by these regulations.  Thus, the possible deductions made from Plaintiffs' pay are consistent with the conclusion that Plaintiffs are paid on a "salary basis."

      A.      <u>The State Is Entitled To Deduct Pay For Full Day Absences</u>.

Although Plaintiffs rarely need to take unpaid leave because of the generous paid leave policies in the VSEA Agreements, *see* Part II, *supra*, on those rare occasions the State is clearly permitted to deduct for full day absences.  In circumstances where such unpaid absences are due to "personal reasons, other than sickness or disability," the State is plainly within its rights to deduct Plaintiffs' pay, and no further inquiry is necessary.  *See* 29 C.F.R. § 541.602(b)(1). Moreover, because there does not appear to be any dispute here that the paid annual and sick leave policies in the VSEA Agreement are a "bona fide plan, policy, or practice," *see Cavanaugh v. S. Cal. Permanente Med. Grp., Inc.*, 583 F. Supp. 2d 1109, 1137 (C.D. Cal. 2008) (sick leave plan in collective-bargaining agreement was a "bona fide" plan for purposes of FLSA regulations), the State is authorized to deduct pay under those policies for full day absences caused by "sickness or disability."  29 C.F.R. § 541.602(b)(2).  Therefore, to the extent Plaintiffs attempt to rely on the fact that they are potentially subject to deductions for full-day absences, those deductions are expressly permitted by the regulations and do not support Plaintiffs' argument.

      B.      <u>As A Public Employer, The State Is Entitled To Deduct For Partial Day Absences Occasioned By The Employee</u>.

Generally, the salary basis test prohibits private employers from reducing employees' pay for absences of less than a full day, regardless of the reason for the absence.  *See generally* 29

C.F.R. § 541.602; *see also Whitmore v. Port Auth. of N.Y. & N.J.*, 907 F.2d 20, 21 (2d Cir.

1990).  Because the State is a public employer, however, it does not lose the benefit of the FLSA

exemptions simply because, on very rare occasions – i.e., when Plaintiffs have exhausted all of

their paid leave[12] – it reduces Plaintiffs' pay for partial day absences occasioned by Plaintiffs.

Specifically, such deductions are permitted by 29 C.F.R. § 541.710(a), which provides, in full:

> An employee of a public agency who otherwise meets the salary
> basis requirements of § 541.602 shall not be disqualified from
> exemption . . . on the basis that such employee is paid according to
> a pay system established by statute, ordinance or regulation, or by
> a policy or practice established pursuant to principles of public
> accountability, under which the employee accrues personal leave
> and sick leave and which requires the public agency employee's
> pay to be reduced or such employee to be placed on leave without
> pay for absences for personal reasons or because of illness or
> injury of less than one work-day when accrued leave is not used by
> an employee because:
>     (1)  Permission for its use has not been sought or has been
> sought and denied;
>     (2)  Accrued leave has been exhausted; or
>     (3)  The employee chooses to use leave without pay.

*Id*.

This provision was implemented in 1992 – five years after the Supreme Court held that

the FLSA applied to public employers – in recognition of the fact that most public employers

could not satisfy the existing salary basis test because "principles of public accountability"

prevent them from utilizing taxpayer resources to pay employees for hours not worked.  *See*, *e.g.*,

57 Fed. Reg. 37666, 37673, 1992 WL 37666-01 (Aug. 19, 1992) ("The Department considers it

inconsistent with Congressional intent and inappropriate that the exemption be denied in the

public sector [for failure to meet the salary basis test] to virtually all employees solely because

---

[12] Defs.' Facts ¶¶ 12-13.  Again, out of roughly 90,000 lines of payroll data collected, the Parties have
been able to identify only about 554 occasions on which such deductions occurred between January 2007
and March 2012.  Defs.' Facts ¶ 15.

their pay is subject to deduction for partial day absences where paid leave is not used . . . .");

*Demos v. City of Indianapolis*, 302 F.3d 698, 702 (7th Cir. 2002) (same, noting that "whether a

government employee's wages are docked is not a good indicator of whether the employee is a

bona fide executive, administrative, or professional employee").

