UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| SHEILA CONIFF, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Civil No. 2:10-cv-32 |
| | ) |
| STATE OF VERMONT, et al. | ) |
| | ) |
| Defendants. | ) |

DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants State of Vermont, State of Vermont Agency of Administration and Jeb Spaulding (collectively, the "State") submit this Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. As explained in detail below, and in the State's Memorandum of Law in Support of its Motion for Summary Judgment ("State's Summary Judgment Memorandum") (Doc. 129-1), the undisputed facts demonstrate that Plaintiffs are paid on a "salary basis," and their collective-action FLSA claim should be dismissed because Plaintiffs are exempt from the FLSA's overtime requirement.

INTRODUCTION

Notwithstanding the number of State employees involved and the substantial volume of documents presented to the Court in connection with the present motions, this is a relatively straightforward case. Indeed, the facts stipulated to by the parties show that Plaintiffs are guaranteed a predetermined, minimum amount of pay each week and that this pay is subject to deduction only for voluntary absences for which the employee does not have sufficient accrued leave (i.e., in circumstances expressly permitted by the applicable regulations). This is all that is required to show that Plaintiffs are paid in a manner consistent with the FLSA's salary basis test.

Nonetheless, Plaintiffs assert that they are "hourly," rather than "salaried" employees – a conclusion which seems to be based primarily on Plaintiffs' own understanding of the meaning of those terms rather than the applicable case law and regulations. For example, Plaintiffs attempt to show they are "hourly" employees by directing the Court's attention to evidence showing that in some circumstances, they receive pay only for their hours actually worked. As explained in detail below, however, this argument relies not only on an incomplete and incorrect characterization of the evidence, but also on a reading of the FLSA regulations that completely ignores the permissible deductions. Similarly, Plaintiffs incredulously assert that they cannot be "salaried" employees because their pay is computed and expressed as an hourly rate. However, nothing in the applicable regulations or case law precludes an employer from tracking a "salaried" employee's time or computing his pay as an hourly rate (indeed, numerous courts have upheld such practices). Finally, Plaintiffs attempt to avoid application of the rule allowing public employers to deduct pay for partial day absences by advancing a cramped interpretation of the rule that conflicts with both the Department of Labor's guidance and the federal courts' expansive construction of the rule in analyzing similar pay systems.

Thus, the relevant legal authority does not support Plaintiffs' position that they are paid in a manner inconsistent with their understanding of the term "salary." The State has shown that its employees (including Plaintiffs) are paid on a "salary basis" as that term has been authoritatively defined. Plaintiffs' claim should be dismissed.

I.   PLAINTIFFS ARE PAID ON A "SALARY BASIS" AS THAT TERM IS DEFINED IN 29 C.F.R. § 541.602(a).

Plaintiffs appear to argue that they are not paid a "predetermined amount" of compensation under 29 C.F.R. § 541.602(a) primarily because (1) their pay is computed as an hourly rate and they are required to track their time and (2) their pay is subject to reduction in

2

some circumstances (i.e., they sometimes receive pay only for the hours they work).  *See* Pls.' Summ. J. Mem. at 7.  These arguments rely on a mischaracterization of the undisputed facts, a failure to acknowledge decisions upholding such practices, and a reading of the FLSA regulations that completely ignores permissible deductions.

      A.      <u>Plaintiffs Mischaracterize The Evidence Cited In Their Statement Of Facts</u>.

To begin, Plaintiffs attempt to show they are "hourly" instead of "salaried" employees primarily by asserting that they are paid "according to an hourly pay grade" and that if a member of the Plaintiff class "works one hour s/he is paid one hour."  Plaintiffs Statement of Material Facts as to Which there is No Genuine Dispute ("Pls.' Facts") ¶¶ 5-6 (Doc. 127-1); *see also* Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Law ("Pls.' Summ. J. Mem.") at 2 (Doc. 127) ("[I]f a Plaintiff works one hour, he or she is paid one hour . . . .").  However, these assertions are based on an incomplete and misleading reading of the cited evidence and are inaccurate in ways that are critically relevant to the salary basis analysis.  *See generally* Defendants' Responses to Plaintiffs' Statement of Material Facts as to Which there is No Genuine Dispute ("Defs.' Resp. to Pls.' Facts") (Doc. 132).  A closer look at the evidence cited by Plaintiffs shows that there is no genuine dispute as to the facts material to the salary basis analysis.

