UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| SHEILA CONIFF, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 2:10-cv-32 |
| ) | |
| STATE OF VERMONT, et al. ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants State of Vermont, State of Vermont Agency of Administration and Jeb Spaulding (collectively, the "State") submit this Reply Memorandum in Further Support of Their Motion for Summary Judgment.  The State has shown in its Summary Judgment Memorandum (Doc. 129-1) and its Summary Judgment Opposition (Doc. 134) that except in situations expressly contemplated by FLSA regulations, Plaintiffs receive a "predetermined amount" of compensation each week that is not subject to reduction so long as Plaintiffs are ready, willing and able to work.  Accordingly, Plaintiffs are paid on a "salary basis."  In their Summary Judgment Opposition (Doc. 133), however, Plaintiffs continue to insist – without any factual or legal support – that they are only paid for the hours they work, and that the State's administrative practice of computing their pay in hourly terms offends the salary basis test.  In addition, contrary to well-established precedent allowing public employers to take partial day deductions from pay, Plaintiffs advance an unduly restrictive interpretation of the public accountability exception found at 29 C.F.R. § 541.710(a), and argue that the State is precluded from taking such deductions.  Plaintiffs' arguments are meritless.

I.      PLAINTIFFS ARE PAID A "PREDETERMINED AMOUNT" OF COMPENSATION.

First, Plaintiffs' repeated insistence that they are "paid only for each hour they work," Pls.' Summ. J. Opp. at 2, and that their "compensation fluctuates in direct correlation with the number of hours worked," *id*. at 5, is simply wrong, and finds no support in the record. Again, Plaintiffs have stipulated to the fact that they receive their full basic weekly salary *regardless of how many hours they work*, unless they lack sufficient leave to cover a voluntary absence.[1]  *See* Defs.' Summ. J. Opp. at 3-4, 6. Plaintiffs misleadingly cite the testimony of several witnesses who observed that employees are paid only for their hours worked, but a review of the testimony cited makes clear that the witnesses were explaining what would happen where an employee lacks sufficient leave to cover a voluntary absence. *Id*. at 6. In such circumstances, of course, it does not matter for purposes of the FLSA analysis whether an employee is paid only for hours worked because the salary basis regulations expressly permit deductions for voluntary absences not covered by accrued leave. *Id*. at 3-4.

Second, Plaintiffs' argument that they do not receive a "predetermined amount" of compensation each week because their "Basic Weekly Salary" is computed as a fixed number of hours per week, Pls.' Summ. J. Opp. at 4-5, rests entirely upon a distinction without a difference. Whether Plaintiffs' salary is expressed in hourly, weekly or yearly terms is immaterial. What matters is that Plaintiffs receive a "fixed and determined" amount of compensation each week (referred to in the VSEA Agreements as the "Basic Weekly Salary"), subject to deduction only in situations contemplated by the regulations (i.e., for voluntary absences not covered by accrued

---

[1] For example, if a member of the Plaintiff class is told by his or her supervisor not to report to work for a week, that employee still receives a full 40 hours of pay for that week. Defs.' Facts ¶¶ 8-10 (while Plaintiffs "dispute" this fact, *see* Pls.' Resp. to Defs.' Facts ¶ 8 (Doc. 133-1), nothing in the evidence they cite contradicts the fact that the State guarantees Plaintiffs 40 hours of work per week and pay them their full salary even if they do not work the whole week for reasons occasioned by the State). Similarly, if a member of the Plaintiff class misses a week of work for his or her own reasons and has sufficient accrued leave to cover the absence, he or she still receives a full basic weekly salary. Defs.' Facts ¶ 12.

leave). That the State has chosen, out of administrative convenience, to compute Plaintiffs' basic weekly salary in hourly terms is of no consequence in the FLSA analysis.[2] *See Acs v. Detroit Edison Co.*, 444 F.3d 763 (6th Cir. 2006) (FLSA does not "circumscribe[] an employer's authority to choose the mechanics of a compensation system that suits its business needs").

Indeed, Plaintiffs' argument that the State offends the salary basis test by calculating their salary in hourly terms has been squarely rejected by the Department of Labor and the courts. As the Department has explained,

> Provided that employees regularly receive each biweekly pay period under the employment agreement no less than 1/26 of their annual salary (except those deductions expressly permitted), their exempt status is not affected by the number of hours that are entered for a particular pay period or for each separate week within that pay period, or by how time is described when it is entered into the payroll system (*e.g.*, regular time, overtime, holiday pay, sick leave, personal leave or other codes). In other words, the tracking or accounting of actual hours worked by exempt employees does not violate the "salary basis" requirements.

