UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| SHEILA CONIFF, et al., individually and on behalf of themselves and all those similarly situated )<br><br>Plaintiffs, )<br><br>v. )<br><br>STATE OF VERMONT, et al., )<br><br>Defendants. ) | Docket No. 2:10-cv-32 |

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiffs, through their counsel, Bergeron Paradis & Fitzpatrick LLP, pursuant to L.R. 7(a)(5), hereby submit their Reply Memorandum in Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment:

A. **The State's Theory that it Compensates Plaintiffs on a Salary Basis By Providing Plaintiffs With Forty Hours of Work Each Week Instead of Guaranteeing Plaintiffs $455 of Pay Each Week Each is Flawed.**

The State's theory that because it "guarantees" Plaintiffs 40 hours of work each week, it has carried its burden to show that the Plaintiffs are salaried, turns the salary basis test on its head. Here it is undisputed that there is no "predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the …quantity of work performed. There is no predetermined amount of compensation. It is undisputed that an employee must work an hour to be paid an hour, thus Plaintiffs pay is inextricably intertwined with "variations in the …quantity of work performed." While there may be a predetermined work schedule, there is no predetermined amount of pay guaranteed to the

1

Plaintiffs irrespective of the hours worked. This is the threshold requirement of a salaried employee. *Martin v. Malcolm Pirnie,* 949 F.2d 611, 615-16 (2d Cir. 1991), *cert. denied,* 506 U.S. 905 (1992) ("in order to be considered salaried, an employee must be paid a specified amount each week, notwithstanding the number of hours he or she works). This requirement must be satisfied before moving on to any exceptions to the salary basis requirement.

In *Anani v. CVS RX Services, Inc,* 788 F.Supp.2d 55, 17 WH Cases 2d (BNA) 1679, 1686 (E.D.N.Y. 2011), the Court wrote: "However, as indicated in Bongat, although the evidence showing that Defendant calculated the Plaintiff's total compensation as a function of hours worked is not dispositive, it may nevertheless indicate that Plaintiff was paid on an 'hourly basis' if it is combined with evidence of improper deductions."

Plaintiffs' pay records prove the point. *See Whalen., Exhs. L-1 & L-2.* These records show how Plaintiffs' pay was subject to improper deductions on an hourly basis or a fraction thereof. Moreover, these records show the numerous times Plaintiffs were not paid $455 a week or $910 in a two week pay period precisely because of the hours worked.[1] While Defendants huff and puff that the hourly computations of pay alone do not prove an employee is hourly, surely when employees pay is tied to the number of hours worked the employees are hourly not salaried. The fact that the record is also awash in undisputed evidence that everything is hourly, the pay, the time records, the collective bargaining agreements, the pay stubs, is fatal to

---

[1] Defendants' so-called expert report of Brian Farrington, *Exh. 9, attached to Defendants' Statement of Undisputed Facts*, relies on an erroneous letter from Defendants' counsel in order to reach the legal conclusion that Plaintiffs' are salaried. Farrington writes: "Your letter, however, indicates that the exempt employees are guaranteed that they will be paid at least $1/26^{th}$ of their annual salary every other week." *Id., p. 11.* As Defendants acknowledged that is not true if an employee exhausts all leave and is absent for part of a day. *Stipulation, ¶ 5.* Moreover, the wage records attached to the Whelan Declaration also prove that none of the Plaintiffs are guaranteed $1/26^{th}$ of their annual pay every two week pay period. *Pls' SUF, Whalen Decl., Exh. L-1 & L-2.* Mr. Farrington's report, in addition to relying on a flawed, self-serving assertion from Defendants' counsel, offers an opinion on the ultimate legal issue to be determined by this Court. On that ground alone, it is inadmissible and should be disregarded. *See Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992)*( "This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion").

Defendants' contention. Moreover, the utter absence of any admissible evidence that there is a predetermined amount of compensation not subject to variation due to the number of hours worked simply gilds the lily. The attempt to find a salary *anywhere* in the record except in Defendants self-serving assertions is a futile game of "Where's Waldo." Because the Defendants utterly fail to carry their burden of proof as a preliminary matter to establish a "predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the …quantity of work performed". On this basis alone, Plaintiffs are entitled to summary judgment.

Defendants' mischaracterize the holding in *ACS v. Detroit Edison,* 444 F.3d 763, 768 (6th Cir. 2006) with the Orwellian contention that hourly employees are the same as salaried employees. *Defs' Opp. Mem. p. 5.* This is another journey with Defendants down the rabbit hole into the land of make believe. What *ACS* holds, and what the Defendants conveniently omit, is that if an employee is guaranteed 40 hours of pay irrespective of the number of hours worked, then he or she is salaried. This is what the State omits from its citation: "The Wage-Hour Administrator of the Labor Department has advised that hourly employees may be salaried if they are guaranteed a predetermined number of **paid hours**." *Id.,* at 768 (emphasis added). "Even if they do not work 40 hours in a week, Detroit Edison does not reduce their salary; it allows them to *report* hours in excess of the hours they *work* so that they input sufficient hours to generate their full predetermined amount each pay period." *Id.,* 767-68 (italics in original).

