UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SHEILA CONIFF, et al.,          :
                                :
            Plaintiffs,         :
                                :        Case No. 2:10-cv-32
        v.                      :
                                :
STATE OF VERMONT, et al.,       :
                                :
            Defendants.         :
                                :

<u>**Opinion and Order**</u>

Plaintiffs represent a class of 704 former and current employees of the State of Vermont.  Plaintiffs bring this collective action complaint against the State of Vermont, the State of Vermont Agency of Administration, and Jeb Spaulding, in his official capacity as the Secretary of the Agency of Administration (collectively hereinafter "the State"). Plaintiffs allege that the State willfully violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), by failing to pay Plaintiffs time and one-half their hourly rate for any time worked in excess of their forty hour workweek.  *See* 29 U.S.C. § 207(a)(1).  Plaintiffs seek declaratory and injunctive relief, liquidated damages for backpay overtime, costs, and attorney's fees under the FLSA.

There are four motions currently before the Court.  The State has filed a Motion to Dismiss for lack of subject matter

1

jurisdiction, or, in the alternative, for judgment on the
pleadings, based on an assertion of sovereign immunity.
Plaintiffs have filed a Motion for Partial Summary Judgment as
to sovereign immunity.  In addition, Plaintiffs and the State
filed cross Motions for Summary Judgment regarding whether
Plaintiffs satisfy the "salary basis" test under the FLSA.  For
the reasons stated below, the Court **GRANTS** the State's Motion to
Dismiss for lack of subject matter jurisdiction, and **DENIES**
Plaintiffs' Motion for Summary Judgment as to sovereign
immunity.  Because the Court finds that it lacks subject matter
jurisdiction to hear Plaintiffs' claims, the remaining Motions
for Summary Judgment are dismissed as moot. However, the Court
addresses the merits of the "salary basis" test and finds that
the State would also be entitled to Summary Judgment on this
issue.

**BACKGROUND**

**I.  Procedural History**

    This lawsuit was initially filed in Vermont Superior Court
on January 7, 2010.  The State removed the case to this Court on
February 8, 2010.  In its initial Motion to Dismiss, the State
did not raise a sovereign immunity defense.  Pls.' Mot. for
Partial Summ. J. as to Sovereign Immunity, ECF No. 123, at 2.
The Plaintiffs asserted in their Complaint and Opposition to the
Motion to Dismiss that the Vermont legislature had expressly

2

waived sovereign immunity against suits under the FLSA pursuant to Vt. Stat. Ann. tit. 21, § 384(b)(7), and the State did not deny this assertion. *Id.* After the Court denied the State's Motion to Dismiss, the State again did not claim sovereign immunity in its subsequent Answer, filed August 23, 2010. *Id.* The parties proceeded to commence the discovery process. *Id.*

On November 16, 2011, counsel met to discuss factual and legal issues regarding their summary judgment motions, which were then due February 16, 2012. Defs.' Mot. to Dismiss, Ex. A, ¶ 1, ECF No. 122-1. At this meeting, Plaintiffs' counsel again raised the possibility of a sovereign immunity defense, and the State's counsel represented that they were not asserting the defense and that it had been waived. *Id.* ¶ 2. This agreement was memorialized in a letter drafted by Plaintiffs' counsel. *See* Defs.' Mot. to Dismiss, Ex. 1, ECF No. 122-2. The letter indicated that the State's counsel had acknowledged that the sovereign immunity defense had been waived, and asked the State to respond to an interrogatory confirming that it was not asserting this defense. *Id.*

The State responded to Plaintiffs' Third Set of Interrogatories on March 19, 2012 as follows:

> 17: Does the State intend to rely upon the defense of sovereign immunity? If so, please state the legal and factual basis for this defense and produce all documents that support your defense and identify in the manner specified above all individuals who you believe have

> knowledge of such a defense. Please summarize what you
> believe these individuals know and can give as testimony to
> support that defense.
>
> **RESPONSE:** Defendants removed the claim to federal court.
> Accordingly, Defendants do not intend to assert 11th
> Amendment immunity. Defendants do not intend to assert they
> are otherwise immune from the FLSA in this action.

Defs.' Mot. to Dismiss, Ex. 2, ¶ 17, ECF No. 122-3.  On June 5,
2012, nearly three months after the initial response to the
interrogatory, and over two years after the initial commencement
of this lawsuit, the State amended its response to Interrogatory
17 to say that it intended to assert a state sovereign immunity
defense.  Defs.' Mot. to Dismiss, Ex. 3, ECF No. 122-4.  In its
amended response, the State declared that it was entitled to a
sovereign immunity defense for suits brought under the FLSA in
both state and federal court, and "accordingly, intends to
assert a sovereign immunity defense in [the] matter."  *Id.*  The
State subsequently moved to amend its Answer to the Second
Amended Complaint.  Defs.' Mot. to Amend their Answer to Pls.'
2d Am. Compl. ("Motion to Amend"), 2, ECF No. 104.  After
holding hearings on the Motion to Amend, the Court directed the
parties to file dispositive motions on the issue of sovereign
immunity by November 26, 2012, which they did.

On December 21, 2012, Plaintiffs and the State both
submitted cross Motions for Summary Judgment on the merits,
alleging that material facts are not in dispute with regard to

4

whether Plaintiffs are paid on a "salary basis" as defined by
the FLSA regulations.  Pls.' Mot. for Summ. J., ECF No. 127;
Defs.' Mot. for Summ. J., ECF No. 129.  Accordingly, they move
for judgment as a matter of law on this issue pursuant to Fed.
R. Civ. P. 56.  In addition, Plaintiffs allege that they are
entitled to liquidated damages because the State acted in bad
faith, and that they are entitled to a three-year statute of
limitations because the State willfully violated the FLSA.
Pls.' Mot. for Summ. J., 1–2.

## II.  VSEA Agreements

Plaintiffs are all represented by the Vermont State
Employees Association ("VSEA") for collective bargaining
purposes and their employment terms are governed by agreements
made between VSEA and the State ("VSEA Agreements").
Stipulation of Facts ("Fact Stip."), ¶ 1, ECF No. 125.
Plaintiffs are current and former members of the non-management,
supervisory, corrections, and judiciary bargaining units.  *Id*. ¶
2.  Under the VSEA Agreements, all permanent, full-time,
classified employees are paid a "Basic Weekly Salary."  Defs.'
Statement of Undisputed Material Facts in Support of Motion for
Summ. J. ("Defs.' Facts"), ¶ 7, ECF No. 129-2.  This salary is
computed using an hourly pay rate based on a forty hour
workweek.  Pls.' Statement of Material Facts as to Which there
is no Genuine Dispute ("Pls.' Facts"), ¶ 5, ECF No. 127-1;

Defs.' Facts ¶¶ 6-7.  Thus, Plaintiffs' paychecks express their salary computed as an hourly rate.  Defs.' Facts ¶ 7.  All State employees—including high level employees whose salary is set by statute, such as the Governor—receive a paycheck expressing their salary computed at an hourly rate.  *Id.* ¶ 19.  The State also requires employees to track their hours and maintains accounting records of hours worked and leave taken by nearly all of its employees.  *Id.* ¶ 17.  Under the VSEA Agreements, all Plaintiffs receive straight overtime pay for hours worked in excess of forty hours per week.  Fact Stip. ¶¶ 3-4.