      While the regulation does not explicitly define "public accountability," the Department of

Labor and numerous courts analyzing public pay plans have interpreted the concept broadly,

consistent with its intent to eliminate the burden placed on public employers by the partial day

docking rule.  *See* 56 Fed. Reg. at 37670 ("[A]spects of the 'salary basis' requirement are unduly

restrictive when applied in the public sector.").  For example, the Department describes "public

accountability" as

> a broad concept that forms the foundation for many governmental
> administrative practices, including most public sector pay systems,
> and is derived from the desires of taxpayers that their government
> be accountable to them for expenditures from the public treasuries.
> Public accountability embodies the concept that elected officials
> and public agencies are held to a higher level of responsibility
> under the public trust that demands effective and efficient use of
> public funds in order to serve the public interest.  In includes the
> notion that the use of public funds should always be in the public
> interest and not for individual or private gain, including the view
> that public employees should not be paid for time they do not work
> that is not otherwise guaranteed to them under the pertinent civil
> service agreement (such as personal or sick leave), and the public
> interest does not tolerate wasteful and abusive excesses such as
> padded payrolls or "phantom" employees.

56 Fed. Reg. at 37675-76.

      Thus, courts have placed a very minimal burden on public employers to demonstrate

entitlement to the benefit of the exception.  *See*, *e.g.*, *McCloskey v. Triborough Bridge*, 903 F.

Supp. 558, 563 (S.D.N.Y. 1995) ("In essence [the regulation] eliminated the application of the

part-day docking rule to public employers.").  As one federal appeals court has noted, to take

advantage of the "public accountability" exception, a public entity must show only "that its [partial day deduction] policy is consistent with the government's efforts to maintain a precise accounting of its employees' hours for reasons that extend beyond calculating an appropriate salary." *Demos*, 302 F.3d at 702-03.[13]

Here, there can be little question Vermont's pay system is premised on and consistent with "principles of public accountability." As explained above, nearly *all* State employees – not just classified employees such as Plaintiffs, or employees subject to the FLSA's overtime requirements – are required to account for their time, use accrued leave to cover absences, and if no leave is available, to go "off payroll" for any absences occasioned by their own needs. *See*, *e.g.*, *Kuchinskas v. Broward County*, 840 F. Supp. 1548, 1556 (S.D. Fla. 1993) (practices like these "are premised on the concept of public accountability"). Moreover, the Vermont Constitution and state statutes underlying the State's pay policies clearly express the principle that State employees are accountable to the public. *See* Part III, *supra*. Therefore, the State does not lose the benefit of the FLSA exemption simply because on rare occasions, it reduces employees' pay (including, at times, Plaintiffs') for absences of less than a day. The deductions are made only in circumstances where employees miss work for their own reasons and are made pursuant to a "policy or practice established pursuant to principles of public accountability."

III.    PLAINTIFFS HAVE NOT ESTABLISHED A "WILFULL" VIOLATION OF THE FLSA.

---

[13] *See also Rich v. County of Cook*, No. 10 C 3155, 2012 WL 3581169, at *3 (Aug. 14, 2012) (public accountability found based on testimony that "office policy is to reduce an employee's pay when he or she comes in late because 'the taxpayers deserve to get their money's worth from county employees'"); *Richardson v. Genesee Cty. Comm. Mental Health Servs.*, 45 F. Supp. 2d 610, 616-17 (E.D. Mich. 1999) (fact that municipality was a government agency was sufficient to show that partial day deductions were consistent with principles of public accountability); Wage & Hour Opinion Letter, FLSA 2005-16, 2005 WL 2086805 (Apr. 11, 2005) (public pay system based on principles of public accountability where it required deductions for partial day absences occasioned by employee).

Plaintiffs claim the State's alleged violation of the FLSA's salary basis test was willful and ask this Court to extend the applicable limitations period from the standard two years to three years.  *See* Second Amended Complaint ¶ 61 (Doc. 13); 29 U.S.C. § 255 (limiting limitations period to two years "except that a cause of action arising out of a willful violation may be commenced within three years").  Though Plaintiffs cannot show *any* violation of the Act, even if they could, the undisputed facts do not support Plaintiffs' claim that such an alleged violation was willful.

To prove a willful violation under the Act, the Supreme Court has held that an employee must show the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  This standard of willfulness requires that an employee do more than prove a "'good-faith but incorrect assumption'" regarding an employer's FLSA obligations, or even that an employer lacked "a reasonable basis for believing that it was complying with the FLSA." *Fitzgerald v. City of Troy, N.Y.*, No. 1:10–cv–451, 2012 WL 5986547, at *24 -25 (N.D.N.Y. Nov. 28, 2012) (*quoting Richland Shoe*, 486 U.S. at 133, 135); *see also Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (stating that "[m]ere negligence is insufficient" to show willfulness).  Indeed, the two-tiered statute of limitations "makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin*, 486 U.S. at 132.