For example, Plaintiffs' assertion that if a member of the class "works one hour s/he is paid one hour" is inaccurate and irrelevant.  Contrary to Plaintiffs' assertion, the evidence cited in support of this proposition actually shows that a member of the Plaintiff class who works one hour is paid one hour *only* if he or she misses work for his or her own reasons and *only* if he or she lacks sufficient accrued leave to cover the absence; otherwise, he or she still receives a full weekly salary.  *See* Defs.' Resp. to Pls.' Facts ¶ 6.  Without this additional clarifying

3

information, Plaintiffs' statement is incomplete and insufficient to inform the Court's salary basis analysis because in some circumstances, the regulations permit deductions for hours not worked.[1]  *See* Defs.' Summ. J. Mem. at 14-18; Parts I.C & II, *infra*.

The Court's analysis must focus on *material* facts – i.e., those facts that actually affect the outcome of the analysis.  Again, the evidence in the record is as follows:  (1) Plaintiffs are provided a basic weekly salary based on a guaranteed 40-hour workweek at the rate listed in the applicable collective-bargaining agreement; (2) the State does not deduct from this basic weekly salary for any absences occasioned by the State (for example, occasions on which the State has insufficient work available or where a State facility must be closed for emergency purposes); and (3) the State deducts from the basic weekly salary for absences occasioned by employees only when employees do not have sufficient accrued leave to cover the absences.  *See generally* Defs.' Facts.  Plaintiffs do not and cannot dispute these basic facts, which, as explained in greater detail below, demonstrate that Plaintiffs are paid on a "salary basis" for purposes of the FLSA.  *See* Defs.' Summ. J. Mem.

### B. Plaintiffs Are Paid A "Predetermined Amount" Of Compensation.

Under 29 C.F.R. § 541.602(a), employers are required to pay salaried employees a "predetermined amount" of compensation each week, so long as employees are "ready, willing and able" to work.  It is well-established, however, that an employer may, consistent with the salary basis test, make deductions from an employee's accrued leave to cover absences occasioned by the employee.  For example, in the Preamble to the most recent versions of the FLSA regulations, the Department of Labor made clear that it "agree[s with the numerous courts

---

[1] The salary basis regulations permit pay deductions for absences occasioned by the employee where the employee lacks sufficient leave to cover those absences.  *See* Defs.' Summ. J. Mem. at 14-18.  Thus, the fact that a member of the Plaintiff class might receive one hour of pay for one hour of work in those circumstances is consistent with the conclusion that the employee is paid on a salary basis.

4

that have weighed in the issue] that employers, without affecting their employees' exempt status, may take deductions from accrued leave accounts." 69 Fed. Reg. 22122, 22178 (April 23, 2004) (preamble to regulations).  This statement echoed the Department's "position" as stated in the comments section of the final "public accountability" rule "that an employer can require an employer to substitute paid leave for absences of less than a day without losing the exemption for the week." 57 Fed. Reg. 37666, 37676, 1992 WL 198732 (Aug. 19, 1992).[2]

In light of this principle, it is not surprising that that the salary basis test permits employers to track employees' time and to calculate salary based on an hourly rate.[3]  *See* Defs.' Mem. at 12-13 (collecting cases); *see also ACS v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006) ("[I]t has long been clear that an employer may satisfy the salary basis test even though it chooses to pay salaried employees on an hourly basis."); *Adams v. Niagra Mohawk Power Corp.*, No. 5:02-CV-1353, 2008 WL 4527694, at *6 (N.D.N.Y. Sept. 30, 2008) ("[T]he fact that an employer keeps records of its employees' hours, by itself, has no bearing on that employee's status as a salaried worker.").