Wage & Hour Opinion Letter, FLSA2003-5, 2003 WL 23374601 (July 9, 2003). Here, the undisputed facts show that Plaintiffs always receive the same, fixed salary every week, regardless of their hours actually worked except for "deductions expressly permitted" by 29 C.F.R. § 541.602(b) (full day deductions when leave is exhausted) and 29 C.F.R. § 541.710(a) (partial day deductions where leave has been exhausted). As the Department of Labor has made

---

[2] Again, the pay system applicable to Plaintiffs applies to the vast majority of *all* State employees, including employees statutorily exempt from the classified service, such as attorneys. While Plaintiffs attempt to "dispute" this fact, *see* Pls.' Resp. to Defs.' Facts ¶ 18 (Doc. 133-1), the evidence they cite refers only to elected or appointed officials such as "Commissioners," "Secretaries," the Court Administrator and perhaps some "Principal assistants" and "executive assistants" that serve "at the pleasure of the Governor, or the Secretary" of Agriculture. *See* Pls.' Facts, Ex. C at 14-17 (deposition pages 27-30); Ex. F at 7-8 (deposition pages 18-19). The State agrees that these mostly high-ranking employees receive a salary set by statute, 32 V.S.A. § 1003, and therefore do not formally track their time and leave usage. However, nothing in the testimony cited by Plaintiffs contradicts the State's evidence showing that most other non-classified employees (again, such as State attorneys), are subject to the same pay system as Plaintiffs, including the requirement that their pay be reduced for partial day voluntary absences where they lack sufficient paid leave. Defs.' Facts ¶¶ 17-18.

clear, the fact that some portion of Plaintiffs' salary is characterized as "paid leave" when used to cover voluntary absences is immaterial to the salary basis analysis.

Notwithstanding Plaintiffs' efforts to distinguish the case, *see* Pls.' Summ. J. Opp. at 7 n.5, the Northern District of California's *Stewart* decision is squarely on point. *Stewart v. City & County of San Francisco*, 834 F. Supp. 1233 (N.D. Cal. 1993). In that case, after noting that the plaintiffs were listed as "hourly" employees (like all other City employees), and that their "salaries are determined by the number of hours they work," the Court reaffirmed the principle that a public employee "meets the salary test if he or she receives a basic compensation, even if it is subject to deductions for certain absences [where the regulations permit such deductions]." *Id*. at 1240. In other words,

> [i]t is immaterial whether the salary is calculated by multiplying a base salary by hours worked or whether the salary is calculated by deducting absences from a base salary. What is relevant is whether the employee can expect a consistent paycheck regardless of quantity or quality of work, while understanding that pay will be reduced for any personal leaves of absence that are not covered by accumulated personal and sick leave.

*Id*. Like the public employees in *Stewart*, Plaintiffs "know how much they will earn each week, and they know that their salaries will be reduced if they take personal time off that is not accounted for by accumulated leave time." *Id*. at 1241. This is all that is required for purposes of the salary basis regulations. *Id*.; *see also Acs v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006) ("[I]t has long been clear that an employer may satisfy the salary-basis test even though it chooses to pay salaried employees on an hourly basis."); *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997) ("[H]ourly employees may be salaried if they are guaranteed a predetermined number of paid hours." (collecting Wage & Hour Opinion Letters)); *Anani v. CVS Rx Servs.*, 788 F. Supp. 2d 55, 62-65 (E.D.N.Y. 2011) (so long as employer pays employees a

predetermined amount each week, it does not matter that the employer tracks hours, expresses pay in terms of hourly rate, or requires employees to use paid leave to cover absences; analysis focuses on whether "improper" deductions have occurred).

Plaintiffs' efforts to distinguish the *Douglas* and *Anani* cases, *see* Pls.' Summ. J. Opp. at 7, are similarly unavailing. Like the employees in those cases, Plaintiffs have failed to produce any evidence that their pay is subject to *improper* deductions. Plaintiffs are required to report 40 hours of time each week, and are paid for all of this time so long as they have sufficient accrued leave to cover any voluntary absences. Thus, like the employees in *Douglas* and *Anani*, Plaintiffs' compensation is "not actually calculated on the basis of the hours on [their] time card[s]." Pls. Summ. J. Opp. at 7 (quoting *Douglas*, 113 F.3d at 71), but rather on a full 40 hours per week.[3] Again, Plaintiffs have stipulated that deductions from this pay only occur for voluntary absences employees do not have sufficient leave to cover. These deductions are not "improper" because they are expressly permitted by the regulations. *See id*. (hourly employee paid on salary basis where "there [was] no evidence that [he] was or would have been subject to *improper* deductions" (quoting *Anani*, 788 F. Supp. 2d at 65) (emphasis added)). The only difference between this case and the *Douglas* and *Anani* cases is that the State, as a public employer, is entitled to deduct for partial, as well as full-day absences, while the private employers in *Douglas* and *Anani* were not. Otherwise, the State's pay system is entirely consistent with those upheld in the *Douglas* and *Anani* cases.