**B.     The Salary Basis Requirement Prohibits Reducing Employee Pay for Absences of Part of a Day for Personal Reasons or Due to Illness.**

Defendants' next contention is that because Plaintiffs pay is docked for absences of part of a day only when they run out of accrued leave and must leave work for personal reasons,

Defendants comply with the salary test.  This assertion flies in the face of the plain language of the regulations and the case law. The regulations plain words demonstrate that Defendants' argument is hollow:

> Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability.  Thus, if an employee is absent for two full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made for two full-day absences. **However, if an exempt employee is absent for one and a half day for personal reasons, the employer can deduct only for the one full-day absence.**

29 CFR  §541.602(b) (1) (emphasis added).

Similarly, in instances of absences for part of a day due to illness the regulations permit for only full day deductions and prohibit deductions for absences of part of a day.  *See* 29 CFR § 602(b)(2). As the Second Circuit declared in *Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2d Cir. 1983), "[a] salaried professional employee may not be docked pay for fractions of a day of work missed."

### C. Plaintiffs Are FLSA Non-Exempt Throughout the Relevant Time Period.

Defendants have the cheek to argue to this Court that they have *only* made 554 unlawful deductions for absences of part of a day from the Plaintiffs pursuant to unlawful and express "off payroll" sections of the collective bargaining agreements. *Def. Opp. Mem. p. 8, fn. 5.* Indeed, the undisputed evidence is that across all state employees this unlawful practice occurs "every pay period." *Walker Dep. Tr. 39, Exh. E.*  Accordingly, the Defendants are in violation of the salary basis test throughout the entire period of time covered by this lawsuit. *See* 29 CFR § 541.603(a) ("An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis.  An actual practice of making improper exemptions demonstrates that the employer did not intend to pay

4

employees on a salary basis."). Indeed, in *Martin v. Malcolm Pirnie,* 949 F.2d at 617, the employer made impermissible deductions from the pay of 24 of 400 individuals. The *Malcolm Pirnie* Court ruled that these deductions were sufficient to destroy the exemption for all of the employees.

As with any other FLSA exemption, the burden of proof is on the Defendants to prove that its pay system is rooted in "principles of public accountability" as defined in 29 C.F.R. § 541.710; *Spradling v. City of Tulsa,* 95 F.3d 1492, 1499 (10th Cir. 1996), *cert. denied,* 519 U.S. 1149 (1997); *accord, Demos v. City of Indianapolis,* 302 F.3d 698, 702-03 (7th Cir. 2002); *see also Ale v. TVA,* 269 F.3d 680, 691 n. 4 (6th Cir. 2001) ("defendant must establish through 'clear and affirmative evidence' that the employee meets every requirement of an exemption"); The Defendants rely upon sheer speculation, not admissible evidence. "At a minimum, the City must prove that its policy is consistent with the government's efforts to maintain a precise accounting of its employees' hours for reasons that extend beyond calculating an appropriate salary, such as avoiding ghost-payrolling problems." *Demos*, 302 F.3d 698, 702 (7th Cir. 2002). There is no such evidence here.

First, the labor contract provisions give the Defendants discretion to pay the Plaintiffs for the absence of part of a day with retroactive paid leave. *Stip. ¶2, Exh. 1, Non-Management CBA, Art. 34,¶1 (j) (1) & (2), p. 48; Stip. ¶2, Exh. 2, Supervisory CBA Art. 38, ¶1 (j) (1) & (2), p. 53; Stip. ¶2, Exh. 3, Corrections CBA, Art. 38, ¶1, (j) (1) & (2), p. 48; Stip. ¶2, Exh. 4, Judiciary CBA, Art. 25 ¶b, p. 65.* This kind of discretion to compensate employees for not working is fatal to Defendants' principles of public accountability defense. *57 Federal Register 37666 (Aug. 19, 1992).*

Second, Defendants submit two unsworn and unauthenticated pamphlets from 50-60 years ago and before collective bargaining[2] to somehow prove that these unlawful deductions from Plaintiffs pay fall under the "principles of public accountability" exemption. Even if the Court could consider this inadmissible material, nothing in the pamphlets demonstrate that employees during the relevant time period applicable to this suit, were or are paid in accordance with a pay system that complies with 29 CFR §541.710 as is the Defendants' burden.