The State offers all Plaintiffs a minimum of forty hours of work each workweek.  Fact Stip. ¶ 3.  The State does not send employees home without pay when there is insufficient work available and does not reduce the basic weekly salary so long as employees are "ready, able, and willing to work."  Defs.' Facts ¶¶ 8-9.  If the State must close a facility or reduce its workforce during a particular time period, employees are still paid for forty hours of work as long as work is not missed for reasons occasioned by the employee.  *Id.* ¶ 10.  Plaintiffs accrue paid leave pursuant to the VSEA agreements and are expected to work their full schedule each week or use appropriate leave.  Fact Stip. ¶ 4.  If an employee needs to

miss work for personal reasons and lacks accrued leave[1] to cover the absence, the State will reduce the employee's pay by the number of hours that the employee failed to work during the day ("partial day deductions"). *Id.* All absences that result in a partial day deduction are occasioned by the employee, and never by the State. Defs.' Facts ¶ 16. From January 1, 2007 through March 2012, a period covering approximately 90,000 pay periods across the Plaintiff Class, the State made approximately 554 partial day deductions from members of the Plaintiff Class. Fact Stip. ¶ 5; Defs.' Facts ¶ 15; Pls.' Facts ¶ 7.

**DISCUSSION**

**I. Legal Standard**

The State has filed a Motion to Dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) "may be raised by a party, or by a court on its own initiative, at any stage of the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the

---

[1] It is worth noting that the VSEA Agreements have very generous leave provisions and that Plaintiffs rarely exceed their accrued leave. For example, counting annual leave, sick leave, personal leave, and paid holidays, Lead Plaintiff Sheila Coniff receives 47 days of paid leave. This comes out to over nine weeks of paid leave. Coniff has never exceeded her accrued leave and has never received a partial day deduction. Only after exceeding this leave for her own reasons would a State employee receive a partial day deduction. Pls.' Mot. for Summ. J., Ex. B, 26–27, ECF 127-3.

court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

The parties have also moved for summary judgment. Summary judgment is proper where there is "no genuine dispute as to any material fact" that necessitates a trial, and therefore the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden is on the moving party to demonstrate the absence of a genuine issue of material fact, and in resolving such a motion, the Court must "view the facts in the light most favorable to the non-moving party . . . and resolve all factual ambiguities in their favor." *Havey v. Homebound Mortgage,* 547 F.3d 158, 163 (2d Cir. 2008).

## II. Sovereign Immunity

The State maintains that this suit should be dismissed because Plaintiffs' claims against the State under the FLSA are barred by the doctrine of sovereign immunity. In response, Plaintiffs argue that the State has waived its sovereign immunity in this case. The Court finds that the State has not waived its sovereign immunity against claims brought under the FLSA, and therefore grants the State's Motion to Dismiss on these grounds.

Under the Eleventh Amendment, states are immune from claims brought by private individuals in federal courts. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). The Supreme

8

Court has also recognized a sovereign immunity distinct from
Eleventh Amendment immunity that applies against *all* suits,
whether in state or federal court.  *See Alden v. Maine*, 527 U.S.
706, 713 (1999) ("States' immunity from suit is a fundamental
aspect of the sovereignty which the States enjoyed before the
ratification of the Constitution[.]").  Thus, there are really
two discrete types of sovereign immunity: Eleventh Amendment
immunity from suit in federal court, and a general sovereign
immunity against all suits.  *See Lombardo v. Pa. Dep't of Public
Welfare*, 540 F.3d 190, 194 (3d Cir. 2008)(distinguishing between
immunity from suit in a federal forum, and immunity from
liability generally); *Alden*, 527 U.S. at 730 (discussing the
distinction between Eleventh Amendment immunity and underlying
sovereign immunity); *Jacobs v. State Teachers' Ret. Sys. of Vt.*,
816 A.2d 517, 521 (Vt. 2002)(explaining that the Eleventh
Amendment represents a specific type of sovereign immunity from
suits in federal court).

Neither type of immunity is absolute.  States may waive
their sovereign immunity, *Sossamon v. Texas*, 131 S.Ct. 1651,
1658 (2011) ("A State . . . may choose to waive its immunity in
federal court at its pleasure."), and Congress may abrogate
state sovereign immunity under its Fourteenth Amendment powers,
*Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (explaining that
the Eleventh Amendment is limited by the Fourteenth Amendment).

9

In *Alden*, the Supreme Court found that Congress could not subject nonconsenting States to private suits for damages under the FLSA.  527 U.S. at 754.  Therefore, for Plaintiff's claims under the FLSA to proceed in this Court, the State must have waived its sovereign immunity to permit private FLSA suits against the State of Vermont.

In the Eleventh Amendment context, federal courts have found immunity waivers both by express consent to suit, *Sossamon*, 131 S.Ct. at 1657, and implied consent by "affirmative conduct during litigation," *Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.43d 336, 340 (1st Cir. 2011).  However, waivers of general sovereign immunity are determined by reference to state law, and Vermont courts have thus far only recognized an express waiver of such sovereign immunity.  *See Jacobs*, 816 A.2d at 526. Despite Vermont's express waiver requirement, Plaintiffs present three challenges to the State's assertion of sovereign immunity. First, they argue that the Vermont legislature expressly waived its sovereign immunity against private FLSA suits by statute. In the alternative, they argue that the State's removal of this case from state court into federal court constitutes "affirmative litigation conduct" sufficient to constitute an implied waiver.  Finally, they argue that State counsel's representations during the litigation process, including answers to interrogatories during discovery and statements to

10

Plaintiffs' counsel, further establish the "affirmative conduct" necessary to effect an implied waiver.  The Court will address these three arguments in further detail below.

### A. *Express Waiver*

For the State to be amenable to private suit under the FLSA, the State of Vermont must consent to such suits.  This consent is determined by reference to state law.  *See Alden*, 527 U.S. at 757-58 (looking to Maine law to determine whether Maine had waived sovereign immunity against claims under the FLSA). Thus, to determine whether the State has waived sovereign immunity here, the Court must look to Vermont law.