Plaintiffs cannot draw such a distinction here.  There is no basis to conclude that the State either knew it was in violation of the Act – in fact, it was not in violation – or acted with reckless disregard for the law when paying Plaintiffs a predetermined salary and straight-time overtime. Rather, the undisputed facts show that the State regularly assesses the classifications of its

employees for compliance with the FLSA, Defs.' Facts ¶ 22, 24, and has performed a full-scale review of its salary practices to ensure compliance with the FLSA.  Defs.' Facts ¶ 23.  Neither the salary practices of the State nor the relevant portions of the salary-basis test have changed significantly since this salary-basis review took place.  Plainly, the State's long-standing compliance with the Act's requirements and its continuous efforts to maintain compliance overcome any bald assertion on Plaintiffs' part that there has been any violation, willful or otherwise.

IV.    PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES BECAUSE THE STATE ACTED IN GOOD FAITH.

Plaintiffs additionally ask the Court for liquidated damages based on the State's alleged failure to pay them in compliance with the FLSA.  Complaint, Wherefore Clause; *see* 29 U.S.C. 216(b) (permitting court to grant "unpaid overtime compensation . . . and in an additional equal amount as liquidated damages" where violation of FLSA's overtime provisions proven).  As discussed above, the State's pay practices do not violate the FLSA, and their claim to the contrary is strained, at best.  Moreover, even should the Court find otherwise, the State developed and implemented its pay system in good faith and had reasonable grounds for believing its system – in place for decades and similar to systems used by government employers across the country – did not violate the salary basis test.

Where, as here, the "act or omission giving rise to [the FLSA suit] was in good faith and . . . [the employer] had reasonable grounds for believing [its] act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed [100% of actual damages]."  29 U.S.C. § 260.  Thus, when the employer shows it "acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA" liquidated damages

may be denied or reduced.  *Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).

Establishing "good faith" requires an employer to show it took "active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Id.* (quotation omitted).  The undisputed testimony supports the State's good faith belief in its compliance with the Act.  State personnel employees have studied the dictates of the FLSA, *see* Facts, Part __, *supra*, and the State has a regular practice of examining employee classification to ensure compliance and altering classifications where deemed necessary under the Act.  *Id.*  Moreover, after the Supreme Court decided *Garcia* and made the State potentially liable under the FLSA, the State undertook a review of its salary-basis determinations.  Of particular note, there are employees who hold positions above pay-grade 23, but whose duties, upon internal analysis, require payment in compliance with the FLSA overtime mandates rather than the terms of the CBA.  Defs. Facts ¶ 24.  The State's practice of actually analyzing employee's jobs under the Act is clear evidence of good faith, sufficient to defeat Plaintiffs' claim for liquidated damages.

The State doubtless meets the objective standard of "reasonable grounds."  Plaintiffs' claim that the State's fairly common pay practices are in violation of the FLSA is a novel one.  The State's reliance on its analysis of the FLSA's requirements following *Garcia* is firmly based in law and has not been unsettled by any new regulation or court decision.  If anything, the addition of regulatory language recognizing the "public accountability" exception to partial-day deductions, 29 C.F.R. § 541.710, and the numerous courts upholding similar public pay systems over the past 20 years lend support to the reasonableness of the State's actions.  *See* Part II, *supra*.  Therefore, the State acted in good faith in determining that its pay systems comply with

the salary basis test. Even if Plaintiffs could establish a violation of that test, Plaintiffs would not be entitled to liquidated damages.

<u>CONCLUSION</u>

The State plainly pays its employees – including Plaintiffs – in a manner consistent with the FLSA's "salary basis" requirement. Plaintiffs receive a "predetermined amount" of compensation subject to deduction only for absences occasioned by Plaintiffs and only in circumstances expressly permitted by the Act. Moreover, even were Plaintiffs able to establish a violation of the salary basis test, the undisputed facts clearly show that any such violation would not be willful and that the State acted in good faith. Therefore, the State respectfully requests that the Court grant its motion and dismiss Plaintiffs' Second Amended Complaint in its entirety.

DATED at Montpelier, Vermont this 21st day of December, 2012.

STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

By:     /s/ Jonathan T. Rose
        Jonathan T. Rose
        Todd Daloz
        Assistant Attorneys General
        Office of the Attorney General
        109 State Street
        Montpelier, VT 05609-1001
        (802) 828-0392
        jrose@atg.state.vt.us

        Counsel for Defendants