---

[2] The Department and courts have repeatedly confirmed this principle.  *See* Wage & Hour Opinion Letter, FLSA 2005-5, 2005 WL 330604 (Jan. 7, 2005) ("[E]mployers may require exempt employees to record and track their hours and to work a specified schedule, and may take deductions from accrued leave accounts without affecting the employees' exempt status."); *see also Webster v. Pub. Sch. Employees of Wash., Inc.*, 247 F.3d 910, 917 (9th Cir. 2001) (holding that "leave time is not salary" and deductions from leave time do not affect the exemption); *Castro v. Metro. Trans. Auth.*, No. 04 Civ. 1445, 2006 WL 1418585, at *4 (S.D.N.Y. May 23, 2006) (exemption not lost by practice of docking leave balances for partial day absences) (collecting cases); *Kennedy v. Commonwealth Edison Co.*, 252 F. Supp. 2d 737, 742-43 (C.D. Ill. 2003) (same); *Cooke v. General Dynamics Corp.*, 993 F. Supp. 50, 53-55 (D. Conn. 1997) (same).

[3] Otherwise, of course, it would be administratively impossible for employers to take advantage of this leave deduction principle, as well as the regulations permitting employers to (1) pay overtime compensation based on hours worked without losing an exemption, 29 C.F.R. § 541.604(a), and (2) in cases of public employers, to make partial day deductions for absences occasioned by an employee with no accrued leave.  29 C.F.R. § 710(a).

The State's pay practices are consistent with these principles. Indeed, it is undisputed that Plaintiffs are guaranteed to receive the same salary every week, barring any voluntary absences not covered by accrued leave. In other words, Plaintiffs are paid their full salary (based on 40 hours per week at the predetermined rate provided in the applicable collective-bargaining agreement), regardless of how many hours they work, provided they have sufficient leave to cover any voluntary absences. *See* Stipulation of Facts (Doc. 125) ¶¶ 3-4 (plaintiffs are guaranteed 40 hours of work each week and must use paid leave to cover any absences occasioned by employee). Notably, the paystubs submitted by Plaintiffs in support of their Motion for Summary Judgment confirm this practice. *See* Declaration of Sheila Coniff (Doc. 127-3) ¶ 7 & Attachments (paystubs showing lead Plaintiff received at least 40 hours of pay each week, even in weeks where lead Plaintiff did not work 40 hours or more).

A review of the testimony extensively quoted by Plaintiffs in their Memorandum further demonstrates that the pay of State employees (including Plaintiffs) is subject to reduction only when they lack sufficient leave to cover self-imposed absences. *See* Pls. Summ. J. Mem. at 7 (Coniff and Ball testimony addressing only situations where an employee lacks accrued leave to cover voluntary absences); Defs.' Resp. to Pls.' Facts ¶ 6 (Paulger testimony cited by Plaintiffs refers only to situations where employees do not have sufficient accrued leave to cover voluntary absences); Pl.'s Mem. at 9-10 (Walker testimony limited to an instance in which an employee does not have sufficient accrued leave to cover voluntary absence).[4]

---

[4] Plaintiffs omitted the State's objections from the quoted material; however, the witnesses' testimony as to whether they believe the State's pay system is consistent with the FLSA's definition of "salary" is clearly irrelevant to the Court's analysis. *See*, *e.g.*, *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) (witnesses may not "present testimony in the form of legal conclusions" (citations and quotations omitted)). The testimony establishes that Plaintiffs are guaranteed 40 hours of work per week and that they receive that guaranteed 40 hours of pay unless they lack sufficient leave to cover voluntary absences. Regardless of whether the witnesses believe these facts lead to the legal conclusion that they are "salaried" employees or not, the law compels the conclusion that they are salaried.