Finally, apparently unable to locate any binding authority actually finding a salary basis violation in circumstances analogous to the present, Plaintiffs instead rely on what they interpret

---

[3] The timesheets submitted by Plaintiffs bear this out. *See generally* Pls.' Facts. Ex. A at 5-68 (timesheets show that lead Plaintiff Sheila Coniff always received at least – and typically more than – 80 hours of pay over each two week period even though she rarely entered 80 or more hours of actual work time).

to be the "fundamental purpose and understanding of the salary requirement" as expressed in the Department of Labor's comments preceding the final FLSA regulations implemented in 2004. Specifically, Plaintiffs point to language in the Department's historical summary of the salary basis test suggesting that as originally conceived in 1944, the salary basis requirement recognized that white collar employees "should generally be free to go home early or occasionally take a day off without reduction in pay" and reflected the understanding that white collar employees generally "have discretion to manage their time." Pls.' Summ. J. Opp. at 5 (quoting 69 Fed. Reg. 22122, 221176-79, 2004 WL 865626 (Apr. 23, 2004)). According to Plaintiffs, this language suggests that they are not "salaried" employees because they are not "allowed some latitude with respect to time spent at work," they are not "free to go home early . . . without reduction in pay," they are not given "discretion to manage their time," and they are not paid "for the general value of service rendered." *Id*. at 6.

      Plaintiffs fail to appreciate, however, that their understanding of the Department's historical summary does not supersede the Department's (and the courts') actual legal analysis. Whether or not the Department believed over 70 years ago that salaried employees "generally [were] free to go home early or take a day off without reduction in pay," for example, is simply immaterial in light of the actual *regulations* permitting reductions in pay for such absences. *See* 29 C.F.R. §§ 541.602(b), 541.710(a). And whatever the Department meant by observing that salaried employees generally had "discretion to manage their time," the Department and the federal courts have made clear that employers do not run afoul of the salary basis test by requiring employees "to record and track hours," or to "work a specific schedule." *See* 69 Fed. Reg. at 22178-79 (collecting federal cases). Thus, Plaintiffs' belief that the State's pay system contradicts the "fundamental purpose and understanding of the salary requirement" finds no

support in the actual legal analysis established by the Department and the courts.  Under that analysis, the State pays Plaintiffs on a "salary basis."

II.   THE STATE'S PAY SYSTEM IS CONSISTENT WITH PRINCIPLES OF PUBLIC ACCOUNTABILITY.

Public accountability is a "broad concept" that forms the basis for "most public sector pay systems."  57 Fed. Reg. 37666, 37676, 1992 WL 198732 (Aug. 19, 1992).  Indeed, the Department of Labor has recognized that it is "generally the case" that public pay practices requiring docking of pay "when leave is not used" are "based on principles of public accountability."  *Id*. at 37675.  Thus, courts applying the public accountability exception found at 29 C.F.R. § 541.710(a) have placed a very minimal burden on public employers, requiring them to show only, at most, that their pay systems are "consistent" with the broad concept.  *See* Defs.' Summ. J. Mem. at 17-18 (collecting cases).  It is not surprising, then, that Plaintiffs have not identified a single case in which a court denied a public employer the benefit of the public accountability exception.[4]

The State has met its minimal burden of showing that the pay system applicable to Plaintiffs is consistent with public accountability principles.  As explained in previous filings, multiple State statutes and constitutional provisions express the principle that State employees must be held accountable to the public, and historical policies and practices confirm that the State has long operated under a system prohibiting employees from receiving unauthorized pay for time not spent working.  *See* Defs.' Summ. J. Mem. at 6-8, 18; Defs.' Summ. J. Opp. at 10-

---

[4] The State has been able to identify only one such case.  In *Spradling v. City of Tulsa*, 95 F.3d 1492 (10th Cir. 1996), the employer was denied the exception because unlike the State's practice, that employer's policy provided only for discretionary, rather than mandatory, partial day deductions.  *Id.* at 1499-1500 (10th Cir. 1996) (discretionary deductions do not reflect public accountability principles, "[b]ecause public accountability pay systems *require* an employer to make deductions when an employee is absent from work"); *see also* 57 Fed. Reg. at 37676 (rejecting request to extend the public accountability exception to policies involving discretionary deductions).