Third, there is no evidence why Plaintiffs' pay is reduced for absences of part of a day in the labor contracts. Collective bargaining produced multiple forms of paid leave for a whole range of non-job related leaves such as civic leave, educational leave, military leave, jury leave, volunteer fire department leave and in some instances leave to perform union duties. [3] These are the precise forms of paid time off a payroll system that public accountability is designed to prohibit because employees are paid for their own benefit for not working. Defendants argue that the Department of Labor's Federal Register comments accompanying the Final Rule demonstrate that any type of accrued leave is consistent with "principles of public accountability." *Def. Opp. Mem. Pp. 13-14.* The regulation only permits accrued personal leave and sick leave, not a cafeteria style selection of paid leaves. *See* 29 C.F.R. § 541.710(a).

> As stated above, principles of public accountability prevent public employers from paying their employees for time not spent working. [8] For example, while a private employer could pay an employee who missed two days of work while serving as a juror, a public employer could not pay the employee in the same situation because principles of public accountability would prevent the employer for paying the employee for time not worked.

---

[2] The State Employee Labor Relations Act which requires bargaining between the State and a certified collective bargaining agent was not enacted into law until 1969. *See* Act No. 113; 3 V.S.A. §§901-1005. The requirement that employees are docked for absences of part of a day is included in the collective bargaining agreements between the State and the Vermont State Employees Association. There is no evidence that these provisions were included in the labor contracts because of "principles of public accountability."

[3] Defendants do not dispute these facts. *See Def's Response to Plaintiffs' Statement of Material Facts as to Which There is No Material Dispute, Paper # 132, No. 22, p. 8.*

6

*McCloskey v. Triborough Bridge & Tunnel Authority*, 903 F. Supp. 558, 566-67 (S.D. N.Y. 1995)(footnote omitted).

Fourth, numerous high ranking employees of the State can take as much leave as they care to without any reduction in pay even if they have no allotted leave or leave balances. This also proves that the state does not have a payroll system based upon principles of public accountability.

**D.     Defendants' Assertion that it has not Willfully Violated the Act and Has Proven it Acted in Good Faith and With Reasonable Grounds is so Much Gorilla Dust.**

Defendants contend that it has acted with good faith and reasonable grounds in exempting Plaintiffs under the salary test because "it has taken—and continues to take—meaningful steps to ensure compliance with the FLSA." *Def. Opp. Mem. p. 16*. Defendants then cite portions of its opening brief which prove no such thing. Instead, Defendants argument seems to be predicated on: (1) a report by Scott Cameron from 1985 that has not been entered into evidence; (2) the allegation that their payroll employees regularly test employee positions for compliance with the duties test; and (3) an analysis that was allegedly done in 1986 after *Garcia* citing to nothing in the record that would generate admissible evidence of any analysis.

Indeed, there is no analysis in the record, it is undisputed that the Defendants have done nothing since 1986 to determine whether it is in compliance with the salary test and testimony concerning Mr. Cameron's 1986 report is inadmissible under the best evidence rule because it is not produced and entered into evidence. *See* F.R.E. 1001; *see also Madden v. Omega Optical,* 165 Vt. 306, 311 (1996)(affidavit testimony concerning personnel policies is inadmissible without production of the documents). Moreover, there is no evidence of a contemporaneous study except Brian Farrington's, **yet Defendants knowingly and falsely advised Mr.**

**Farrington that employees were guaranteed 1/26 of their annual salary every two weeks.**

*See footnote 1, above.* This is the epitome of bad faith and unreasonable grounds, not to mention willfulness. *See also Pls' Mem. in Support of Sum. Jdgmt, pp. 17-20 and citations therein.*

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that Summary Judgment be entered in their favor and against Defendants and that Defendants Motion for Summary Judgment be Denied in its Entirety.

DATED AT Burlington, Vermont this 5th day of February, 2012.

By: /s/ *Thomas H. Somers, Esq*
Thomas H. Somers, Esq.
tsomers@ bpflegal.com
ATTORNEY FOR PLAINTIFFS
Bergeron Paradis & Fitzpatrick, LLP
27 Main Street
Burlington, VT  05401
802.863.1191

By: */s/ Adam P. Bergeron*
Adam P. Bergeron, Esq.
abergeron@bpflegal.com
Bergeron Paradis & Fitzpatrick, LLP
27 Main Street
Burlington, VT  05401
Tel. 802.863.1191
Fax. 802.863.5798

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February, 2013, I electronically filed Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Jonathan Rose, Esq. and Todd Daloz, Esq.

DATED at Burlington, Vermont this 5th day of February, 2013.

                                              BERGERON PARADIS & FITZPATRICK, LLP
                                              Attorneys for Plaintiffs


By:    */s/ Adam P. Bergeron*