In Vermont, sovereign immunity must be waived "expressly by statute." *Jacobs*, 816 A.2d at 521; *LaShay v. Dep't of Social and Rehab. Serv.'s*, 625 A.2d 224, 228-29 (Vt. 1993).  Plaintiffs assert that the Vermont legislature has expressly waived sovereign immunity under Vt. Stat. Ann. tit. 21, § 384(b)(7), a subsection within the exemptions from the Vermont state overtime laws that reads:

> (b) . . . an employer shall not pay an employee less than one and one-half times the regular wage rate for any work done by the employee in excess of 40 hours during a workweek. However, this subsection shall not apply to:
>
> > (7) State employees who are covered by the U.S. Federal Fair Labor Standards Act.

Vt. Stat. Ann. tit. 21, § 384.  Plaintiffs contend that this reference to the FLSA constitutes an express waiver of state

sovereign immunity.  In support, they posit that the use of the word "cover" indicates that the class of employees is afforded the "rights and remedies under a particular law or agreement." Pls.' Mot. for Partial Summ. J. as to Sovereign Immunity, ECF 123, at 7.  However, express waivers of sovereign immunity under Vermont law are consistently far more direct than the reference in § 384(b)(7) and include specific references to civil remedies and liability.  *See, e.g.*, Vt. Stat. Ann. tit. 12, § 5601(a) (stating that State "shall be liable" for injuries caused by negligence of state employees); Vt. Stat. Ann. tit. 21, § 395 (expressly providing for a "civil action" to recover unpaid wages); Vt. Stat. Ann. tit. 21, § 474(b) (allowing "civil action" for violation of Parental and Family Leave Act); Vt. Stat. Ann. tit. 21, § 495b(b) (allowing "action in superior court" for persons aggrieved by violations of Fair Employment Practices Act).  In light of these direct, plainly "express" waivers, the mere reference to the FLSA under section 384(b)(7) does not appear to meet the Vermont standard for an "express" waiver.

Plaintiffs also overstate the affirmative nature of § 384(b)(7) when they refer to the provision as a "mandate" that state employees be covered by the FLSA.  *See* Pls.' Mot. for Partial Summ. J. as to Sovereign Immunity, 11.  When viewed in full, § 384(b)(7) seems to *contemplate* that some state employees

12

will be covered by the FLSA but cannot fairly be read as a mandate that all state employees be covered. *See* Vt. Stat. Ann. tit. 21, § 384(b) ("[T]his subsection shall not apply to . . . state employees who are covered by the U.S. Federal Fair Labor Standards Act.").[2]

Thus, when Vermont's express waiver standard is considered alongside the language of § 384(b)(7), the mere reference to FLSA coverage does not effect a waiver of sovereign immunity. *See Alden*, 527 U.S. at 758 (refusing to find a waiver of sovereign immunity despite Maine's policy of compliance with the FLSA); *Williams v. Oklahoma Dep't of Human Services*, 122 Fed. Appx. 958, 959 (10th Cir. 2004) (holding that Oklahoma state law stating a policy of "comply[ing] fully with the provisions of the Fair Labor Standards Act" did not constitute waiver of sovereign immunity). The FLSA can cover state employees while also allowing state employers to retain their sovereign immunity defense. *See Alden*, 527 U.S. at 759 (finding that Congress may prescribe substantive rules under the FLSA that states must follow, but refusing to find a waiver of sovereign immunity). Moreover, sovereign immunity does not render FLSA coverage of public employers meaningless. The FLSA has provisions beyond

---

[2] In fact, as Defendants point out, not all State employees are actually covered by the FLSA. Some state employees, including certain elected officials and their staffs, employees of legislative bodies, and "occasional" government employees, are not covered. 29 C.F.R. §§ 553.11, 553.12, 553.30.

the ability of individuals to bring private suit against employers, such as federal enforcement against the states, which would not require a waiver or implicate state sovereign immunity. *See id.* (distinguishing between a suit by the United States and a suit by employees).

In addition, the legislative history of § 384(b)(7) cautions against finding an express waiver of sovereign immunity in the statute. When section 384(b)(7) was passed in 1993, before *Seminole Tribe* and *Alden* had been decided by the Supreme Court, it appeared as if Congress had abrogated state sovereign immunity in passing the FLSA. Therefore, it was generally believed that sovereign immunity no longer existed as a defense to suits under the FLSA. *See Mueller v. Thompson*, 133 F.3d 1063, 1066 (7th Cir. 1998) (finding it "unlikely that an intention to waive [sovereign immunity defense to FLSA] suits will be found on the basis of state enactments prior to *Seminole Tribe*"). The State makes the compelling point that "it is simply nonsensical" to interpret § 384(b)(7) as an express statement of the legislature's intent to waive a right that it did not believe *existed* at the time § 384(b)(7) was enacted. Defs.' Opp. to Mot. for Partial Summ. J. as to Sovereign Immunity, 6, ECF No. 128. Subsequent enactments of the same statutory language post-*Alden* do not alter this assessment. Because the language could not have initially indicated a waiver

14

of sovereign immunity, the nearly identical language that has
been enacted since *Alden* should not be read any differently.

Thus, the examples of Vermont statutes containing express
waivers of state sovereign immunity and the legislative history
of the statute indicate that there is no express waiver of
sovereign immunity against private actions under the FLSA in
§384(b)(7).[3]

### B. Waiver by Removal

Plaintiffs argue in the alternative that the State waived
its sovereign immunity defense by removing Plaintiffs' FLSA
claims to federal court and consenting to this Court's
jurisdiction.  Plaintiffs rely on the Supreme Court's decision

---

[3] The State *has* waived its sovereign immunity against state claims to
recover unpaid wages under Vt. Stat. Ann. tit. 21, § 395:

> If any employee is paid by an employer less than the applicable
> wage rate to which the employee is entitled under this
> subchapter, the employee shall recover, in a civil action, twice
> the amount of the minimum wage less any amount actually paid by
> the employer, together with costs and reasonable attorney fees,
> and any agreement between an employer and an employee to work for
> less than the wage rates is no defense to the action.