Thus, it is simply immaterial whether the State requires Plaintiffs to use accrued leave to cover any voluntary absences, calculates Plaintiffs' salary based on an hourly rate, or requires employees to track their work time. The undisputed facts make clear that except for the deductions for full day absences expressly permitted by 29 C.F.R. § 541.602(b) (permitting full day deductions for personal and sick leave) and the deductions for partial day absences expressly permitted by 29 C.F.R. § 541.710(a) (permitting partial day deductions where employees miss work for their own reasons and lack sufficient leave), the State pays Plaintiffs a "predetermined amount constituting all or part of the employee's compensation" each week. This is all that is required to satisfy the FLSA's definition of "salary." 29 C.F.R. § 602(a); *see also Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 164 (2d Cir. 2008) ("[U]se of the word 'predetermined' to describe the salary requirement indicates only that this element of an employee's compensation must be both fixed and determined prior to the period in which it applies."); *Kuchinskas v. Broward County*, 840 F. Supp. 1548, 1555-56 (S.D. Fla. 1993), *aff'd*, 86 F.3d 1186 (11th Cir. 1996) (reducing leave banks for partial day absences, requiring employees to keep time sheets, and basing salary on 2,080 hours per year did not defeat plaintiffs' status as "salaried" public employees under FLSA); *Stewart v. City & County of San Francisco*, 834 F. Supp. 1233, 1240 (N.D. Cal. 1993) (pay system complies with salary basis test so long as an "employee can expect a consistent paycheck regardless of quantity or quality of work, while understanding that pay will be reduced for any personal leaves of absence that are not covered by accumulated personal or sick leave").

    C.    <u>The Court Should Not Consider Permissible Deductions In Determining Whether The State's Pay System "Otherwise Complies" With The Salary Basis Test</u>.

Plaintiffs dispute the assertion that they are paid a "predetermined amount" of compensation each week on the ground they receive less than a full week's salary on those rare

7

occasions when they lack sufficient leave to cover absences occasioned by their own needs (i.e., where deductions are permitted by 29 C.F.R. §§ 541.602(b) & 541.710(a)).[5] Apparently, Plaintiffs believe that the Court must consider these deductions in determining whether the State's pay system "otherwise" complies with the "predetermined amount" requirement in 29 C.F.R. § 541.602(a). Pls.' Mem. at 5-6. Citing *Reich v. Waldbaum, Inc.*, 52 F.3d 35 (2d Cir. 1995) and *Vonbrethorst v. Washington County*, No. CV06-0351-SEJL, 2008 WL 2785549 (D. Idaho July 15, 2008), Plaintiffs argue that "ignoring" the applicable deduction regulations, the State's pay system does not "otherwise" comply with the salary basis test because Plaintiffs' pay could be reduced if they miss work time for their own reasons and lack sufficient leave to cover the absence. Of course, this argument is nonsensical on its face because it would preclude employers from ever taking advantage of the deductions expressly permitted by the regulations. In any event, however, Plaintiffs misapprehend the significance of both the *Reich* and *Vonbrethorst* cases.

In *Reich*, the Second Circuit assumed (but did not hold[6]) that where a *private* employer required employees "to punch a time clock" and paid employees "compensation which varied according to the number of hours recorded," those employees were not paid a "predetermined amount" of compensation as required by the salary basis test. *Reich*, 52 F.3d at 37-38. Because the case involved a private employer, however, the court did not consider whether partial day deductions affect this analysis and the decision is therefore offers no support for Plaintiffs' position. Moreover, as explained above, unlike *Reich*, Plaintiffs' pay does not vary "according

---

[5] As noted in the State's Memorandum, the parties have been able to identify only about 554 occasions on which this happened, out of approximately 90,000 lines of pay data analyzed.

[6] The employer in the *Reich* case had conceded a violation of the salary basis test, so the court did not expressly analyze the issue (and notably, the court did not mention whether employees were required to use leave to cover absences). Rather, the case turned on whether a violation of the FLSA was "willful."