12. Moreover, the undisputed facts demonstrate that nearly *all* State employees (including Plaintiffs, classified managers, and a large number of employees exempt from the classified service such as attorneys) are subject to the same pay system requiring deductions from pay when appropriate leave is not used. *See* Defs.' Summ. J. Mem. at 18; Defs.' Summ. J. Opp. at 12-13.[5]

Plaintiffs take issue with this last point, however, and argue that the State makes partial day deductions not because of principles of public accountability, but rather solely because the VSEA Agreements require such deductions. Pls.' Summ. J. Opp. at 11, 12. This argument falls short for at least two reasons. First, Plaintiffs are simply wrong that only bargaining unit employees are subject to partial day deductions; again, many other FLSA-exempt State employees who are not part of the classified service are subject to such deductions when they lack sufficient leave to cover their voluntary absences. *See* Notes 2 & 5, *supra*; Defs.' Facts ¶ 18. Thus, partial day deductions are mandated not merely by the VSEA Agreements, but rather by the general State policy reflected in those agreements. Second, the fact that the VSEA Agreements require partial day deductions does not make the practice inconsistent with public accountability principles (as explained above, such deductions are, indeed, required by public accountability principles, whether they come about simply as a matter of practice or whether they have been memorialized in a collective-bargaining agreement).

Plaintiffs also argue that they are not paid in accordance with public accountability principles because they receive various types of paid leave. Pls.' Summ J. Opp. at 11-12. As

---

[5] As noted above, *see* Note 2, *supra*, some high-level elected and appointed officials – most of whom receive a salary set directly by statute – are not subject to partial day deductions, but still informally track their time and leave, must still swear they are entitled to their pay, and receive a paycheck showing their salary expressed as an hourly rate. *See also* Defs.' Facts ¶¶ 17-19; Ex. 8 ¶ 4; Defs.' Summ. J. Opp. at 13. Of course, these employees are more directly accountable to the public than most, and the fact that they are not subject to partial day deductions does not defeat a finding that the separate pay system applicable to Plaintiffs is consistent with public accountability principles. *See* Defs.' Summ. J. Opp. at 13.

explained in the State's Summary Judgment Opposition, however, the Department of Labor has made clear that a pay system that provides employees with various types of paid leave is not inconsistent with principles of public accountability.[6] Defs.' Summ. J. Opp. at 13-14; *see* 57 Fed. Reg. at 37676 ("[P]rinciples of public accountability require that public sector employees not be paid for hours not worked *that are not otherwise covered by an entitlement under an employment agreement, such as paid leave*.") (emphasis added).

Therefore, notwithstanding Plaintiffs' cramped interpretation of the public accountability exception, *see generally* Pls.' Summ. J. Opp. at 9-12, the State has shown that its pay system is both established pursuant to and consistent with public accountability principles. *See, e.g., Rich v. County of Cook*, No. C 3155, 2012 WL 3581169, at *3 (N.D. Ill. Aug. 14, 2012) (public accountability found based on testimony that "office policy is to reduce an employee's pay when he or she comes in late because 'the taxpayers deserve to get their money's worth from county employees.'").

## CONCLUSION

For the foregoing reasons, as well as the reasons expressed in the State's Summary Judgment Memorandum and Summary Judgment Opposition, the State respectfully requests that the Court grant its Motion for Summary Judgment (Doc. 129), deny Plaintiffs' Motion for Summary Judgment (Doc. 127), and dismiss Plaintiffs' collective-action complaint.

---

[6] Plaintiffs cannot seriously contend, for example, that public accountability principles preclude public employers from offering employees paid holidays.

DATED at Montpelier, Vermont this 5th day of February, 2013.

        STATE OF VERMONT

        WILLIAM H. SORRELL
        ATTORNEY GENERAL

By:    /s/ Jonathan T. Rose
        Jonathan T. Rose
        Todd Daloz
        Assistant Attorneys General
        Office of the Attorney General
        109 State Street
        Montpelier, VT 05609-1001
        (802) 828-0392
        jrose@atg.state.vt.us

        Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of February, 2013, I electronically filed Defendants' Reply Memorandum in Further Support of their Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Adam P. Bergeron and Thomas H. Somers.

                STATE OF VERMONT

                WILLIAM H. SORRELL
                ATTORNEY GENERAL

By:    /s/ Jonathan T. Rose
         Jonathan T. Rose
         Todd Daloz
         Assistant Attorneys General
         Office of the Attorney General
         109 State Street
         Montpelier, VT 05609-1001
         (802) 828-0392
         jrose@atg.state.vt.us

         Counsel for Defendants