Vt. Stat. Ann. tit. 21, § 395.  The State has acknowledged that this
constitutes an express waiver of sovereign immunity.  *See* Defs.' Opp.
to Pls.' Mot. for Partial Summ. J. as to Sovereign Immunity, at 5 n.6.
The "subchapter" referred to within § 395 includes the state overtime
provisions under § 384.  Because § 384 indicates that state employee
overtime compensation is to be determined by the FLSA, the waiver of
sovereign immunity under § 395 might allow Plaintiffs to bring a claim
under state law to recover their overtime compensation applying the
FLSA standards.  However, Plaintiffs did not bring their claim under
state law; they brought their claims under the FLSA.  Because the §
395 waiver does not extend to an FLSA action under federal law, the
waiver of sovereign immunity under § 395 is inapplicable to
Plaintiffs' claims before this Court.

in *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) and its
subsequent progeny in the circuit courts in support of this
assertion.  In *Lapides*, the Court held that a state may not
"achieve [an] unfair tactical advantage" by asserting Eleventh
Amendment immunity after removing a state claim to federal
court.  *Id.* at 621.  However, *Lapides* does not provide support
for Plaintiffs' position, as the *Lapides* Court specifically
limited its holding to the "context of state-law claims where
the State has waived immunity from state-court proceedings."
*Id.* at 617.  In *Lapides*, private plaintiffs brought a suit
against the State of Georgia in Georgia state court under a
state law that *expressly* waived Georgia's immunity to damages in
state court.  *Id.* at 616.  The State of Georgia proceeded to
remove the case to federal court, where it attempted to raise a
sovereign immunity defense under the Eleventh Amendment.  *Id.*
Unlike in *Lapides*, the State of Vermont's claim to a sovereign
immunity defense against suits under the FLSA has equal force in
the federal and state courts.  Therefore, Defendants gain no
"tactical advantage" by removing the case to federal court, and
the reasoning behind the Court's decision in *Lapides* does not
apply.

    This reading of *Lapides* has been adopted in subsequent
circuit court decisions that have interpreted the case.
Numerous circuit courts have found that removal does not

16

constitute a waiver of sovereign immunity in cases where the
sovereign was immune in both state and federal court, as is the
situation here.  *See Bergemann*, 665 F.3d at 341; *Stewart v.
North Carolina*, 393 F.3d 484, 490 (4th Cir. 2005); *Watters v.
Wash. Metro. Area Transit Auth.*, 295 F.3d 36, 42 n.13 (D.C. Cir.
2002); *Lombardo v. Pa. Dep't of Public Welfare*, 540 F.3d 190,
198–99 (3d Cir. 2008).  The First Circuit's decision in
*Bergemann* is especially apposite, as the facts are similar to
those presented in this case.  In *Bergemann*, state environmental
police officers brought an action against the State of Rhode
Island, alleging violations of the FLSA and state law.  665 F.3d
at 339.  The state removed the action and the First Circuit
found that removal did not constitute a waiver of sovereign
immunity.  *Id.* at 343.  The First Circuit distinguished *Lapides*
on the grounds that removal in *Lapides* was a means to avoid
liability, as the defendants were immune in federal court but
not in state court.  *Id.* at 341.  In *Bergemann*, by contrast, the
state of Rhode Island was immune from FLSA claims in both
courts, so there was no benefit obtained by removal.  *Id.* at
342.  The facts here analogize easily to those in *Bergemann*;
like in *Bergemann*, the State of Vermont has sovereign immunity
from claims under the FLSA in both state and federal court.
Thus, the State's removal to federal court waives the State's
immunity from suit in a federal forum, but does not affect

sovereign immunity from liability, because "while voluntary removal waives immunity from suit in a federal forum, the removing state retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability." *Lombardo*, 540 F.3d at 198; *see also Stewart*, 393 F.3d at 490 (finding that states may establish immunity distinct from Eleventh Amendment immunity).  Thus, while the State of Vermont has waived its immunity from suit in a federal forum by removing the case, it still retains the same sovereign immunity defense against private suits under the FLSA that it could have raised in state court.

A few circuits have chosen to read *Lapides* more broadly. *See Board of Reg. of the Univ. of Wis. Sys. v. Phoenix*, 653 F.3d 448 (7th Cir. 2011) (holding sovereign immunity waived where state filed a claim in federal court under broad reading of *Lapides*); *Embury v. King*, 361 F.3d 562 (9th Cir. 2004) (applying *Lapides* to federal claims); *Estes v. Dep't of Trans*, 302 F.3d 1200 (10th Cir. 2002) (same).  In these decisions, the circuit courts focused on language in *Lapides* implying that while the *Lapides* decision was narrowly focused, its rationale was more expansive:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity,

> thereby denying that the "Judicial power of the United
> States" extends to the case at hand. And a
> Constitution that permitted States to follow their
> litigation interests by freely asserting both claims in the
> same case could generate seriously unfair results.

*Phoenix*, 653 F.3d at 460 (quoting *Lapides*, 535 U.S. at 619);

*Estes*, 302 F.3d at 1206 (same); *see also Embury*, 361 F.3d at 565

(citing similar language from *Lapides*).  Based on this

reasoning, the Seventh, Ninth, and Tenth Circuits all applied

*Lapides* to find an implied waiver of Eleventh Amendment

sovereign immunity where states removed *federal* claims as well

as state claims.  For example, the Seventh Circuit in *Pheonix*

read this language to mean that states should *never* reap the

"advantages" of forum selection while also using sovereign

immunity to avoid its disadvantages.  *See* 653 F.3d at 467.

Despite their broad reading of the *Lapides* decision,

*Phoenix*, *Embury*, and *Estes* all fail to support Plaintiffs'

argument.  While they do apply *Lapides* to removal of federal

claims, they all clearly involve waiver of *Eleventh Amendment*

immunity, not general sovereign immunity.  *See Estes*, 302 F.3d

at 1206 (finding that a State waives its Eleventh Amendment

immunity against "suit *in a federal court* when it removes a case

from state court") (emphasis added); *Embury*, 361 F.3d at 564,

566 (finding that State of California waived its Eleventh

Amendment immunity from suit in federal court by removal;

"removal waives Eleventh Amendment immunity"); *Phoenix*, 653 F.3d

19

at 457–58 (discussing whether state had waived Eleventh Amendment immunity by invoking jurisdiction of the federal courts).  Thus, their reasoning is irrelevant to the Court's analysis here.

In any case, the *Bergemann* court successfully elucidates why *Lapides* should be limited to Eleventh Amendment immunity, explaining that if a state waived its sovereign immunity whenever it removed a case to federal court,

> a state with a colorable immunity defense to a federal claim brought against it in its own courts would face a Morton's Fork: remove the federal claim to federal court and waive immunity or litigate the federal claim in state court regardless of its federal nature.  Either way, the state would be compelled to relinquish a right: either its right to assert immunity from suit or its 'right to a federal forum.'