8

to the number of hours recorded"; it is undisputed that except on those rare occasions where Plaintiffs lack sufficient leave to cover their voluntary absences (i.e., where deductions are permitted by sections 541.602(b) and 541.710(a)), they receive their full salary every week regardless of the actual number of hours worked.

The District of Idaho's unpublished *Vonbrethorst* decision is similarly inapposite here. In that case, the court held that a municipal employer was not entitled to summary judgment on the salary basis issue because it had provided "no evidence" that an employee received a "predetermined amount" of compensation. *Vonbrethorst*, 2008 WL 2785549, at *7. The decision says nothing about whether a public employer's partial day deductions are a factor in determining whether employees "otherwise" receive a predetermined salary. Moreover, the *Vonbrethorst* decision is also distinguishable because unlike that case, the State has provided substantial and undisputed evidence that Plaintiffs receive a predetermined amount of compensation each week (i.e., their "basic weekly salary") and no deductions are made from this salary other than those expressly permitted by the regulations.

In short, the *Reich* and *Vonbrethorst* cannot bear the weight Plaintiffs assign to them. Rather they simply stand for the proposition that without regard to the deductions expressly permitted by the regulations, a pay system must first "otherwise" be consistent with the salary basis requirement. Or, as the Tenth Circuit has explained, "*ignoring deductions that a public sector employer may make* for absences of less than one day . . . the employer must *otherwise* satisfy the test, and therefore cannot make any *other* deductions from an employee's salary based upon quantity or quality of work." *Sprading v. City of Tulsa*, 95 F.3d 1492, 1500 (10th Cir. 1996) (emphasis added). Here, putting aside the deductions expressly permitted by the regulations, the State's pay system "otherwise" plainly satisfies the salary basis test because it is

9

undisputed that Plaintiffs are guaranteed a basic weekly salary that is not subject to reduction so long as Plaintiffs are ready, willing and able to work.

II.     THE STATE MAY DEDUCT FOR PARTIAL DAY ABSENCES BECAUSE ITS PAY SYSTEM IS ESTABLISHED PURSUANT TO AND CONSISTENT WITH PRINCIPLES OF PUBLIC ACCOUNTABILITY.

The State's Memorandum argues that the State is entitled to deduct from Plaintiffs' pay when they lack sufficient accrued leave to cover a partial day absence because the State is a public employer and its pay system is consistent with the "broad concept" of public accountability. *See* Defs.' Mem. at 16-17 (quoting 29 C.F.R. § 541.710(a); 56 Fed. Reg. 37666, 37670, 1992 WL 37666-01 (Aug. 19, 1992)). Specifically, the Vermont Constitution and state statutes underlying the State's current pay system, as well as the operation of that system itself, reflect the principle that the State and its employees are accountable to the public. *See* Defs.' Mem. at 6-8, 18.

Moreover, it is evident from just a sampling from State's historical pay policies and practices that its pay systems have long been based on and consistent with public accountability principles. For example, more than fifty years ago – like today – the State had a pay plan that prescribed the minimum number of hours employees were required to work to earn their salary, and provided that employees who did not work the required number of hours would not receive their full salary. *See* Rules & Regulations for Personnel Administration § 6.044 (October 1, 1956) (copy attached as **Exhibit 1**) ("All rates in the scales of pay are those authorized for full-time employment. Payment for part-time service shall be pro-rated at the rate for full-time service."); *see also id*. § 14.01 (prescribing minimum number of hours required to earn salary). Like the modern policies, that pay plan also required the State to account for employees' time.

10

*See id*. §§ 14.04 ("The appointing authority shall be responsible for preparing on a prescribed forma report of absences, tardiness, and hours worked for all employees of an agency.").