*Bergemann*, 665 F.3d at 342 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005)).  In this case, if the Court were to find the State's removal constituted a waiver of sovereign immunity, it would force the State to make this very choice: forgo a federal forum, or forgo their immunity defense. Therefore, Plaintiffs' argument that the State has waived its state sovereign immunity defense by removal (as distinct from their Eleventh Amendment immunity from suit in federal court) is unavailing.

### C. Waiver by Representations During Litigation

Finally, Plaintiffs argue that the State waived its sovereign immunity through its representations to Plaintiffs during litigation proceedings, such as its answer to Interrogatory #17 and multiple statements made by State counsel indicating the State's lack of intent to pursue a sovereign immunity defense. Essentially, Plaintiffs argue that the Court should find a waiver on equitable grounds because it is unfair to Plaintiffs to allow the State to assert its immunity defense so late in the litigation process. This argument lacks legal bases.

Parties may change their legal position during discovery, and in fact are required to do so when there is an error or omission. *See* F.R.C.P. 26(e) (requiring parties to supplement and amend discovery responses). Thus, the State's initial position as to Interrogatory 17 does not equate a waiver of sovereign immunity. Furthermore, sovereign immunity may be raised at any point in the proceeding: on appeal, in summary judgment motions, even by the Court *sua sponte*. *See McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001). The State's failure to assert the sovereign immunity defense before its summary judgment motions cannot constitute a waiver; otherwise, it would be impossible for sovereign immunity to be raised on appeal.[4]

---

[4] Plaintiffs cite Justice Kennedy's concurrence in *Wis. Dep't of Corrections v. Schacht* to argue against such belated assertions of

21

Therefore, Defendants' delay in asserting this defense cannot constitute a waiver.

Plaintiffs also argue that *Lapides* suggests that any "litigation act" (separate from removal) may constitute a waiver of sovereign immunity. The cases Plaintiffs cite to support this position all relate to actions wherein a State attempted to assert Eleventh Amendment immunity after voluntarily becoming a party to an action in federal court. *See Clark v. Barnard*, 108 U.S. 436, 447 (1883) (finding State waived Eleventh Amendment immunity when it voluntarily intervened in federal case); *Gunter v. Atlantic C.L.R. Co.*, 200 U.S. 273 (1906) (finding state sovereign waived Eleventh Amendment immunity by voluntarily becoming a party); *Porto Rico v. Ramos*, 232 U.S. 627 (1914) (same). This case, by contrast, turns on the State's assertion of its general sovereign immunity from all suits under the FLSA, not just those brought in federal court. Plaintiffs in their own memoranda have acknowledged that a waiver of this type of general sovereign immunity turns on state, not federal, law.

---

sovereign immunity, noting that Justice Kennedy seems to support construing sovereign immunity as a personal jurisdiction issue rather than a subject matter jurisdiction issue. 524 U.S. 381, 394 (1998) (Kennedy, J., concurring). However, Justice Kennedy's concurrence is focused on Eleventh Amendment immunity (and, indeed, seems rooted in the unfairness of allowing Eleventh Amendment immunity after voluntary removal, a concern that the Court later addressed in *Lapides*). *See id.* Furthermore, while the treatment of sovereign immunity as a personal jurisdiction issue may have some logic, controlling law continues to permit sovereign immunity to be raised at any point in the proceedings. *See id.* (acknowledging that sovereign immunity "may be asserted for the first time on appeal").

Thus, any waiver by conduct must be determined by reference to
Vermont law. *See* Pls.' Mot. for Partial Summ. J. as to
Sovereign Immunity and Incorp'd Memo of Law, ECF 123, at 5
(noting that the federal standard for waiving sovereign immunity
is "inapplicable" to this case).

Because it is not express, any "waiver by conduct" argument
must rest on a theory of implied waiver.  As noted above,
Vermont courts have only recognized express statutory waivers of
sovereign immunity, and while implied waivers have not been
squarely addressed, there has been some indication that they
would be rejected by the Vermont Supreme Court.  *See Jacobs*, 816
A.2d at 526 n* ("We are not deciding that we will accept the
doctrine of implied waiver of sovereign immunity in view of our
decisions that sovereign immunity must be 'expressly waived by
statute.'") (quoting *LaShay*, 625 A.2d, at 228).  Thus, an
express waiver of sovereign immunity is still required, and the
State's litigation conduct does not satisfy this condition.
Because the State has not waived its sovereign immunity against
suits brought under the FLSA, it retains its sovereign immunity
in this case.  As a result, this Court does not have
jurisdiction over Plaintiffs' claims and grants the State's
Motion to Dismiss for lack of subject matter jurisdiction
pursuant to Fed. R. Civ. P. 12(b)(1).

**III. "Salary Basis" Test Under the Fair Labor Standards Act**

Even if the State had waived its sovereign immunity as to suits under the FLSA, the State would still prevail on their Motion for Summary Judgment regarding the "salary basis" test. On the merits, Plaintiffs argue that the State has violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, by not paying their employees at least one and one-half times their regular wage for hours worked in excess of forty hours per week. The FLSA does require that employees covered by the statute receive time and one-half overtime compensation. *Id.* § 207(a)(1). However, certain employees, including those engaged in "a bona fide executive, administrative or professional capacity," are exempt from the overtime wage requirement under the FLSA. *Id.* § 213(a)(1). The Act does not define these terms and instead directs the Secretary of Labor to do so by regulation. 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541. The Secretary of Labor's regulations dictate that employees qualify for the exemption under § 213(a)(1) if they are paid on a "salary basis." 29 C.F.R. §§ 541.100(b); 541.200(a)(1); 541.300(a)(1). In addition, employees' "primary duties" must be exempt work (i.e., executive, administrative, or professional). *Id.* § 541.700.

In their Motion for Summary Judgment, Plaintiffs argue that the State cannot prove that Plaintiffs are compensated on a "salary basis" as defined by the Secretary of Labor's

24

regulations, and therefore they are subject to the FLSA's overtime wage provisions.  In their cross Motion, the State contends that Plaintiffs indisputably fall within the "salary basis" exemption and that their payment of a straight-time overtime wage is lawful under the FLSA.  Because the FLSA is a remedial act, its exemptions must be "narrowly construed," and the burden is on the State to establish that Plaintiffs are exempt from the Act's requirements.  *Havey*, 547 F.3d at 163.  The Court finds that the State has met this burden.