In addition, a 1960s State employee handbook encapsulated the principle that State employees are accountable to the public:

> A state employee occupies a position of public trust.
> . . . The expenditure of public funds and the use of materials, supplies and equipment must also be regarded as a public trust. Employees are expected to be as economical as possible and to avoid waste.
> . . . .
> It hardly needs be mentioned that regular attendance and punctuality are expected of all State employees. This is expected by supervisors who are charged with the responsibility for getting work done and by the members of the public who look for prompt, efficient state services.
> . . . .
> Attendance is more than a matter of being on the premises. It means being at one's place of work, on time, ready to pitch into the day's business. It means, too, performing a full day's work and remaining on the job during normal working hours, available to render service and to share the responsibilities of the work unit of which employees are a part.
> . . . .
> All employees are expected to give their full time and attention to their job responsibilities during the regular working hours. Personal business . . . is to be arranged for outside of business hours.

Personnel Division, Department of Administration, State of Vermont, *Serving Our Citizens, A Handbook for State Employees* at 21-22 (copy attached as **Exhibit 2**).[7] And even then – as now – "accurate time and attendance reports [were] maintained in all departments and agencies," which were then forwarded to the Department of Finance where "payrolls [were] prepared" and

---

[7] The State believes it already has produced sufficient evidence to show that its pay policies are consistent with principles of public accountability. However, to the extent the Court considers the historical documents helpful to its analysis of the public accountability issue, the State respectfully requests that the Court take judicial notice of these documents, which reflect historical agency rules and policy. *See*, *e.g.*, *Klemonski v. Semple*, No. 3:09-cv-1611, 2010 WL 2011142, at *2 n.1 (D. Conn. May 19, 2010) (noting that courts may take judicial notice of official documents "disclosing policy" (quoting *United States v. Penn Foundry & Mfg. Co.*, 337 U.S. 198, 215 (1949) (Douglas, J., concurring))).

11

"salary checks" paid every two weeks. *Id*. at 27; *see also Demos v. City of Indianapolis*, 302 F.3d 698, 703 (7th Cir. 2002) (pay system was consistent with public accountability where "employee manual explain[ed] that the 'job performance and personal conduct of each employee impact directly on the public's trust,' and detail[ed] numerous rules designed to establish procedural safeguards for the on-time job performance of each public employee.").

Implicitly acknowledging the State's showing on this issue, Plaintiffs argue that the State should not be entitled to the public accountability exception because (1) Vermont law "calls for the payment of 'salaries' to classified employees," Pls.' Mem. at 15; (2) some high-level employees are not subject to partial day deductions, *id.* at 16; and (3) classified employees receive various types of paid leave under the VSEA Agreements. *Id*. Plaintiffs' arguments are unavailing.

First, while it is true that, under the employee pay statute, the State is required to establish a "salary structure" for employees, *see* 3 V.S.A. § 310(c), this fact has no bearing on the public accountability analysis. As explained above, all State employees (including Plaintiffs) do indeed receive a "salary," at least as that term is defined by the FLSA. However, the State's use of the term "salary" in its employment statutes is not inconsistent with principles of public accountability because the fact that employees are "salaried" does not preclude the State from deducting from employees' accrued leave or pay for voluntary absences (as required by those principles). Indeed, the undisputed facts demonstrate that the vast majority of State employees (again, including *all* members of the Plaintiff class) receive a salary computed as an hourly rate and must track their work time and leave usage. Thus, the State's pay statutes and practices are consistent with public accountability principles.

Second, although the vast majority of State employees – including a large number of employees, like attorneys, who are exempt from the classified service – must track their time and use accrued leave for any absences, a small number of primarily high-level elected and appointed officials – most of whom receive a salary mandated directly by statute[8] – do not accrue leave and receive the same amount of pay each week regardless of their actual work time.  Of course, consistent with principles of public accountability, those mostly high-ranking employees still informally track their leave and must swear that they are entitled to their pay each pay period. *See* Defs.' Facts Ex. 8 ¶¶ 4, 6.  But in any event, the method of payment applicable to those employees has little bearing on whether the pay system applicable to Plaintiffs is based on or consistent with principles of public accountability.  *See* 29 C.F.R. 541.710(a) (analysis focuses on the pay system applicable to the employee bringing the claim).