> ### a.  *"Salary Basis" Test*

The term "salary basis" is defined under the Secretary of Labor's regulations as when an employee "regularly receives each pay period on a weekly or less frequent basis, a predetermined amount . . . not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).  The regulations further provide that an employee is not paid on a salary basis if "deductions from the employee's predetermined compensation are made for absences occasioned by the employer."  *Id.*  Deductions may not be made whenever "the employee is ready, willing and able to work."  *Id.*

The regulations also provide for several exceptions allowing deductions from pay.  *See id.* § 541.602(b).  Notably, there is a special exception for public employees that are paid according to a "policy or practice established pursuant to

principles of public accountability," which allows public
employers to deduct for partial day absences when accrued leave
has been exhausted.  *Id.* § 541.5d(a).  To show that Plaintiffs
fall under the salary basis test, the State must first establish
that Plaintiffs satisfy the requirements of the salary test
under § 541.602, ignoring the deductions that may be made by
public sector employers.  *See Spradling v. City of Tulsa, Okla.*,
95 F.3d 1492, 1500 (10th Cir. 1996) (finding that the public
sector exception only applies if employees "otherwise satisf[y]
the requirements of the salary test").  The State must then show
that it is entitled to the exception under § 541.5d.

     The facts not in dispute indicate that Plaintiffs are paid
on a "salary basis" as defined under the regulations.  This
"salary basis" determination turns on whether employees receive
a "predetermined amount . . . not subject to reduction because
of variations in the quality or quantity of work performed" or
for "absences occasioned by the employer."  29 C.F.R. §
541.602(a).  The Second Circuit has explained that this
definition requires that an employee's compensation be "fixed
and determined" prior to the time period being compensated.
*Havey*, 547 F.3d at 164.  Under the VSEA Agreements, the State
offers Plaintiffs a forty hour workweek, and their "basic weekly
salary" is determined by multiplying an hourly rate by forty.
Fact Stip. ¶ 3.  This predetermined amount is not reduced for

26

"absences occasioned by" the State, and the State does not send employees home or reduce pay where there is insufficient work available. *Id.* Thus, notwithstanding reductions expressly permitted under the regulations, the State guarantees Plaintiffs a predetermined amount of compensation. *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997) ("[T]he Labor Department has advised that hourly employees may be salaried if they are guaranteed a predetermined number of paid hours." (citing U.S. Dep't of Labor, Wage and Hour Div., Opinion Letter (Sept. 22, 1965))).

Plaintiffs argue that because their salaries are determined using an hourly rate, they are disqualified from falling under the definition of "salaried." *See* Pls.' Mot. for Summ. J. at 11. However, the regulations do not proscribe the use of an hourly rate to calculate pay for exempt salaried employees, and the case law confirms this. *See ACS v. Detroit Edison Co.*, 444 F.3d 763, 768–69 (6th Cir. 2006) (finding salary test satisfied even where defendants used an hourly payroll system based on guaranteed forty-hour work week); *Douglas*, 113 F.3d at 71 (same); *Anani v. CVS Rx Servs., Inc.*, 788 F.Supp. 2d 55, 64 (E.D.N.Y. 2011) (finding that payroll system that calculated compensation based on hourly rate was permissible under salary basis test); *Wright v. Aargo Sec. Servs., Inc.*, No. 99-CV-9115, 2011 WL 91705 at *7 (S.D.N.Y. Feb 2, 2001) (same). The fact

27

that Plaintiffs' salaries are calculated by reference to an
hourly rate does not prevent Plaintiffs from meeting the
definition of "salaried" under the regulations.  Indeed, as the
State points out, Plaintiffs' proposed standard would mean that
*no* employees in the State would fall under the definition of
salaried, as all state employees receive a paycheck reflecting
their compensation computed as an hourly rate—even the Governor.
Defs.' Facts ¶ 19 (citing Schwartz Decl. ¶ 6).

The fact that the State tracks and records Plaintiffs hours
does not change this analysis.  *See Adams v. Niagara Mohawk
Power Corp.*, No. 02-CV-1353, 2008 WL 4527694 at *6 (N.D.N.Y.
Sept. 30, 2008) ("The fact that employer keeps record of its
employee's hours, by itself, has no bearing on that employee's
status as a salaried worker.").  The regulations expressly allow
the payment of overtime compensation based on hours worked
beyond the regular workweek; therefore, it would not make sense
to prohibit employers from tracking hours or calculating a
salary based on an hourly rate, as this would be a necessary
practice in order to determine overtime compensation.  The
Department of Labor has confirmed this.  *See* DOL Wage & Hour
Div. Opinion Letter, 2003 WL 23374601 (July 9, 2003) (stating
that "the tracking or accounting of actual hours worked by
exempt employees does not violate the salary basis
requirements").

Plaintiffs cite two cases to support their proposition that hourly tracking violates the salary test requirement. *See Reich v. Waldbaum, Inc.*, 52 F.3d 35 (2d Cir. 1995); *Vonbrethorst v. Washington Cnty., Idaho*, No. CV06-0351-SEJL, 2008 WL 2785549 (D. Idaho July 15, 2008)). In *Reich*, the Second Circuit determined that employees were not compensated on a salary basis where they were "compensated on an hourly basis [and required to] punch a time clock to provide the data from which to compute their pay." *Reich*, 52 F.3d at 40; *see also Vonbrethorst*, 2008 WL 2785549 at *7 (finding that employees' pay was "pure hourly calculation"). However, this reasoning is inapplicable here, because in both cases, the employees were compensated entirely on an hourly basis, and their weekly compensation varied according to the number of hours they worked. *Reich*, 52 F.3d at 40; *Vonbrethorst*, 2008 WL 2785549 at *7. By contrast, Plaintiffs are compensated based on a predetermined 40-hour workweek. Their pay is only reduced when they exceed their accrued leave, and these reductions are expressly permitted under the regulations.

Plaintiffs insist that because their pay is deducted when they exceed their leave, they are "hourly" employees. However, this argument is a confused conflation of the two elements of the salary test analysis (the "salary basis" test and the permitted deductions). Plaintiffs argue that they are paid per

29

hour because their pay is reduced when they exceed their accrued
leave and miss additional time. In support, Plaintiffs quote
several depositions stating that employees are paid only for the
hours they work. *See* Pls.' Mot. for Summ. J. at 8–10. However,
these quotes are selective—they only refer to situations wherein
employees have exceeded their paid leave and the State has
deducted pay for additional absences. These instances speak to
whether the State is permitted to take full and partial day
deductions, not to whether employees qualify as "salaried" under
the regulations. Instead, the question as to whether employees
are "otherwise salaried" must be determined separately from the
deductions. *See Reich*, 52 F.3d at 41 (finding deduction
analysis to be relevant only where "an employee . . . would
*otherwise* be deemed to be compensated for his services on a
salary basis" (emphasis in original)). Ignoring the deductions,
the State has shown that Plaintiffs meet the definition of
salaried under the regulations because they receive a
predetermined amount of compensation each week based on a
guaranteed number of hours. Therefore, the State has met its
burden of showing that Plaintiffs' compensation satisfies the
salary basis test.[5]