Finally, Plaintiffs' argument that they are not paid in accordance with public accountability principles because they receive various types of paid leave under the VSEA Agreements misapprehends the nature of the public accountability exception.  Principles of public accountability do not prohibit a government employer from providing its employees with paid leave.  The exception simply recognizes that government employers are required to track employees' work and leave usage to ensure that taxpayer funds are not being misused for "wasteful and abusive excesses," such as "ghost payrolling" that would be possible were employees not required to track their time and use leave to cover absences.  57 Fed. Reg. at 37676.

Thus, the Department of Labor has made clear that an "employment agreement" – such as the VSEA Agreements – that provides for various types of paid leave is consistent with

---

[8] *See* 32 V.S.A. § 1003 (establishing salaries for elected officials and heads of departments, offices and agencies).

principles of public accountability. Those principles concern only the possibility that an employee will receive *unauthorized* pay for time he or she did not work. *See id*. (principles of public accountability dictate that "public employees should not be paid for time they do not work *that is not otherwise guaranteed to them under the pertinent civil service employment agreement*" (emphasis added)); *id*. ("[P]rinciples of public accountability require that public sector employees not be paid for hours not worked *that are not otherwise covered by an entitlement under an employment agreement, such as paid leave*." (emphasis added)). Here, Plaintiffs are paid in a manner consistent with public accountability principles because aside from the paid leave granted them under the VSEA Agreements, Plaintiffs do not receive pay for any other voluntary absence.

IV.   PLAINTIFFS CANNOT ESTABLISH A WILLFUL VIOLATION OF THE FLSA.

In their Memorandum, Plaintiffs argue that they are entitled to a three-year statute of limitations under the FLSA rather than the standard two-year limitation. Specifically, Plaintiffs assert that the State failed to raise the "defense to a willful violation" in its answer, and thereby waived the defense, and that they have provided sufficient evidence to show that any violation of the FLSA's salary basis test was willful. Plaintiffs are incorrect on both points.

   A.   The State Has Plead A Statute Of Limitations Defense.

First, Plaintiffs are simply wrong that the State failed to raise a statute of limitations defense in its Answer. *See* Answer, Affirmative Defenses (Doc. 26) (asserting an affirmative defense of "statute of limitations"). Moreover, the State specifically denied Plaintiffs' allegation that it acted willfully, and the parties have conducted discovery in this case as though willfulness were an issue. *See* Second Amended Complaint ¶ 61 (Doc. 13); Answer ¶ 61; *see also* First Amended Answer ¶ 61 (Doc. 124). This is all that is required to raise a defense to an allegation

of willfulness. *See Kelly v. A1 Tech.*, No. 09-Civ-962, 2010 WL 1541585, at *17 (S.D.N.Y. Apr. 12, 2010); *Santiago v. United States*, 107 Fed. Cl. 154, 159-60 (Fed. Cl. 2012); *Rodriguez v. M.I. Quality Lawn Maintenance, Inc.*, No. 10-21031-CIV, 2011 WL 845844, at *2 (S.D. Fla. Mar. 8, 2011). Thus, the State has not waived its statute of limitations defense.

      B.      <u>Plaintiffs Have Not Shown That The State Acted Willfully</u>.

Second, even if Plaintiffs could establish a violation of the FLSA, they cannot show that the State acted willfully. To begin, none of the evidence cited by Plaintiffs suggests that the State had knowledge of any violation (again, there is none) or recklessly disregarded its obligations under the salary basis test. *See* Defs.' Mem. at 19 (discussing standard for finding a willful violation). For instance, while State Director of Labor Relations Thomas Ball testified that he was not sure who would be in charge of compliance with the salary basis test, *see* Pls.' Mem. at 18,[9] he also explained that this was because the State had already conducted a review and determined that it was in compliance, and that nothing had changed since that time. Pls.' Facts, Ex. C at 9-10 (deposition pages 14-15). Moreover, as explained in the State's Response to Plaintiffs' Statement of Facts, the evidence cited by Plaintiffs does not support their assertion that the State "decided to treat employees in pay grade 23 and above as FLSA exempt and those in pay grades 22 and below as non-exempt." *See* Pls.' Mem. at 18; Defs.' Resp. to Pls.' Facts ¶ 12 (distinction relates to overtime entitlement under the VSEA Agreements, not the FLSA, for which independent determination is made). To the contrary, the State believes that it pays *all* classified employees in a manner consistent with the salary basis test, and the evidence shows that the State conducts an independent review of each position to determine whether it should be