---

[5] Plaintiffs additionally argue that they do not meet the requirements
for the salary basis exemption because members of the Plaintiff class
have occasionally been paid less than $455 per week (the minimum
weekly salary required by the FLSA regulations). *See* Pls.' Mot. for
Summ. J. at 11 (citing Decl. of Katherine Whalen, Ex. L and L-2

### b. Public Accountability Exception

In addition to showing that Plaintiffs are "otherwise
salaried," the State must show that it is allowed to deduct for
full and partial day absences.  The regulations permit
deductions for voluntary absences in certain circumstances
relevant to this case.  Employers are permitted to make
deductions for (1) full day absences due to "personal reasons,
other than sickness or disability," 29 C.F.R. § 541.602(b)(1);
(2) full day absences due to "sickness or disability" where
employee has exhausted or has not accrued sufficient paid leave
under a "bona fide" leave policy, 29 C.F.R. § 541.602(b)(2); and
(3) absences of less than a day, so long as the deductions are
made pursuant to a policy based on "principles of public
accountability," 29 C.F.R. § 541.710.  The State is plainly
allowed to deduct pay for full day absences for personal or sick
days under 29 C.F.R. § 541.602(b).  However, the State has also
made partial day deductions from Plaintiffs' pay.  Fact Stip. ¶
5 (stipulating that the State has reduced pay for partial day

---

(spreadsheet showing instances of Plaintiffs being paid less than $910
per two-week period)).  However, Plaintiffs are guaranteed a minimum
weekly salary of $784 per week (based on a 40-hour work week) under
the VSEA Agreements.  Defs.' Mot. for Summ. J. at 3.  The only way
this salary would drop below $455 per week would be in the case of
deductions for full and partial day absences.  Thus, this argument
also turns on whether the deductions are authorized, and not on the
salary basis analysis.

absences approximately 554 times since January 2007).[6]  The
outstanding question is whether the State is allowed to make
such deductions for partial day absences.

Generally, private employers are prohibited from making
deductions for partial day absences.  *See* 29 C.F.R. § 541.602;
*see also Whitmore v. Port Auth. Of N.Y. & N.J.*, 907 F.2d 20, 21
(2d Cir. 1990).  However, under the public accountability
exception, public employers may reduce pay for partial day
absences occasioned by employees:

> (a) An employee of a public agency who otherwise meets the
> salary basis requirements of § 541.602 shall not be
> disqualified from exemption under §§ 541.100, 541.200,
> 541.300 or 541.400 on the basis that such employee is paid
> according to a pay system established by statute, ordinance
> or regulation, or *by a policy or practice established
> pursuant to principles of public accountability*, under
> which the employee accrues personal leave and sick leave
> and which requires the public agency employee's pay to be
> reduced or such employee to be placed on leave without pay
> for absences for personal reasons or because of illness or
> injury of less than one work-day when accrued leave is not
> used by an employee because:
>
> (1) Permission for its use has not been sought or has been
> sought and denied;
>
> (2) Accrued leave has been exhausted; or
>
> (3) The employee chooses to use leave without pay.

29 C.F.R. § 541.710 (emphasis added).  This "public
accountability" exception was created in 1992, five years after

---

[6] However, as Defendants point out, partial day deductions are quite
rare.  These 554 incidents have occurred over the course of 90,000 pay
periods among the Plaintiff class.  Defs.' Facts ¶ 15.

the Supreme Court held that the FLSA applied to public
employees.  The exception was created because the Department of
Labor found it "inappropriate" that the salary exemption be
denied in the public sector wherever partial deductions were
taken.  *See* 57 Fed. Reg. 37666, 37673, 1992 WL 37666-01 (Aug.
19, 1992) (finding that many state and local governments do not
pay their salaried employees in a fashion consistent with the
original salary basis test).  Multiple circuit courts have
similarly observed that it does not make sense to disallow
partial day deductions in the public sector because "whether a
government employee's wages are docked is not a good indicator
of whether the employee is a bona fide executive,
administrative, or professional employee."  *Demos v. City of
Indianapolis*, 302 F.3d 698, 702 (7th Cir. 2002); *see also
Hilbert v. District of Columbia*, 23 F.3d 429, 435 (D.C. Cir.
1994) (noting that public employers often dock partial day
absences, unlike private sector employers, due to considerations
unique to the public sector).

    Therefore, for these partial day deductions to be
permissible, the State must show that the practice is based on a
system of public accountability.  *See* 29 C.F.R. § 541.710(a).
The term "public accountability" is not defined in the
regulations and the Second Circuit has not interpreted this
provision.  However, several circuit courts have read this

regulation to indicate that the public employer should, at a minimum, "prove that its policy is consistent with the government's efforts to maintain a precise accounting of its employees' hours for reasons that extend beyond calculating an appropriate salary, such as avoiding ghost-payrolling problems." *Demos*, 302 F.3d at 702-03; *see also Spradling*, 95 F.3d at 1499 ("Public accountability is the notion that 'governmental employees should not be paid for time not worked due to the need to be accountable to the taxpayers for expenditure of public funds.'" (quoting *Serv. Emp.'s Int'l Union, Local 102 v. Cnty. of San Diego*, 60 F.3d 1346, 1352 (9th Cir. 1994))).

Similarly, the Department of Labor describes "public accountability" as a "broad concept that forms the foundation for . . . most public sector pay systems."  56 Fed. Reg. at 37675-76.  Further, the Department notes that the concept is derived from taxpayers' preference for governmental accountability and intolerance of "wasteful and abusive excesses."  *Id.*  The burden of proving that the State is entitled to this exception is on the State; public employers must demonstrate that their pay systems are based on public accountability.  *See Spradling*, 95 F.3d at 1499.  However, this burden is a low one.  *See McCloskey v. Triborough Bridge*, 903 F.Supp. 558, 563 (S.D.N.Y. 1995) (finding that "in essence, the [exception under § 541.5d] eliminated the application of the

34

part-day docking rule to public employers"); Defs.' Reply Memo.
in Further Support of Summ. J., ECF No. 135, at 7 (noting that
Plaintiffs did not identify a single case in which a court
denied the public accountability exception to a public employer,
and that the State was able to identify only one such case).[7]

To determine whether the State's pay system is based on a
system of public accountability, the Court must look to evidence
of State policy.  For example, in *Demos*, the Seventh Circuit
found that the City of Indianapolis compensated its employees in
a manner consistent with principles of public accountability