---

[9] While this portion of Plaintiffs' argument falls under its liquidated damages analysis, Plaintiffs' Memorandum makes clear that Plaintiffs rely on the same facts to advance their willfulness claim. Pls.' Mem. at 19.

15

considered FLSA exempt or non-exempt under the duties test. *See* Def.'s Facts ¶ 23; Defs.' Resp. to Pls.' Facts ¶ 12.

In fact, the State conducted a comprehensive review of its pay system under the salary basis test when the FLSA first became applicable to the states and concluded correctly (or at least in good faith) that the pay system complied with that test. Defs.' Mem. at 19-20; Defs.' Facts ¶¶ 22-24. Since that time, neither the State's pay system, nor the salary basis test, has changed in any way that would suggest that another comprehensive review was necessary. Thus, the undisputed facts demonstrate that the State had a reasonable basis for believing that its pay system complies with the FLSA. Plaintiffs cannot meet their burden of showing a willful violation. *Fitzgerald v. City of Troy, N.Y.*, No. 1:10-cv-451, 2012 WL 5986547, at *24-25 (N.D.N.Y. Nov. 28, 2012) (plaintiffs must do more than prove a "good faith but incorrect assumption" regarding compliance to show willfulness).

V. PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES BECAUSE THE STATE ACTED IN GOOD FAITH.

Relying on the same mischaracterization of the relevant facts they use to support their position on the willfulness issue, *see* Part IV.B, *supra*, Plaintiffs also argue that they are entitled to liquidated damages because the State has not shown that it acted in good faith or that it had reasonable grounds for believing that its pay system complies with the salary basis test. Pls.' Mem. at 18. As explained above, however, Plaintiffs assertions do not overcome the State's evidence showing that it has taken – and continues to take – meaningful steps to ensure compliance with the FLSA and that the law has not changed in any substantial way since those steps were taken. *See generally* Defs.' Mem. at 8-9, 21 (describing steps taken by the State to ensure compliance with the FLSA). Thus, the State has established that it has acted in good faith and had reasonable grounds for concluding that its pay system does not violate the FLSA.

16

*Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (showing of "good faith" requires only that the employer take "active steps to ascertain the dictates of the FLSA and then act to comply with them"). In the event the Court finds that the State's pay system somehow violates the salary basis test, Plaintiffs' claim for liquidated damages should be denied.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the State's Motion for Summary Judgment and accompanying materials, the State respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment, grant the State's Motion for Summary Judgment and dismiss Plaintiffs' collective action complaint.

DATED at Montpelier, Vermont this 22nd day of January, 2013.

> STATE OF VERMONT
>
> WILLIAM H. SORRELL
> ATTORNEY GENERAL
>
> By:   /s/ Jonathan T. Rose
>       Jonathan T. Rose
>       Todd Daloz
>       Assistant Attorneys General
>       Office of the Attorney General
>       109 State Street
>       Montpelier, VT 05609-1001
>       (802) 828-0392
>       jrose@atg.state.vt.us
>
> Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January, 2013, I electronically filed Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Adam P. Bergeron, Steven C. Collier and Thomas H. Somers.

                                STATE OF VERMONT

                                WILLIAM H. SORRELL
                                ATTORNEY GENERAL

By:    <u>/s/ Jonathan T. Rose</u>
          Jonathan T. Rose
          Todd Daloz
          Assistant Attorneys General
          Office of the Attorney General
          109 State Street
          Montpelier, VT 05609-1001
          (802) 828-0392
          jrose@atg.state.vt.us

          Counsel for Defendants