---

[7] *See Spradling*, 95 F.3d at 1499.  Not only is *Spradling* the sole
cited case in which a court denied a public employer the public
accountability exception, but it also can be distinguished from this
case on several important grounds.  First, the *Spradling* court found
that the defendant, the City of Tulsa, did not "otherwise satisfy" the
salary basis test because the City reduced pay for disciplinary
infractions.  *Id.*  As a result, the City could not even *seek* the §
541.5d public accountability exception because it did not pass the
salary test.  As explained above, the State of Vermont has in fact
satisfied the salary basis test here and may therefore seek the §
541.5d exception.  Second, the court in *Spradling* found that even if
the City had "otherwise satisfied" the salary basis test, it still
would not have qualified for the public accountability exception
because the City did not present *any* evidence on this issue to the
trial court, and on appeal, only maintained that they should be
covered by the exception because plaintiffs' salaries were paid by tax
revenues, which must be spent for "public purposes only."  *Id.*  The
Tenth Circuit found that this evidence was insufficient to support the
conclusion that the City's pay system was based on public
accountability principles.  *Id.*  By contrast, Defendants have
established that Vermont's pay system is rooted in longstanding
principles of public accountability, as is reflected in the employee
manual and personnel regulations.  Third, the Tenth Circuit noted that
Tulsa's salary deductions were discretionary, which countered against
finding that the system was based on public accountability.  *Id.* at
1500.  In Vermont, the partial day deductions for time off in excess
of accrued leave are not discretionary, and are expressly delineated
in the VSEA Agreements.  Therefore, *Spradling* is distinguishable and
does not influence the Court's findings in this case.

35

sufficient to qualify for the exemption under 29 C.F.R. §
541.5d(a)(1).  *See* 302 F.3d at 703.  In its decision, the court
considered the state's ghost employment statute, which prohibits
non-working employees from receiving compensation; the City's
Code of Ethics, which directs that city funds not be used for
purposes that would be for the private benefit of an employee;
the City's employee manual, which explains that public employee
job performance impacts the public's trust; and Indiana law,
which requires that salaried employees work a regularly
scheduled workweek.  *Id.*  The court found that these all
constituted proof of the City's public accountability policy.
*Id.*

In this case, the State offers similarly compelling support
for the assertion that the State's pay system is based on such
principles of public accountability.  Vermont statutes direct
that public agencies are "accountable" to the people's business,
and therefore public agencies are required to keep "fair and
accurate accounts" of public funds, Vt. Stat. Ann. tit. 32, §
401, and to administer state programs in an "efficient,
effective, and fiscally prudent manner," Vt. Stat. Ann. tit. 32,
§ 704a.  These public accountability considerations specifically
apply to public employees.  For example, under Vermont law,
individual salaries and benefits of public employees are subject
to public inspection.  Vt. Stat. Ann. tit. 1, § 317(b).  State

36

commissioners and officers are required to "devote [their] entire time to the duties of [their] office."  Vt. Stat. Ann. tit. 3, § 205.

Moreover, these principles of public accountability have long informed the State's compensation policies.  The State has required a minimum number of hours per week and hourly accounting for at least fifty years.  *See* Rules & Regulations for Personnel Administration §§ 6.044, 14.01 (Oct. 1, 1956), ECF No. 134-1.  A State employee handbook from the same time period directed that "the expenditure of public funds . . . must be regarded as a public trust;" therefore, "regular attendance and punctuality are expected of all State employees."  Personnel Division, Dep't of Admin., State of Vermont, *Serving Our Citizens, A Handbook for State Employees*, at 21-22, ECF No. 134-2.  Because of the low burden that is required for public employers to qualify for the public accountability exception, these longstanding policies serve as adequate proof that the State's compensation practices are driven by consideration of the public trust.

Plaintiffs argue that the State's compensation system cannot be based on a system of public accountability because state employees are sometimes paid when they are not working.  *See* Pls.' Mot. for Summ. J. at 15-16.  For example, state employees receive paid leave, and occasionally receive pay for

37

performing civic duties, school board functions, and volunteer fire and rescue activities. *See id*. Plaintiffs also argue that the State system cannot serve the public trust because it provides some state employees with a salary. *Id*. These practices are not prohibited by the public accountability exception. While the public accountability doctrine generally disfavors payment for hours not worked, *see Spradling*, 95 F.3d at 1500 (finding that public accountability pay systems "require an employer to make deductions when an employee is absent from work"), the Department's own description in the federal register indicates that this requirement actually applies to *unauthorized* pay for hours not worked. *See* 57 Fed. Reg. at 37676 ("[P]rinciples of public accountability require that public sector employees not be paid for hours not worked that are not otherwise covered by an entitlement under an employment agreement, such as paid leave."). While the State provides for paid leave, the State accounts for the hours worked—and docks for partial day absences—whenever employees have absences unauthorized by the VSEA Agreements. In sum, the State's pay system is plainly meant to curb the "wasteful and abusive excesses" that public accountability systems seek to eliminate.

The State has met the burden of showing that its compensation system is based on principles of public accountability. Therefore, its deductions for partial day

absences are permitted under the exceptions within 29 C.F.R. §
541.5d.  Because Plaintiffs both "otherwise satisfy" the salary
test, and the partial day deductions are allowed under the
public accountability exception, Plaintiffs are properly
excluded from the overtime wage provisions of the FLSA.[8]

CONCLUSION

For the reasons stated above, the Court **GRANTS** the State's
Motion to Dismiss for lack of subject matter jurisdiction and
**DENIES** Plaintiffs' Motion for Partial Summary Judgment with
respect to sovereign immunity.  Because the Court finds that it
lacks subject matter jurisdiction, the remaining Motions for
Summary Judgment are dismissed as moot. However, the Court has
addressed the merits of the "salary basis" test and finds that
the State would also be entitled to Summary Judgment on this
issue.

---

[8] There is some confusion in the documents before the Court as to
whether the salary test is determinative with respect to Plaintiffs'
complaint.  There is a stipulated proposed discovery schedule from
January 2011 that indicates the parties' intent to bifurcate the
proceedings into two phases: one on the salary test, and one on the
duties test.  Stip. Proposed Discovery Schedule/Order, ¶¶ 3-4, ECF No.
53-1.  However, a joint stipulation and order from December 2010 as to
conditional certification of the collective action states that the
Plaintiff Class's collective action is grounded in their argument
regarding the salary test.  Stip. of Conditional Certification of
Collective Action, ¶¶ 1-2, ECF No. 47.  Therefore, as the Court
understands these stipulations, the salary test is determinative with
respect to Plaintiffs' collective action complaint, and its decision
on the salary test would result in dismissal of the collective action
complaint.

Dated at Burlington, in the District of Vermont, this 30th day of September, 2013.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Judge